**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.: 8:19-cv-00449-CEH-JSS**

WAHEED NELSON,

      Plaintiff,

vs.

BOB GAULTIERI, Official Capacity as
Sheriff of Pinellas County, FLORIDA
DEPARTMENT OF CORRECTIONS,
CORIZON, LLC, MAXIM
HEALTHCARE SERVICES, INC.,
MATTHEW SWICK, M.D., ALL
FLORIDA ORTHOPAEDIC
ASSOCIATES, P.A., and WITCHNER
BELIZAIRE, M.D.,

      Defendants.
_____/

**DEFENDANTS CORIZON, LLC, FLORIDA DEPARTMENT OF**
**CORRECTIONS AND WITCHNER BELIZAIRE, M.D.'S MOTION**
**TO DISMISS OR FOR SUMMARY JUDGMENT AS TO**
**PLAINTIFF'S THIRD AMENDED COMPLAINT[1]**

      Defendants Corizon, LLC ("Corizon"), Florida Department of Corrections

("FDOC") and Witchner Belizaire, M.D. ("Belizaire") (collectively "Corizon

Defendants") pursuant to Federal Rules of Civil Procedure 12 and 56 and Rule

3.01, Local Rules of the United States District Court for the Middle District of

---

[1] Some of the arguments made in this Motion were previously argued in state court. That motion was denied, as Florida rules limit courts to the four corners of the complaint at dismissal. This Court is not so constrained.

Florida, hereby file their Motion to Dismiss or for Summary Judgment as to the Plaintiff's Third Amended Complaint ("Complaint") [ECF #41] as follows:

## MOTION

1.    Plaintiff Waheed Nelson ("Nelson") filed suit bringing medical negligence against the FDOC (Count II), Belizaire (Count III) and Corizon (Count IV) and a constitutional failure to treat against Belizaire (Count IX) and Corizon (Count X).

2.    The claims are insufficiently pled and are not supported by the record.

3.    Therefore, the Complaint should be dismissed and/or summary judgment granted in favor of the Corizon Defendants.

## MEMORANDUM OF LAW

### I.    BACKGROUND

Nelson entered FDOC custody on April 16, 2015, and was released in October 2017. At the time, Corizon was contracted with FDOC to provide medical care to inmates in certain FDOC prisons, including Nelson's place of incarceration. On the day of his arrival, an x-ray apparently revealed a fracture of his right ankle and the radiologist suggested additional x-rays and possible surgery.  In May 2015, an MRI indicated the fracture and swelling.  Nelson claims Belizaire "did not send [him] for surgery and on July 28, 2015, [he] had to have his right leg amputated [ECF #1-1, ¶¶45-55].

The Complaint is short on facts, and for good reason: Nelson has it wrong. The entire claim against these Defendants is that his referral to specialists was delayed. According to the pertinent records, that claim finds no traction.

A series of x-rays taken late in the day April 16, 2015 showed a damaged right foot and ankle. Those studies were ordered by Dr. Marie Garcon and were reported on April 17 and 18, 2015 [ECF #52, pp. 1-4]. On April 18, 2015, Dr. Adam requested a consultation with an orthopedist, which was approved and an appointment was set for April 27, 2015. In the meantime, Dr. Belizaire ordered follow-up x-rays, which were performed on April 21, 2015 [ECF #52, pp. 7-8]. On April 27, 2015, the orthopedist reported a condition known as Charcot foot, and recommended follow-up with Dr. Steele, a surgeon [ECF #52, pp. 5-6]. Dr. Calderon referred Nelson to Dr. Steele on April 29, 2015, and an appointment was set for May 18, 2015. Dr. Steele requested an MRI and noted that Nelson was likely to require a below-the-knee amputation [ECF #52, pp. 9-10]. Dr. Belizaire referred Nelson to a podiatrist on May 8, 2015, who recommended debridement of the left foot on June 12, 2015 [ECF #52, pp. 11-12]. The MRIs suggested by Dr. Steele were done on May 22, 2015 [ECF #52, pp. 13-14]. Nelson returned to Dr. Steele on June 29, 2015, and he recommended a right below-the-knee amputation [ECF #52, p. 15].

Corizon was served with a medical malpractice notice of intent in April

2017. That notice included an affidavit from an orthopedic surgeon [ECF #19-1]. Belizaire was served with a medical malpractice notice of intent in July 2017. That notice included an affidavit from an internal medicine physician. Nelson did not provide pre-suit notice to the FDOC.

