**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WAHEED NELSON,

Plaintiff,

vs.

BOB GUALTIERI, et al.,

Defendants.

Case No. 8:19-cv-449-CEH-JSS

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS BY DR. MATHEW SWICK AND ALL FLORIDA ORTHOPAEDIC ASSOCIATES**

COMES NOW the Plaintiff, WAHEED NELSON, through counsel, responding to the FRCP 12(b)(6) Motions to Dismiss by DR. MATHEW SWICK and ALL FLORIDA ORTHOPAEDIC ASSOCIATES, and would show as follows:

1. Defendants predicate their motion to dismiss on the following defenses:

   a. Plaintiff's Complaint is an improper "shotgun pleading";

   b. Plaintiff alleges, at most, medical malpractice;

   c. Dr. Swick had no ability to direct Plaintiff's care in the custody of others.

2. Plaintiff responds as follows:

   a. Plaintiff has provided time frames for the involvement of Dr. Swick. Dr. Swick and the Sheriff have the best means to document dates and times; and this Defendant has answered the Complaint, the Amended Complaint, and the Second Amended Complaint.

b. Dr. Swick was aware of Plaintiff's serious emergent medical condition and had the means to provide or seek emergency treatment and did neither;

c. Dr. Swick had the knowledge of risk and the duty to provide, or warn Jail medical staff to provide, timely emergency medical treatment to Plaintiff.

**MEMORANDUM OF LAW**

Defendants begin their Fed.R.Civ.P. 12(b) Motion to Dismiss the operative complaint with a section titled "Factual Background." A defendant's "Factual Background" is often an effort to re-interpret the allegations of the complaint in a way that tends to promote a defendant's alternative inferences.[1] The facts alleged by the Plaintiff in the Complaint are still the best authority for Plaintiff's facts.

A court must accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc*., 910 F.Supp. 576 (M.D.Fla.1995). After *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), there is no longer a "heightened pleading standard" in the Eleventh Circuit as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

Motions to dismiss are disfavored and not often granted. See, e.g., *Universal*

[1] Often, as here, the re-interpretation includes placing words and phrases in quotation marks and *reductio ad absurdum* comments like, "The basis for the claim against Dr. Swick. . . appears to be that Dr. Swick "sent him [the Plaintiff] for an MRI." Clearly that is not a fair rendition of the Plaintiff's case but illustrates a strategic reason for the jaundiced recapitulation of the facts.

*Collision Center Inc. v. Travelers Ind. Co. of Conn.*, 2010 WL 2015242, at *1 (N.D. Fla. 2010) (*citing Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969) ("A motion to dismiss on the basis of the pleadings alone should rarely be granted.")). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (q*uoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also id*. at 679 ("a complaint that states a plausible claim for relief survives a motion to dismiss"). To meet this "plausibility standard," the plaintiff must plead sufficient facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. While the Federal Rules of Civil Procedure do not require that allegations be set forth in detail—Rule 8(a) only requires a "short and plain statement" showing that plaintiff is entitled to relief—the claims must be "enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555; *accord, e.g., Iqbal*, 556 U.S. at 678 (noting that Rule 8(a) does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (*quoting Twombly*). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## I. The Complaint Properly Pleads the Causes of Action

### A. The Operative Complaint Is Not A "Shotgun Pleading"

Defendants cite *Lyons v. Jennings*, 2019 U.S. Dist. LEXIS 19954, at *5 (M.D. Fla. Jan. 7, 2019) for the proposition that Plaintiff failed to adequately identify "which defendants' acts supported the 1983 claim." It is important to keep in mind that the process of receiving medical care does not work the same way for a prisoner as it does for non-prisoners. First of all, prisoners don't have the same ability to communicate with their medical providers. The problems of not receiving care is exacerbated when you can't pick up the phone and call your doctor's office and drive to your scheduled appointment. So if a plaintiff is not receiving care, it may not be clear exactly who is responsible for the deprivation. Clearly, there was a contractual relationship between these defendants and the Sheriff, and clearly, it was known that the prisoner/patient cannot drive to the appointment. That is one of the purposes of discovery. The contract between the Sheriff and these defendants has not been provided. Plaintiff does not need to try his case in the complaint.

Although Mr. Nelson was keenly aware of his pain and his disability, and of the fact that no help was forthcoming, he had no way, except his pain, to assess the extent of the disintegration of his untreated ankle or the dangers of sepsis or, for that matter, the extreme danger of death or permanent disability, caused by the fact

that the condition of his ankle had been ignored for a long time. ¶35-44 of 3d Am.Complaint.

