## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WAHEED NELSON,                                    Case No. 8:19-cv-449-CEH-JSS

     Plaintiff,

vs.

BOB GUALTIERI, capacity as Sheriff of
Pinellas County, Florida, DEPARTMENT OF
CORRECTIONS, CORIZON LLC, MAXIM
HEALTHCARE SERVICES, INC.,
MATTHEW SWICK M.D., ALL FLORIDA
ORTHOPEDICS ASSOCIATES, P.A., and
WITCHNER BELIZAIRE M.D.,

     Defendants.

---

**PLAINTIFF'S RESPONSE OPPOSING MOTIONS TO DISMISS AND
ALTERNATIVELY FOR SUMMARY JUDGMENT BY THE FLORIDA
DEPARTMENT OF CORRECTIONS, CORIZON, AND DR. BELIZAIRE**
**And**
**NOTICE OF RELIANCE ON PREVIOUSLY FILED DOCUMENTS**

COMES NOW the Plaintiff, WAHEED NELSON, through counsel,

responding to Motions to Dismiss or alternatively for Summary Judgment by

Defendants FLORIDA DEPARTMENT OF CORRECTIONS (FDOC), CORIZON,

and DR. WITCHNER BELIZAIRE, (DE 53) and would show as follows:

1. Defendants predicate their motion to dismiss/summary judgment on the

   following grounds:

   a. FDOC failed to receive presuit notice under § 766.106(2), Fla.Stat.;

   b. Plaintiff's presuit expert is not of the same specialty as Dr. Belizaire;

c.  As agents of FDOC, Corizon and Dr. Belizaire can't be sued in tort;

d.  Dr. Belizaire was not deliberately indifferent to a known medical risk;

e.  Plaintiff has not shown a Corizon policy of deliberate indifference.

2.  Plaintiff responds as follows:

a.  Plaintiff duly provided statutory notice to FDOC.  (DOC. 23-1) FDOC responded that defense would be provided by Corizon.  See Exhibit A – green cards returned, proof of receipt by FDOC.

3.  Plaintiff's affiants were Dr. Genecin , Internal Medicine and Dr. Husted, orthopedic surgeon.  (DOC. 23-1).

a.  Whether Dr. Belizaire was deliberately indifferent is a jury question.

b.  Whether Corizon had a policy of deliberate indifference is a jury question.

c.  Discovery has not started in the case and summary judgment is not ripe.

d.  Corizon is not immune from lawsuits, it is an independent contractor per its own contract.

## MEMORANDUM OF LAW

Defendants begin their Motion to Dismiss the operative complaint with a section titled "Background." A defendant's "Background" is often an effort to re-interpret complaint allegations in a way that tends to promote a defendant's alternative inferences. Although Defendants style their motion as alternatively a

2

motion for summary judgment, it is short on evidentiary citations.[1] The facts alleged by Plaintiff's Complaint are still the best authority for Plaintiff's facts.

To the extent Defendants seek a FRCP 12(b)(6) dismissal, a court must accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc*., 910 F.Supp. 576 (M.D.Fla.1995). After *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), there is no longer a "heightened pleading standard" in the Eleventh Circuit as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

Motions to dismiss are disfavored and not often granted. See, e.g., *Universal Collision Center Inc. v. Travelers Ind. Co. of Conn*., 2010 WL 2015242, at *1 (N.D. Fla. 2010) (*citing Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969) ("A motion to dismiss on the basis of the pleadings alone should rarely be granted.")). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (q*uoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also id*. at 679 ("a complaint that states a plausible claim for relief survives a motion to dismiss"). To meet this "plausibility standard," the

---

[1] Defendants cite the Second Amended Complaint, ¶¶ 45-55, though inaccurately, as evidence.

plaintiff must plead sufficient facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. While the Federal Rules of Civil Procedure do not require that allegations be set forth in detail—Rule 8(a) only requires a "short and plain statement" showing that plaintiff is entitled to relief—the claims must be "enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla. Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997).   This is the third time that Corizon, FDOC  and Dr. Belezaire move to dismiss and for summary judgment.   No discovery has occurred in the case.  Presuit discovery is privileged and not to be used in the filed case. §766.106(5):      DISCOVERY AND ADMISSIBILITY.—A statement, discussion, written document, report, or other work product generated by the presuit screening process is not discoverable or admissible in any civil action for any purpose by the opposing party.