## II.   ARGUMENT

### A.   Dismissal and Summary Judgment Standards[2]

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

---

[2] Because Corizon relies on record evidence, it is requested that this Motion be considered one for summary judgment according to Federal Rule of Civil Procedure 12(d).

true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). This inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In 1986, the Supreme Court decided a trio of cases which encourage the use of summary judgment as a means to dispose of cases which are not factually or legally supported. *See Celotex Corp.*, 477 U.S. at 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The primary purpose of granting summary judgment is to avoid unnecessary trials when there is no genuine

issue of material fact in dispute, so if the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment should be granted. *See Anderson*, 477 U.S. at 249-50.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Furthermore, once a moving party identifies those portions of the record showing the absence of a genuine issue of material fact, the party opposing summary judgment must set forth specific facts showing a genuine issue for trial and may not rely on mere allegations or denials. *See Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256-57. If the record as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *See Matsushita*, 475 U.S. at 586. Where the record facts render the non-moving party's claim implausible, the non-moving party must come up with more persuasive evidence than would otherwise be necessary to defeat summary judgment. *Id.* at 587.

Evidence that is "merely colorable, or is not significantly probative" of a disputed fact, or a "mere scintilla of evidence" is not sufficient; there must be

enough of a showing that the (trier of fact) could reasonably find for that party. *Anderson*, 477 U.S. 242; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations, whether based on speculation or subjective beliefs, are insufficient to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that plaintiff's "conclusory assertions . . . , in the absence of (admissible) supporting evidence, are insufficient to withstand summary judgment"); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . . ").

### B.     The Medical Negligence Claims

Florida's Medical Malpractice Act, contained in Chapter 766, Florida Statutes (2017), sets out a complex pre-suit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be filed in court. *See Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996). As part of this procedure, section 766.106(2), Florida Statutes (2017) requires that "[after] completion of the pre-suit investigation pursuant to section 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each perspective defendant, and if any perspective defendant is a health care provider licensed under

chapter 458, chapter 459, chapter 460, chapter 461 or chapter 466, the Department of Health by certified mail, return receipt requested, of an intent to initiate litigation for medical malpractice."

Section 766.203(2)(b), Florida Statutes (2017) requires that corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written opinion from a medical expert at the time the notice of intent to initiate litigation is mailed.  The Florida Supreme Court has held that "Chapter 766, notice and pre-suit screening requirements apply to claims that 'arise out of the rendering of or the failure to render medical care or services.'" *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 949 (Fla. 1994).   The pre-suit requirements apply to incarcerated plaintiffs.  *See O'Hanrahan v. Moore*, 731 So.2d 95 (Fla. 4th DCA 1999); *Okaloosa County v. Custer*, 697 So.2d 1297 (Fla. 1st DCA 1997).

The initial question presented here, whether Florida's Medical Malpractice Act applies to cases in federal court, has been answered in the affirmative.  *See McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164 (5th Cir. 1979) (applying the Erie doctrine to hold that the Florida medical malpractice pre-suit procedures must be followed in federal court);[3] *Clark v. Sarasota County Public Hosp. Bd.*, 65 F.Supp.2d 1308, 1314 (M.D. Fla. 1998).

---

[3] The Eleventh Circuit in an en banc decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The second question is whether Nelson complied with the pre-suit procedure by attaching an affidavit from a medical provider in the same specialty as Belizaire, who is an internal medicine physician.  See Fla. Stat. §766.102(5)(b) (2015).  He did not.  Those claims must be dismissed.

### 1.   FDOC

In Count II, Nelson brings a vicarious liability claim against FDOC for the negligence of its "physicians, nurse practitioners and nurses."  Although FDOC is not a medical provider according to the Act, it was entitled to presuit notice. "[T]he proper test for determining whether a defendant is entitled to notice under section 766.106(2) is whether the defendant is directly or vicariously liable under the medical negligence standard of care set forth in section 766.102(1)." *Weinstock v. Groth*, 629 So. 2d 835, 838 (Fla. 1993).  FDOC was not served with presuit notice of the medical malpractice claim and the two-year statute of limitations ran long ago.  Therefore, the claim should be dismissed with prejudice.