Mr. Nelson had a peerless vantage point on his need for medical care. What he was lacking was the mechanics of the deprivation. Who controlled the levers of medical intervention. Mr. Nelson rarely saw anything but nurses and the nurses rarely had much time or information to share. No one sat down with him to discuss the potential for surgical debridement as opposed to the amputation of his leg. He had strong opinions on the subject, but no information. As to when he had contact with those who held the responsibility for his care, full records of his transports and appointments were not kept by him, much less the timing of decisions that were made outside his presence. Because of this, Plaintiff will seek such records from Dr. Swick and others and possibly seek a final opportunity to amend.¶45-57 of 3d Am. Complaint.

Plaintiff provides a general timeframe. He fell at the Pinellas County Jail, suffering a severe injury to his ankle, on January 7, 2015. (Id. at ¶ 32). Whatever care he received from the Sheriff and his agents would have been given prior to his transfer to the Florida Department of Corrections on April 16, 2015. (Id. at ¶ 45). Within that time frame, Plaintiff notes that he was given diagnostic imaging that showed a bad fracture. (Id. at ¶ 34). He says the Sheriff's response was slow. (Id. at ¶¶ 36-38. He says that over the weeks the pain and swelling in his ankle

increased. (Id. at ¶ 41). He says that he was sent to Dr. Swick and All Florida Orthopaedic Associates who sent him for an and MRI. He said that appointments were made and cancelled or he was not transported. (¶ 39, 43). He said Dr. Swick and All Florida Orthopaedic Associates failed to "follow up." (Id. at ¶ 44).

Defendants compare Plaintiff's pleading with the pleading in *Danow v. Borack*, 197 Fed. Appx. 853 (11th Cir. 2006), a case in which a consumer debtor, Danow, alleged he was contacted by a creditor, Borack, "on numerous occasions" after a request by Danow to cease communications. Borack argued that the Fair Debt Collection Practices Act did not require him to provide exact dates. *Id*. at 854. Although Borack only sought a more definite statement under FRCP 12(e), the district court dismissed the case with prejudice. *Id*. at 855.

The Eleventh Circuit explained that if claims have not been identified with sufficient clarity to enable the defendant to frame a responsive pleading, they may constitute "shotgun pleadings." The Eleventh Circuit did not specifically hold that failure to provide the dates of the phone calls constituted a "shotgun pleading," but stated that "to the extent" that the claims were "akin to 'shotgun pleadings,'" the better course would have been to require a more definite statement.

In *Danow*, it appears that the parties were on a relatively level field in terms of their ability to document dates and times. Some prisoners journal but Plaintiff did not. More importantly, he was not privy to the communications between the

Sheriff or the Sheriff's health care contractors (defendants herein) as to actions taken, and what was told and known by the various parties. For this, he must rely on discovery. Each Count is separated and each defendant is identified and an affidavit of what was negligent was provided by an expert in the same field.

Defendants complain that "the difficulty with the Complaint in this case is that there are no factual allegations that demonstrate when any of the specific health care providers or Defendants interacted with the Plaintiff or the other Defendants." ¶ 24. If by "when" Defendants mean the exact date and time, Defendants know this from the medical records of their clients. If by "when," Defendants mean the time frame, that is clearly enough set out by Plaintiff.

To the extent it will help clarify the issues, Plaintiff intends to seek records from the parties of when he was transported and when his consultation was set. Perhaps more importantly, Plaintiff will seek to discover when Dr. Swick got Plaintiff's records and what communications Dr. Swick had with Jail medical staff. Such facts should already be known to Dr. Swick and he should not be confused. Plaintiff will be seeking that information from Dr. Swick in the first round of discovery. It does appear, and Plaintiff does not currently contest, that Dr. Swick saw him on March 30, 2015, 17 days before his transfer to FDOC. Plaintiff assumes, without the current ability to prove, that Dr. Swick had discussions and

saw records prior to that date. If need be, Plaintiff would not be adverse to amending to provide a more definite statement after a round of discovery.

It is certainly not fair to state, as Defendants do, that the issue is whether Plaintiff "alleges that everyone harmed him by failing to meet his medical needs without alleging when care was provided, and/or when there was a failure to do more and by whom." (DE 54 at ¶ 26). Here, Defendants heavily sprinkle their own inferences into their argument: ". . . without alleging when care was provided . . . or when there was a failure to do more . . ." suggests care *was* provided and the only issue is whether there was "enough care."

To be clear, Plaintiff submits that Dr. Swick did not provide care at any time after being made aware of Mr. Nelson's medical condition. It appears that Dr. Swick saw a fire and did not pull the alarm. In any case, it cannot be said Plaintiff's allegations are "unadorned", hence they were able to answer the complaints and raise affirmative defenses previously.