## I. **Defendants' Motions to Dismiss Plaintiff's Action for Medical Malpractice**

### A. Plaintiff Properly Pled Notice to FDOC Under § 766.106(2) Fla.Stat.

Plaintiff duly alleged and provided FDOC proper notice, wherein FDOC informed Plaintiff that its defense would be provided by Corizon per the contract.

To the extent Defendants want to go outside the pleadings, Plaintiff have filed evidence to the contrary which Defendants ignore.  (DE 23-1 at 1-4, emails and letter from FDOC).[2]

Plaintiff sent Notice of Intent (NOI) letters to Corizon on April 5, 2017, to FDOC on April 5, 2017, and to the Reception and Medical Center (RMC), where Dr. Witchner Belizaire worked, on April 7, 2017, and to Dr. Witchner Belizaire himself on July 11, 2017. Despite the Defendants having failed to identify the practice of Dr. Belizaire, Plaintiff included affidavits from both Dr. Daniel Husted, an Orthopedic Surgeon, and Dr. Paul Genecin, Internal Medicine. (DE 23-1 at 20-23, affidavits). The presuit period stops the Statute of Limitations when a notice of intent is sent as to all defendants, and so do further notices of intent. The notice of intent acts to toll the statute of limitations for a ninety-day period as to all potential defendants. *Hankey v. Yarian*, 755 So.2d 93, 95 (Fla. 2000); Fla. Stat. §766.106(4).

Additionally, the plaintiff purchased a statute extension which adds 90 days to the statute of limitations. (DE 23-1 at 24, Automatic Extension)**.** *Hankey* at 98; §766.104(2), Florida Statutes.   Each NOI in the case triggers its own 90-day extension in addition to the automatic extension.  *Hillsborough County Hospital Authority v. Coffaro*, 829 So.2d 862-3, 866 (Fla. 2002).

---

[2] Defendants have seen these exhibits before.

Plaintiff properly pled that "Plaintiff has complied with all presuit conditions precedent under the provisions of Chapter 766 and Chapter 768, Florida Statutes, or they have been waived or plaintiff is entitled to estoppel by the actions or inactions of the defendants" (DE 01 at ¶ 25). Further that: "All conditions precedent to the institution of this action have been satisfied or have occurred including the delivery by certified mail of a Notice of Intent to initiate a claim for medical negligence against the above Defendants or have been waived, (such as the requirement of affidavit, as the defendants failed to produce the medical records within 10 days or ever)." (DE 01 at ¶ 26).

In *Nelson v. Hillsborough County*, 189 So.3d 1037 (Fla. 2DCA 2016), the trial court dismissed the plaintiff's case with prejudice because the plaintiff did not append the § 768.28 notice to the complaint and could not produce it in court. The Second District held the trial court was in error "as the trial court has no authority on a motion to dismiss to resolve questions of fact or consider the sufficiency of the evidence that either party may ultimately produce." *See Brocato v. Health Options, Inc.*, 811 So.2d 827, 829 (Fla. 2d DCA 2002), *Nelson*, 189 So. 3d at 1040.

In *Cabral v. City of Miami Beach*, the Third District found:

After performance of conditions precedent to a lawsuit have been alleged by the plaintiff, the burden then shifts to the defendant to deny with specificity and particularity that the required notices were given, and to properly present this issue to the trial court in the context of a summary judgment motion, see Fla. R. Civ. P. 1.510, or in a motion for judgment on the pleadings. See Fla. R. Civ. P. 1.140(c); *Ashley v. Lamar*, 468 So.2d 433 (Fla. 5th DCA 1985). The

6

City's contention that it had not received timely notice is an affirmative defense that is not properly raised in a motion to dismiss.