Additionally, this claim cannot continue because Nelson did not comply with an additional condition precedent by providing presuit notice as required before suing Florida governmental agencies. In pertinent part, Section 768.28(6), Florida Statutes (2017) states that

> (a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim  in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space

Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing

\*   \*   \*

(b)   For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.

"[T]he purpose of the notice requirement is to provide the State and its agencies sufficient notice of claims filed against them and time to investigate and respond to those claims." *Cunningham v. DCF*, 782 So. 2d 913, 915 (Fla. 1st DCA 2001) (citing *Metro. Dade Cnty. v. Reyes*, 688 So. 2d 311, 313 (Fla. 1996)). Compliance with section 768.28, Florida Statutes, is a condition precedent to suit. *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1022-23 (Fla. 1979).

Nelson did not provide presuit notice to the FDOC. Because it is a condition precedent, the case cannot be continued unless that fault is cured.  The fault cannot be cured because the three-year limitation in Section 768.28(a) has passed. Dismissal with prejudice is warranted.

## 2.   Corizon and Belizaire

While Corizon was served with the medical malpractice presuit notice, that notice was insufficient because Nelson's presuit expert is not of the same specialty

as the physicians on which liability is to be based. According to Section 766.102(5), Florida Statutes (2017), an expert "may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records and meets the following criteria:

> (a)    If the health care provider against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness must have devoted professional time during the 5 years immediately preceding the date of the occurrence that is the basis for the action to:
> > 1.    The active clinical practice or consultation as a general practitioner;
> > 2.    The instruction of students in an accredited health professional school or accredited residency program in the general practice of medicine; or
> > 3.    A clinical research program that is affiliated with an accredited medical school or teaching hospital and that is in the general practice of medicine.

Florida courts consistently note the importance of the presuit expert requirements in determining a claim's legitimacy. *See Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown*, 805 So. 2d 28, 29 (Fla. 4th DCA 2001) (recognizing that the "purpose of the presuit notice and the requirement of an expert's affidavit to corroborate the claim is . . . to demonstrate that the claim is legitimate."). In *Clare v. Lynch*, 220 So. 3d 1258, 1260-61 (Fla. 2nd DCA 2017), the court determined that a presuit affidavit from a podiatrist was ineffective regarding an orthopedic surgeon, even though both specialists focused their practice on foot and ankle

surgery. In doing so, the court decided there was no expert corroboration, so the case should have been dismissed.

In this case, Nelson provided the affidavit from an orthopedic surgeon [ECF #19-1, pp. 10-11]. It is insufficient according to Florida law. Specialists took over care for Nelson's foot in April 2015. Those specialists were not Corizon or FDOC employees, so Corizon is not responsible for their care. All other individual medical providers mentioned in the Complaint are either general practitioners or nurses, and Nelson's presuit expert is not qualified to provide opinions regarding their care.

Additionally, neither Corizon nor Belizaire can be sued in tort, as they are statutory agents of the FDOC. According to section 768.28, Florida Statutes (2017), entities such as Corizon have certain sovereign immunity rights and limitations with respect to claims against them. *See* §768.28(5), Fla. Stat. (2017). Among the rights and limitations is section 768.28(9)(a), which establishes that no "officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function . . . ." § 768.28(9)(a), Fla. Stat. (2017). The exclusive remedy is by action against the governmental entity, the head of the entity, or the constitutional officer deemed the employer or the head of the entity.

*See* § 768.28(9)(a), Fla. Stat. (2017).

According to Section 768.28(10), Florida Statutes (2017)

(b)  Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section, while acting within the scope of and pursuant to guidelines established in said contract or by rule. The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

This section has been interpreted as addressing the legislature's public policy concerns regarding the liability of health care providers such as Corizon. *See e.g. Mingo v. ARA Health Services, Inc.*, 638 So. 2d 85, 86 (Fla. 2d DCA 1994) (stating that the "legislature found it necessary to create state agency status for such health care providers by specific statutory enactment").

When Nelson entered FDOC custody, Corizon contracted to provide medical care to inmates of the FDOC, and the contract is in the record [ECF #19-2]. Section VII.H of the contract contains an agreement that Corizon and its employees act as agents of the FDOC while providing medical services under the contract:

**Contractors Acting as an Agent of the State**

In the Contractor's performance of its duties and responsibilities under this Contract, the Contractor shall, at all times, act and perform as an agent of the Department, but not as an employee of the Department. The Department shall neither have nor

exercise any control or direction over the methods by which the Contractor shall perform its work and functions other than as provided herein. Nothing in this Contract is intended to, nor shall be deemed to constitute, a partnership or joint venture between the parties.