Mr. Nelson had a CT scan that showed fracture and destruction of his ankle before he went to Dr. Swick and the records were faxed. At the visit of March 5, 2015 the records reviewed by these Defendants indicate the injury in January and destruction and a concern that future amputation would happen. [2] This was an emergency condition, yet these defendants waited until March 30th to order an MRI

[2] Some medical records were provided with various dates in March 2015. Plaintiff's expert reviewed these.

and failed to follow up. The MRI was not done for another two weeks. This does not excuse a specialist ignoring a problem that started in January and for which he knew the severity of the destruction of the ankle on March 5th, 2015! As alleged continued delay occurred with the ordering of tests, which tests show the exact same problem as the January CT scan, and such is a tactic to avoid paying for surgery which Plaintiff's expert opined was needed immediately.¶32-56.

**B. Plaintiff Alleges More than Medical Negligence**

Likewise, it is not a fair characterization to say that Plaintiff is only complaining of a "difference of medical opinion" between himself and the medical staff as to the diagnosis or course of treatment.

Defendants reliance on *Gross v. White*, 340 F.App'x 527 (11th Cir. 2009) is misplaced and not at all on point. That unreported case was a pro se detainee who was attacked by another inmate and received medical care. The detainee failed to comply with the medical malpractice statute to sue a physician and improperly pled the action for violation of his rights by placing him in a cell with a violent inmate and as to other violations he was actually treated promptly by his own admission.

Any lay person who witnessed Mr. Nelson walk would know that he was suffering a serious medical condition and one that required medical treatment. It appears that when he first arrived at the Reception and Medical Center, one of the

first things Dr. Belizaire did was to place him on Lortab, a narcotic pain reliever. Narcotic pain relievers are not commonly prescribed in prison environments and that prescription is a silent witness to Mr. Nelson's state of excruciating pain.

Defendant Swick characterizes Plaintiff's allegation that he insufficiently alleged that Dr. Swick cooperated with the Sheriff's policy of "slow-walking" medical care, relying on *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (dismissing several poorly alleged counts which failed to make the necessary connections between the defendant's conduct and the elements of the 1983 claim alleged). In *Weiland*, the trial court found three claims insufficiently pled: (1) a 42 USC 1983 claim for failure to train; (2) a 42 USC 1983 cover-up of excessive force; and (3) a 42 USC 1983 conspiracy claim.

However, none of the faults found in *Weiland* apply to the allegations against Dr. Swick. Whether Dr. Swick "slow-walked" medical care will depend on the kinds of issues mentioned above – including when Dr. Swick received the records and information relating to Plaintiff's medical condition, what the medical records demonstrate, what Plaintiff's physical presentation and his complaints showed, and what options Dr. Swick had to provide immediate emergency treatment, and whether he made the Jail medical staff aware of the seriousness of Mr. Nelson's condition. Certainly Dr. Swick knew that his patient could not call him or drive himself to appointments and there must be something in the contract

with the Sheriff that governs the situation where a physician orders care to be immediate and to prevent amputation of a leg. Dr. Swick is an orthopedic surgeon, a specialist. ¶32-44.

If Dr. Swick had been a law enforcement officer, he would have been expected to respond "lights and siren" to Plaintiff's emergency medical need. At times the critical time frame for "deliberate indifference" can be very short. *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim). *See Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir.1985) (two and a half hour delay in treatment for a bleeding cut under the eye held actionable); *Hughes v. Noble*, 295 F.2d 495 (5th Cir.1961) (thirteen hour delay for broken and dislocated cervical vertebrae).

Another case Defendants rely upon is *Cantres v. Bailey,* 2010 WL 3294348 (Middle District, Tampa Aug. 20, 2010) where a pro se HIV patient alleged medical negligence without complying with the Medical Malpractice Statute and a violation of civil rights due to medical indifference without being able to point to any named person and where the inmate actually did receive care but did not like that he was not sent to an outside provider and refused the care given by the Pinellas County Jail providers. Other issues were qualified immunity. The Court dismissed without prejudice to re-file the case.

There is no longer a "heightened pleading standard" in the Eleventh Circuit as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). The above cases just do not apply. The allegation of medical indifference is the lack of intervention and lack of care for an emergency to prevent amputation of a limb. It shocks the conscience to think that an orthopedic surgeon sees a horrific fracture and does nothing but another test, a test that is not necessary. Immediate Surgery was necessary to save the limb.