*Cabral v. City of Miami Beach*, 76 So. 3d 324, 326–27 (Fla. 3d DCA 2011).

Here, the Plaintiff not only alleged compliance, but demonstrated it during presuit.   Since Defendants ask for summary judgment on the ground that there was no notice or it was untimely, the evidence is otherwise: notice letter was sent to the State Department of Corrections under both §768.28 and §766.106. (DE 23-1 at 25-60). The FDOC sent a letter and email stating Corizon would assume defense (based on the contract). (DE 23-1 at 1-4). Corizon's argument is unsupported.

In any case Defendants have waived conditions precedent and are estopped to raise the defense. *Ingersoll v. Hoffman*, 589 So.2d 223, 224 (Fla. 1991). Defendants also failed to fully participate in presuit further waiving their rights under §766.106 and §766.206(3), Florida Statutes. FDOC, Corizon, and Dr. Belizaire, all received adequate notice under the Malpractice Statute and under §768. Corizon was responsible for defense of Corizon, its employee Dr. Belizaire, and for FDOC, per the contract. (See Defendants' exhibit, DE 19-2 at 121).

## B. Plaintiff's Expert Is of the Same Specialty as the Physicians Sued and Defendant is Estopped from Raising This as It Is Waived

Plaintiff complied with the medical malpractice statute. All requirements of the statute had been met and any potential prejudice to the defendants of having to

defend against a frivolous suit had been eliminated. *Morris v. Muniz*, 252 So.3d

1143 (Fla. 2018); *Kukral v. Mekras*, 679 So.2d 278 (Fla. 1996).

The Florida Supreme Court has held that the medical malpractice statutory

scheme must be interpreted liberally so as not to unduly restrict a Florida citizen's

constitutionally guaranteed access to the courts, while at the same time carrying out

the legislative policy of screening out frivolous lawsuits and defenses. *Id.* at 284.

Although compliance with the presuit requirements is a condition precedent to

filing a medical malpractice action, the failure to comply may be excused upon a

showing of estoppel or waiver. *Ingersoll v. Hoffman,* 589 So.2d 223 (Fla.1991) ;

*Florida Hosp. Waterman v. Stoll*, 855 So.2d 271, 276 (Fla. 5th DCA 2003). Dr.

Belazaire is an out of State physician who works under a limited "Area of Critical

Need" license and his Department of Health (DOH) license verification listing has

no identifiable area of practice. (DE 23-1 at 61, license listing from DOH license

verification site). Corizon employed Dr. Belazaire. Further, Defendant's rejection of

the claim contained a review by  a doctor not authorized as an expert witness at the

time of the affidavit.  (Composite Exhibit B attached hereto) See also previously

filed DOC 23-1 at 13-14).

During presuit Plaintiff asked Dr. Belazaire what his specialty was and for a

copy of his CV. (DE 23-1 at 6).   Since Corizon failed to respond to the inquiry

during the stopped statute of limitations and answer the questions so Plaintiff could

comply if Dr. Genecin's affidavit was not sufficient, the right to raise this as an issue now that the statute of limitations expired is thereby waived and subject to estoppel. This is a gotcha tactic that should not be permitted to succeed. *Andreaus v. Impact Pest Management, Inc.*, 157 So.3d 442 (Fla. 2d 2015); *Salecedo v. Asociacion Cubana, Inc.*, 368 So.2d 1337, 1339 (Fla. 3d DCA 1979). Further, Dr. Todd Wilson is an Urgent Care expert and advanced Certified Correctional Health Care Provider. No CV was attached and his expert witness status was expired at the time of his affidavit. Defendants are estopped to attack it now because it is after the statute of limitations. For the first time, Corizon admits that Dr. Belezaire is in internal medicine. Plaintiff's expert, Dr. Genecin is also in internal medicine, the same specialty, and Defendants' argument fails.