The language of the statute could hardly be more clear. Corizon and its employees are agents of the FDOC, and thus immune from suit on the showing of two elements: (1) a contractual agreement that Corizon be considered an agent, and (2) that Corizon's employees were acting within the course and scope of the contract while providing care to Nelson.

Section VII.H. of the contract meets the first element. As required by the statute, Corizon and FDOC agreed that Corizon and its employees are agents of the FDOC while providing services to inmates. The second element is also satisfied, as Nelson seeks to hold Corizon liable for the medical care provided by its employees, and the provision of medical care is the purpose of the contract. Based on the language of the controlling statutes, the allegations in the Complaint and the contractual relationship between Corizon and the FDOC, Corizon and its employees cannot be sued in tort.

### D. <u>Belizaire and Corizon's Constitutional Liability</u>

#### 1. <u>Belizaire</u>

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871 as the "Ku Klux Klan Act." The section provides a remedy for persons deprived of

federal rights under color of state law:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . ., subjects, or
> causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in any action at
> law, suit in equity, or other proper proceeding for redress.

Section 1983 "is not itself a source of substantive rights, but a method for

vindicating federal rights elsewhere conferred by those parts of the United States

Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S.

137, 145 n. 3 (1979).  As such, it is a mechanism for bringing claims for federal

constitutional or statutory violations.

To prevail on a claim brought through section 1983, a plaintiff "must show

violation of a constitutionally protected liberty or property interest and deliberate

indifference to constitutional rights."  *Rivas v. Freeman*, 940 F.2d 1491, 1496

(11th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48 (1988).   For individual

defendants, a successful pleading on this theory requires allegations of deliberate

indifference.  The deliberate indifference showing requires allegations the inmate

suffered an objectively serious medical need, and the defendant intentionally

disregarded that need.  *Farmer v. Brennan,* 511 U.S. 825, 833-38, (1994); *Estelle

v. Gamble,* 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention

Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court

has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law).

The Supreme Court set the bar high for the objective component, observing "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted), and if "prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Id.*   For claims alleging inadequate medical care, a plaintiff must demonstrate "an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations omitted), and is either "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation omitted).   Second, the plaintiff must show the response "was poor enough to constitute an unnecessary and wanton infliction of pain." *Taylor*, 221 F.3d at 1258 (quotation omitted).   The level of care exercised by the official must be worse than mere "accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Id.* (quotations omitted).

The subjective component has three requirements: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than

gross negligence.  *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir.

2010.  The Supreme Court has emphasized that the official must have been

actually aware of the risk of harm: "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  While due

process prohibits jail officials from exhibiting deliberate indifference to prisoners'

serious medical needs, the Supreme Court has stated that "a complaint that a

physician has been negligent in diagnosing or treating a medical condition does not

state a valid claim of medical mistreatment under the Eighth Amendment."  *Id.* at

106; *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  In *Estelle v. Gamble*,

429 U.S. 97, 104 (1976), the court reinstated the district court's dismissal of a

prisoner's section 1983 complaint for failure to state a claim.  Recognizing that the

plaintiff's primary claim was that "more should have been done" to diagnose and

treat a back injury, the Court explained, "[a] medical decision not to order an X-

ray, or like measures, does not represent cruel and unusual punishment.  At most it

is medical malpractice."  *Id.* at 107.  "There is no liability for 'an official's failure

to alleviate a significant risk that he should have perceived but did not . . . .'"

*Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer,* 511

U.S. at 838); *see Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996) (holding that

"negligence on the part of an official does not violate the Constitution, and it is not

enough that he or she should have known of a risk").

The constitutional claim against Belizaire is that he delayed sending Nelson to a specialist. Belizaire's only hand in this process was to order follow-up x-rays. The referrals to specialists were done by other physicians, and there is no question they occurred in a timely manner—sometimes on the same day additional specialists were recommended. On this record, Belizaire has no constitutional liability.

## 2.   <u>Corizon</u>

Because Corizon is a corporation, constitutional liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), *abrogated in part by Bell Atl. Corp.*, 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be allegations and proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000); *see also Monell*, 436 U.S. 658. That is, "liability under §1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

The *Brown* Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis in original).  A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); *see also Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation.  *Estelle*,

429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In *McDowell*, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital.  But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. *See McDowell at 1286-87*.