**C. Plaintiff Was at All Times in the Custody of Others**

Defendant Swick cites *Hill v. Dekalb Reg'l Youth Detention Ctr*., 40 F.3d 1176, 1196 (11th Cir. 1994), *overruling recognized by Taylor v. Hughes* (11th Cir. Ala. 2019). In *Hill*, a juvenile was sexually assaulted by detention center employees who afterward sued, inter alia, Dekalb County, which had no control over the detention center. Defendant Swick misses the important point that while the issue referenced by Defendant Swick in *Hill* was one of "*control*" between the county and the state detention center, the issue in this case is one of the reasonableness of Dr. Swick's *actions*, based his *knowledge* of the severe, time-sensitive risk of sepsis to the Plaintiff. This distinction is applicable to both the medical malpractice and constitutional failure to treat, though in different ways.

The position that Dr. Swick was in, is more akin to the director at the juvenile detention center, who was alleged to have known the seriousness of the child sexual abuse victim's medical need. Delay in access to medical attention can violate the Eighth Amendment, *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,' " *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.) (per curiam) (quoting Estelle, 429 U.S. at 104, 97 S.Ct. at 291), cert. denied, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990), *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment. *Gaudreault*, 923 F.2d at 208; *Monmouth County*, 834 F.2d at 347.

Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in pertinent part by Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002))

The standard under which the official was granted qualified immunity in *Hill* was that the law be "preexisting, obvious and mandatory." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 (11th Cir. 1994), overruled in part by *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002),[3] *Taylor v. Hughes,*

[3] The grounds on which the director of the detention center in *Hill* was given qualified immunity are exactly the

920 F.3d 729, 733 (11th Cir. 2019). That "materially similar" standard was rejected in *Hope v. Pelzer*, which specifically mentioned *Hill*, as "not consistent with our cases. *Hope v. Pelzer*, 536 U.S. 730, 739, n.9 (2002) ("This rigid gloss on the qualified immunity standard, though supported by Circuit precedent, is not consistent with our cases.").

Even if there was an overlap between the issues in *Hill* and those in the instant case, it is important to note that *Hill* was a case decided on summary judgment after a completed record after discovery. It should provide no guidance to this Court on a motion to dismiss based solely on the allegations in the pleadings, prior to the perfection of the record through discovery.

It is true that Sheriff Gualtieri had a non-delegable duty to provide medical care to Mr. Nelson. But his responsibility for care was in addition to, not instead of, Dr. Swick. Sheriff Gualtieri will undoubtedly claim that he believed that Mr. Nelson was receiving necessary and timely care. He will undoubtedly claim that he was entitled to trust Dr. Swick and the other providers to let him know what needed to be done as quickly as possible.

*Harwick v. Harris*, 166 So.2d 912, 913 (3DCA 1964), cited by Defendant Swick relating to an "affirmative duty" to "direct" the processes of the physician who actually performed the orthopedic surgery is inapposite. The question here is

---

grounds on which *Hill* was overturned by *Pelzer*. 536 U.S. at 739, n.9.

not whether Dr. Swick was responsible for the professional negligence of another doctor, but whether Dr. Swick himself breached his duty of care to the patient, which an expert has so testified under oath. The same defects are found in *Fortson v. McNamara*, 508 So.2d 35, 37 (2DCA 1987). The obstetrician was found not liable for the actions of another. Both cases were decided on a completed record and not on a motion to dismiss.

Dr. Swick and his group were the only orthopedic surgeons to see Plaintiff Nelson at the critical time. He cannot blame anyone else. He was the specialist and only he possessed the skill to perform the surgery. He had the contract with the Sheriff and duty to the act.

It will be important to find out in discovery when Dr. Swick saw Plaintiff's records, what conversations he had with the Jail medical staff, what the records showed, what communications he had regarding the prior CT scan and later MRI[4] and what he conveyed regarding the seriousness of what he saw in the records and examination. We already know from the records we do have that he was concerned about amputation. The fact that the Sheriff had a non-delegable duty does not mean Dr. Swick had none.

42 USC 1983 is not based on a narrow construction of the "doctor-patient relationship." However, defendants herein had a duty treat and/or warn the

---

[4] It may be important to know what he told MRI staff and what options existed for a sooner MRI.

Sheriff's providers at the jail. The documentation has not been provided and discovery is not complete.

WHEREFORE, Plaintiff submits that the Motion should be DENIED.

Respectfully Submitted,

*s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

s/ *Linda Bellomio Commons*
Florida Bar Number : 0778346
Linda Bellomio Commons, P.A.
P.O. Box 340261
Tampa, FL 33694
Tel: (813) 679-3181 or (352) 610-4416
Fax: (813) 265-3010
E-mail: Lcommons@aol.com
Secondary: dmheiser1@gmail.com

Co-Counsel for Plaintiff

I CERTIFY the foregoing was filed electronically on 6/21/2019, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*s/James V. Cook*___________