Defendant had notice and cannot violate Plaintiff's constitutional access to Court and complain about an affidavit when it failed to fully participate in presuit or answer questions about the doctor's background.

In *Williams v. Oken*, 62.So.3d 1129 (Fla. 2011) , Dr. Oken filed a motion to dismiss the complaint for Williams' alleged failure to timely comply with statutory presuit requirements of chapter 766, Florida Statutes, the Medical Malpractice Reform Act. *See Oken,* 23 So.3d at 142. Specifically, Dr. Oken alleged that Dr. Foster was not an expert in the field of cardiology, and as a result, Williams had failed to comply with section 766.102, Florida Statutes because he failed to attach a

corroborating affidavit from a qualified medical expert. Williams filed a supplemental affidavit from Dr. Foster. *Id.* at 1132.   The supplemental affidavit indicated that Dr. Foster was board certified in emergency room and family medicine. It also indicated that both of those medical fields involve the "evaluation, diagnosis, or treatment of acute chest pain and impending myocardial infarction," and that Dr. Foster had "performed 15,000– 20,000 evaluations of chest pain in an emergency room setting." Based on the foregoing, the trial court specifically concluded that Dr. Foster was qualified as an expert and denied Dr. Oken's motion to dismiss. *See Oken,* 23 So.3d at 142. On writ of certiorari the DCA reversed.

The Florida Supreme Court held that the First District exceeded its authority in granting the writ of certiorari to review the sufficiency of Dr. Foster's qualifications under chapter 766. Instead of granting Dr. Oken's petition for writ of certiorari, the First District should have dismissed the petition because Williams complied with the procedural statutory requirements—the filing of the initial and supplemental affidavits and the CV.   Dr. Oken was afforded the process guaranteed by statute because he received advance notice and an opportunity to examine Williams' claim before the filing of the lawsuit. Thus, a deprivation of the process did not occur. *Id.* at 1137 citing *Abbey v. Patrick,* 16 So.3d 1051, 1155 (Fla. 1st DCA 2009).

In *Abbey,* Gertrude Patrick, a patient, filed a medical negligence claim against Dr. Abbey, alleging that her recent blindness was caused by Dr. Abbey's negligence in treating her eye disorder. *Abbey,* 16 So.3d at 1052.   There, Patrick filed a notice of intent to initiate litigation on July 28, 2006. *Id.*   Dr. Abbey received the notice "on August 2, 2006, thirty-seven days before the statute of limitations would have expired." *Id.* Pursuant to section 766.106(4), Florida Statutes (2006), filing the notice had the effect of tolling the statute of limitations for a period of ninety days. *Id.* at 1052–53.

Here, Plaintiff's two experts, one an orthopedic surgeon, the other, a practitioner of internal medicine, swore under oath that Defendants were negligent in breaching the standard of care causing Plaintiff to lose his leg. Two affidavits were provided in presuit while the Statute of Limitations (SOL) was tolled. Discovery requests to Defendants asking what type of physician Dr. Belizaire was, went unanswered.   Dr. Belizaire was not produced for unsworn statement though Defendant had sufficient notice in that he produced an affidavit in opposition denying the claim. (DE 23-1 at 5-11, discovery letter and emails requesting).   Dr. Belezaire failed to answer what kind of practitioner he was despite discovery requests.  Objections at this time are barred.

**Defendants' Status as Agents of the State Is Outside the Four Corners of the Complaint and Summary Judgment is Requested without discovery**

11

**having been conducted.  Corizon is an Independent Contractor as defined in the Contract filed in the case and Issues of Fact remain as to whether they are entitled to Sovereign Immunity as an Agent of the State**

Corizon argues on behalf of itself and the FDOC that Corizon cannot be sued because of sovereign immunity.   Corizon is a private company and not a sovereign and operates as an independent contractor. It is autonomous in decisions pertaining to health care. Corizon's argument is without merit or support. There are numerous claims against Corizon throughout the State of Florida.