*McDowell* arrived at the 11th Circuit after the district court granted

summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. *Id.* at 1289 (citing *Monell*, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell*, 392 F.3d at 1290 (quoting *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." *Id.* "Rather, the incident must result from a demonstrated practice." *Id.* The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." *Id.*

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." *Id.* Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. *Id.* at 1290-91.

Next, the *McDowell* court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.'" *Id.* at 1291 (citing *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. *Id.*

Relying on the Supreme Court's decision in *Brown*, the *McDowell* court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Id.* (quoting *Brown*, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Brown,* 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " *McDowell*, 392 F.3d at 1291 (quoting *Brown*, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." *Id.* (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound.  *Id.* (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." *Id.* at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. *Id.*

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury.  *Id.*  The court recognized the Supreme Court's caveat in *Brown* that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* (quoting *Brown*, 520 U.S. at 410).  To "test the link" between the injury and the County's conduct, the *McDowell* court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." *Id.* (stating that "[w]hile it may be true that the

Board's budget decision would make a violation of his constitutional rights 'more likely," that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting *Brown* at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." *Id.* at 1292 (quoting *Brown* at 411) (emphasis in original).  The *McDowell* court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that  the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally,  the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

> *Id.* at 1292-93.

Nelson has two methods to plead Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon.  Nelson must also allege the policy was created with knowledge that his injuries were a highly probable consequence of the policy's creation.  Nelson claims Corizon had several policies, but they all amount to the same: Corizon a custom and practice of

delaying and denying care to maximize its profits.[4]  There was no such policy, but even if there was, the Complaint and the record leave an insurmountable causation hole, as Corizon physicians promptly sent Nelson to specialty physicians upon recognition of his medical needs.  Not once was he denied those referrals.  From the first referral, care was directed by those specialists.  If there was a rule to deny care based on cost, someone sure forgot to inform the referring physicians.

## III.    CONCLUSION

For the foregoing reasons, the Corizon Defendants request that this Court grant their motion to dismiss or for summary judgment.

By:    /s/ Gregg A. Toomey
Gregg A. Toomey
Florida Bar No. 159689

---

[4] That this claim is unsupportable is known to Nelson's attorneys.  Medical records in their possession show he was referred to specialists within days of his incarceration, and nothing suggested by specialists was ever denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May, 2019, I electronically filed the foregoing with the Clerk of the Court by using the Court's ECF Filing System, which will send a copy of the foregoing via electronic mail to the following:

Linda Bellomio Commons, Esq.
*Attorneys for Plaintiff*
Law Offices of Linda Bellomio
Commons, P.A.
PO Box 340261
Tampa, FL 33694
Phone: 352.610.4416
Fax: 813.265.3010
Email: lcommons@aol.com
Dmheiser1@gmail.com

James V. Cook, Esq.
*Attorneys for Plaintiff*
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Phone: 850.222.8080
Fax: 850.561.0836
Email: cookjv@gmail.com

Paul G. Rozelle, Esq.
*Attorneys for Defendant Gualtieri*
Pinellas County Sheriff General
Counsel's Office
10750 Ulmerton Road
Largo, FL 33778
Phone: 727.582.6274
Fax: 727.582.6459
Email: prozelle@pcsonet.com
Amarcott1@pcsonet.com

David O. Doyle, Jr., Esq.
Julie A. Tyk, Esq.
*Attorneys for Defendant Maxim*
Pearson Bitman, LLP
485 N. Keller Road, Suite 401
Maitland, FL 32751
Phone: 407.647.0090
Fax: 407.647.0092
Email: ddoyle@pearsonbitman.com
jtyk@pearsonbitman.com
jpreston@pearsonbitman.com
lrover@pearsonbitman.com

Mindy McLaughlin, Esq.
Gabrielle Osborne, Esq.
*Attorneys for Defendants Swick and*
*All Florida Orthopaedic Assoc.*
Beytin, McLaughlin, McLaughlin,
O'Hara, Bocchino & Bolin, P.A.
1706 E. Eleventh Avenue
Tampa, FL 33605
Phone: 813.226.3000
Fax: 813.226.3001
Email: jvbarnes@law-fla.com;
Law-fla@outlook.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon, FDOC and Belizaire*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:    /s/ Gregg A. Toomey
         Gregg A. Toomey
         Florida Bar No. 159689