Defendant Corizon's status as agent is outside the four corners of the complaint.  Defendant Corizon must show it was "acting within the scope of and pursuant to guidelines established in said contract or by rule" as required by § 768.28(10)(a), Florida Statutes. Defendant Corizon had an explicit contractual duty to closely monitor and treat infections. (DE 19-2 at 13-14). The "achievement of outcome" must be "one hundred percent." (Id. at 76, ¶ 26).

Its own contract cited by it in the Motion to Dismiss demonstrates it is an independent contractor using independent judgment. Under Florida law, a contract is construed in accordance with the contract's express terms unless the contact is ambiguous. *Siegle v. Progressive Consumers Ins. Co.,* 819 So.2d 732, 735 (Fla.2002).   The Second District Court of Appeal of Florida in *Mingo v. ARA Health Services, Inc.*, 638 So.2d 85 (Fla. 2d DCA 1994) held that an independent

contractor for health care was not an agent of the State entitled to sovereign immunity. Corizon must demonstrate it operated within the contract.  In a recent order of the Southern District Court of Florida,  a similar argument was made in Lee v. Perez, 2018 WL 3884903 (S.D. July 25, 2018) where the Court denied summary judgment because issues of fact remained as to whether the contract was complied with in order to argue Sovereign Immunity as an agent of the State.

Here, all we do have for summary judgment purposes is Corizon's contract. The contract demonstrates no control by FDOC, appearing to make Corizon an independent contractor.   The Florida Supreme Court in *Plancher v. UCF Athletics Ass'n, Inc.*, 175 So.3d 724 (Fla. 2015) cited *Pagan v. Sarasota County Public Hospital Board*, 884 So.2d 257 (Fla. 2d DCA 2004) for the holding that "[t]he key factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-to-day operations of the corporation."

Further, Corizon indemnified FDOC for any of its actions or that of its (Corizon's) employees or agents. The contract filed in this case demonstrates that Corizon assumed total responsibility for prisoners' health.

> The Contractor shall assume full responsibility for comprehensive healthcare service delivery within 90 days of the contract execution date, or on a date agreed upon in writing between the Contractor and the Department."

(DOC. 19-2, p.50 , #7)

> Indemnification – **The Contractor shall be liable for and agrees to be liable for, and shall indemnify, defend, and hold harmless the Department**, its employees, agents, officers, and assigns from any and all claims, suits, judgments, or damages including court costs and attorneys' fees arising out or in connection with any non-permitted or prohibited Use or Disclosure of PHI or other breach of this Agreement, whether intentional, negligent or by omission, by Contractor, or any sub-contractor of Contractor, or agent, person or entity under the control or direction of Contractor. **This indemnification by Contractor includes any claims brought under Title 42 USC §1983, the Civil Rights Act**.

(DOC. 19-2, p. 72 number 7)

Per the contract and the letter to Plaintiff's counsel, the Department of Corrections turned over defense to Corizon. See (DOC. 19-2, p. 72,114-5; DOC. 23-1 Exhibit A).

The contract filed by the Defendant Corizon, signed October 12, 2012, clearly demonstrates it is <u>solely</u> responsible for health care at prisons as an Independent Contractor. (DE 19-2 at 125, #7; DE 23-1 at Exh. A p.1-4, Emails from FDOC, Letter confirming contractor responsible for patient care at RMC).

> H.   Contractors Acting as an Agent of the State

In the Contractor's performance of its duties and responsibilities under this Contract, the Contractor shall, at all times, act and perform as an agent of the Department, but not as an employee of the Department. **The Department shall neither have nor exercise any control or direction over the methods by which the Contractor shall perform its work and functions other than as provided herein.** Nothing in this Contract is intended to, nor shall be deemed to constitute, a partnership or joint venture between the parties.

I.   Indemnification for Contractors Acting as an Agent of the State

The Contractor shall be liable, and agrees to be liable for, and shall indemnify, defend, and hold the Department, its employees, agents, officers, heirs, and assignees harmless from any and all claims, suits, judgments, or damages including court costs and attorney's fees arising out of intentional acts, negligence, or omissions by the Contractor, or its employees or agents, in the course of the operations of this Contract, including any claims or actions brought under Title 42 USC §1983, the Civil Rights Act, up to the limits of liability set forth in Section 768.28, Florida Statutes.

Doc. 19-2, p. 114-5.

Under *Pagan*, it appears that Corizon is an independent contractor and **not**

entitled to Sovereign Immunity per its contract with FDOC as outlined above.

The third amended complaint is pled with specificity for the malpractice tort

counts. Plaintiff's operative complaint, DE 41, includes, *inter alia*, the following

facts: Dr. Belizaire's Failure to treat infection by administering antibiotics, ¶ 83i;

Failure to timely consult infectious disease specialist, ¶ 83c; caused further delay in

treatment of  Mr. Nelson's right ankle fracture, that had gone untreated for four

months, ¶ 83j;  Failure to immediately call in orthopedic consults to review films,

CT scan and MRI already done, ¶ 83k; Failure to be proactive in the treatment, ¶

83l; Failure to evaluate and treat Mr. Nelson's continued pain, ¶ 83m; and that the

continued delay caused or contributed to the loss of limb, ¶ 83n.

## II. Defendants' Motions for Summary Judgment (in the alternative)

### A. Plaintiff Has Pled that Dr. Belizaire Was Deliberately Indifferent

15

Waheed Nelson came under the care of Dr. Belizaire on April 16, 2015. Mr. Nelson was a 36-year-old African-American man with diabetes and renal failure. He came to the Reception and Medical Center from the Pinellas County Jail with a history of diabetes mellitus, hypertension, congestive heart failure, and renal failure. He also had an infected diabetic foot ulcer which had apparently developed at the Jail .

Dr. Witchner Belizaire, who worked on an Area of Critical Need restricted license, was immediately presented with a patient in intense pain, was presented on April 16, 2015, with radiographic imaging, x-ray and MRI, showing "complete destruction of the ankle" and inflammation and extensive soft tissue swelling. The report noted, "An infectious process must be excluded. Consider MRI or CT."

However, these tests had already been performed.  Yet, Dr. Belizaire requested a second radiograph which was done on April 21, 2015, which drew the same conclusion. A month later, on May 22, 2015, an MRI was performed. The test could not exclude osteomyelitis and recommended "close clinical follow-up. On August 25, 2015, Dr. Belizaire dictated a note that Nelson would be seen by an ortho for "maybe surgery or amputation."   However, on July 28, 2015, he already had an amputation of the right leg below the knee.  He did not even know what was happening to the patient!  This demonstrates a lack of care on the most basic human level.   Pets are treated better.

16

The relaxed pace of Dr. Belizaire's examination and treatment of Mr. Nelson expressed a policy by his employer, Corizon, to delay and to tend to choose the easier, less expensive, and less efficacious course, even in the face of a serious medical condition, until presented with an emergency that cannot be ignored, by which time the opportunity for timely treatment of the serious medical condition is lost. This policy is demonstrated, inter alia, in delay or denial of costly outside admissions or procedures and short-staffing of medical positions.

Dr. Belizaire participated albeit briefly in presuit. However, he failed to fully participate, ignoring questions that could have allowed Plaintiff to correct any errors before the statute of limitations ran. Plaintiff did plead these facts:

a. Failure to provide Waheed Nelson treatment for infection or to take him to medical providers who could provide treatment;

b. Failure to provide Waheed Nelson treatment for his injured leg or to take him to medical providers who could provide treatment;

c. Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

d. Failure to ensure that Waheed Nelson received follow-up treatment;

e. Failure to ensure that Waheed Nelson received needed pain management;

f. Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

g. Failure to respond to Waheed Nelson's changing medical condition in a timely manner, resulting in significant talus and calcaneus fracture that developed into a charcot deformity, destruction and ultimately the loss of a limb;

17

Plaintiff suffered a serious medical condition and Dr. Belizaire had knowledge but failed to act reasonably to abate the condition, causing or contributing to the harm complained of, to wit: amputation of his right leg.

### B.  Plaintiff Has Pled Corizon Policies of Deliberate Indifference

Plaintiff has pled that in failing to provide needed care to Mr. Nelson, Corizon acted according to a local and nationwide corporate practice of deliberate indifference to medical needs. Corizon's custom and business plan was to delay, deny, or minimize access to costly medical care to prisoners.

Plaintiff has pled that state efforts to privatize prison health care were reportedly expected to save the State of Florida around $23 million in tax revenues. A health care contract with Corizon was signed in 2012 to begin in 2013. As early as 2014, the Florida Department of Corrections (FDOC) expressed concern that audits showed Corizon failing to provide care to prisoners.

In 2015, FDOC Secretary Julie Jones reported that private health care providers were not performing "at the level that's covered by their contracts." By late 2015, Corizon was being fined by the State of Florida for failure to live up to its contract obligations to provide adequate health care to prisoners. In May of 2016, the contract with Corizon for prisoner health services was terminated more than two years before it was scheduled to expire.

Defendant Corizon maintained policies and procedures or customs and

practices that made the harm to Mr. Nelson substantially certain. Corizon failed to provide, or cooperated in, maintained, enforced, tolerated, or condoned, the failure to provide timely and adequate medical care to an inmate suffering a life-threatening medical condition.

Plaintiff has pled that Corizon had a custom of basing medical care on cost rather than medical judgment in deciding what treatment to provide and when it should be provided, and a custom of not providing more expensive care to prisoners except when the condition had reached an emergency stage and sometimes not even then. Such care was provided only in life-threatening situations without regard for the pain and debilitation the patient may suffer.

Corizon has enforced this policy, practice, and custom around the country. Corizon has been dropped as the prison health care provider in several states. In Florida, one year after Corizon took over prisoner medical care, then-FDOC Secretary Michael Crews sent a letter to Corizon threatening to withhold payment and remove facilities from Corizon control if improvements were not made to the level of care being provided to Florida prisoners. The letter stated that Corizon's d." Specifically, Crews identified failures in patient care issues, utilization management, and communication.

The 11th Circuit, in a case brought from Florida, upheld a jury verdict against Corizon by finding that a jury reasonable concluded that Corizon "had a

policy that improperly delayed treatment of serious medical needs…" *Fields v. Corizon Health, Inc*., 490 F. App'x 174, 184 (11th Cir. 2012).

The Florida Department of Corrections had a non-delegable duty to provide medical care to Mr. Nelson. Corizon had contracted with FDC at a per-inmate per-diem rate to provide needed medical care to prisoners at the institution where Mr. Nelson was housed. FDOC and Corizon failed to treat Mr. Nelson's infection, failed to consult with an infectious disease expert, unreasonably delayed treatment and follow-up, and provided only limited pain medication and symptomatic treatment.

### J. Discovery has not started in the case and summary judgment is not ripe

Summary judgment is appropriate only when there is no genuine issue of material fact. A factual dispute is "genuine" if the evidence is such that a jury could reasonably return a verdict for the nonmoving party and a fact is "material" if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences for the nonmoving party. *Matsushita Elec. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Kingsland v. City of Miami*, 832 F.3d 1220, 1226 (11th Cir. 2004).

Summary judgment motions prior to completion of discovery are usually premature and hence disfavored. *See, e.g., Americable Int'l Inc. v. Dep't of Navy*,

129 F.3d 1271, 1274 (D.C.Cir.1997); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 188 n. 1 (D.D.C.2007); *Iacangelo v. Georgetown Univ., Civil Action No. 05–2086*, 2007 WL 915224, at *3 (D.D.C. Mar. 26, 2007). *Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 (summary judgment may be appropriate after "adequate time for discovery"); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 188 n. 1 (D.D.C.2007) (a pre-discovery summary judgment motion "usually is a disfavored practice"). The alternative motion for summary judgment was filed as the case moves into a new venue with additional causes of action and burdens of proof  and where discovery was stayed in State Court. The record is insufficient at this stage to warrant a grant of summary judgment. *See Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 53 (D.D.C. 2009).

In order to fully respond to the allegations in the affidavits and other papers of the Defendants, Plaintiff needs sufficient time to conduct discovery, including third-party discovery, and to examine the witnesses in deposition. Plaintiff intends to file a motion to this effect pursuant to Fed.R.Civ.P. 56(d).

WHEREFORE, Plaintiff asks that this Honorable Court DENY the Defendants' Motion to Dismiss and alternative Motion for Summary Judgment.

Respectfully Submitted,   /s/ **Linda Bellomio Commons**
Florida Bar Number : 0778346
Linda Bellomio Commons, P.A.
P.O. Box 340261

21

Tampa, FL 33694
Tel: (813) 679-3181 or (352) 610-4416
Fax: (813) 265-3010
E-mail: Lcommons@aol.com
Secondary: dmheiser1@gmail.com

JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

Attorneys for Plaintiff

I CERTIFY the foregoing was filed electronically on 6/21/2019, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*s/Linda Bellomio Commons*

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of
Corrections
501 S Calhoun St
Tallahassee, Fl 32399

9590 9402 2067 6132 7497 91

2. Article Number (Transfer from service label)

7016 0910 0001 0270 8789

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

RECEIVED BY

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    NELSON    Domestic Return Receipt

EXHIBIT A

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X ☐ Agent

B. Received by (Printed Name)      C. Date of Delivery

Barbara Hawkins 7/17

1. Article Addressed to:

FDOC - RMC
7765 S. CR 231
P.O. BOX 628
LAKE BUTLER, FL 32054

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☒ No

USPS

9590 9402 2067 6132 7499 20

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7015 1520 0002 1864 3379

NELSON

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

EXHIBIT A

 **Department of Health**

# TODD RANDALL WILCOX

## License Number: MEEW657

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW657 |
| **License Status** | NULL AND VOID/ |
| **License Expiration Date** | 8/7/2014 |
| **License Original Issue Date** | 08/08/2012 |
| **Address of Record** | If further information is needed, please contact the Department of Health at (850) 488-0595. |
| | UNITED STATES |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

COMPOSITE EXHIBIT B

FL DOH MQA Search Portal |

 **Department of Health**



# TODD RANDALL WILCOX

## License Number: MEEW1981

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW1981 |
| **License Status** | NULL AND VOID/ |
| **License Expiration Date** | 5/12/2016 |
| **License Original Issue Date** | 05/13/2014 |
| **Address of Record** | If further information is needed, please contact the Department of Health at (850) 488-0595. |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

COMPOSITE EXHIBIT B

FL DOH MQA Search Portal

 **Department of Health**



# TODD RANDALL WILCOX

## License Number: MEEW5930

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW5930 |
| **License Status** | ACTIVE/ |
| **License Expiration Date** | 9/4/2020 |
| **License Original Issue Date** | 09/05/2018 |
| **Address of Record** | 4760 SOUTH HIGHLAND DRIVE |
| | SALT LAKE CITY, UT 84117 |
| | UNITED STATES |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

COMPOSITE EXHIBIT B