# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

WAHEED NELSON,

**CASE NO.: 8:19-cv-00449-CEH-JSS**

     Plaintiff,

vs.

BOB GAULTIERI, Official Capacity as
Sheriff of Pinellas County, FLORIDA
DEPARTMENT OF CORRECTIONS,
CORIZON, LLC, MAXIM HEALTHCARE
SERVICES, INC., MATTHEW SWICK,
M.D., ALL FLORIDA ORTHOPAEDIC
ASSOCIATES, P.A., and WITCHNER
BELIZAIRE, M.D.,

     Defendants.

_____/

## PLAINTIFF'S SUR - REPLY TO DEFENDANTS, CORIZON, LLC, FLORIDA DEPARTMENT OF CORRECTIONS AND WITCHNER BELIZAIRE, M.D.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND SUMMARY JUDGMENT

Plaintiff, WAHEED NELSON, by and through undersigned counsel, files this Sur-Reply

to Defendants' CORIZON, LLC ( Corizon) , FLORIDA DEPARTMENT OF CORRECTIONS

(FDOC) AND WITCHNER BELIZAIRE, M.D., Reply (DOC. 80) and states:

### SERVICE OF NOTICE OF INTENT TO CORIZON AND FDOC

Defendants state and imply that Plaintiff has not been forthright about service or signing the

Notices of Intent to FDOC and Dr. Belizaire.   Not only is this an improper argument, but pre-

suit is privileged and is not permitted to be used in the civil case by the defense. *Morris v. Munoz*, 252 So.3d 1143, 1161 (Fla. 2018):

> "It has been observed that "there is an increasingly disturbing trend of prospective  defendants attempting to use the [chapter 766] statutory requirements as a sword against plaintiffs." *Michael v. Med. Staffing Network, Inc.*, 947 So.2d 614, 619 (Fla. 3d DCA 2007). Unfortunately, it appears that this was such a case." *Id.* at 1161.

Appendix, document number 73-2, Exhibit A, page 1-4, is a letter from Pam Bondi's office acknowledging receipt of the Notice of Intent, tendering defense to Corizon, LLC, represented by attorney Gregg Toomey, who was copied on the letter,  and thanking undersigned for an extension.   See also **Exhibit A** attached.   If   Plaintiff had not sent the Notice of Intent, Pam Bondi's office would not be responding with letters and emails. (DOC. 73-2, Exh. A, p.1-4).   Plaintiff  has provided proof of service of a Notice of Intent to Corizon and FDOC in its appendix,  filed twice,  once at DOC. 23 and again in DOC. 73, specifically Exhibit F, page 24 and page 31.   Attached hereto as **Exhibit B**, is a copy of proof of mailing - the receipt from the post office with corresponding certified receipts.  For ease of the Court, attached hereto is **Exhibit C** - green cards returned.

 Defendants attempt to make an issue that the green card was not signed.  This means nothing because it was stamped by the post office and returned to undersigned counsel.  That means it was delivered, and we know it was because Pam Bondi's office, on behalf of the Florida Department of Corrections, wrote a letter tendering defense to Corizon.

Not only did Plaintiff properly plead notice, but to defeat summary judgment, Plaintiff has proved the Notices of Intent were served by certified mail, green cards were returned, responses were received by Plaintiff's counsel.   Defendants' arguments are meritless and insincere.

## 90 DAY PURCHASED EXTENSION

Defendants argue they have no idea why the 90 extension was filed. In their motion to dismiss and for summary judgment, Defendants argued that FDOC was not served with a presuit notice of intent within the statutory period and the claim is barred.  FDOC was served on April 5, 2017.  The leg was amputated on July 28, 2015.  Two years and 90 days is October 26, 2017. The statute was stopped on April 5, 2017 and again on July 11, 2017 with Notices of Intent. When Plaintiff knew there was medical negligence is a jury question.  *Tanner v. Hartog*, 618 So.2d. 177 (Fla. 1993).  Defendants' argument is merit less as shown by the certified mail receipt and return receipt green cards.  **See Exhibit C**.  The notices of intent in this case stopped the statute of limitations to all defendants as of April 5, 2017.  Further, each defendant in the case receives 90 days to investigate the claim.  After denial by certified mail by a defendant, assuming presuit is done with all defendants at the same time, the plaintiff has an additional 60 days to file suit, plus the 90 days from the purchased extension. *Salazar v. Coello*, 154 So.3d 430 (Fla. 3d DCA 2014)(explains each part of the statute and the tolling as to all defendants as well as each defendant to receive a notice of intent is entitled to a 90 day investigation).   All Notice of Intent in this case were within the statutory period.  Defendants purely speculate incorrectly and against the proof filed.

## DEFENDANT BELIZAIRE - PRESUIT NOTICE SENT TIMELY WITH CORRECT AFFIDAVIT OF DOCTOR IN SAME SPECIALTY

Defendant Belizaire, an employee of either FDOC or CORIZON, was also represented by Corizon and attorney Toomey, received a Notice of Intent dated July 11, 2017 when the statute of limitations was stopped which affidavit of  Paul Genecin, in the same specialty of internal

medicine.  **Exhibit D** and DOC 73-2, Exh. F, p.50-60. [1]   Dr. Belizaire denied the claim by filing

the affidavit of Todd Wilcox sent by Corizon attorney Toomey.   **Exhibit E**.   Putting aside that

Dr. Wilcox was not authorized in this State to file the affidavit because he was not certified by

the State at the time (**Exhibit F**), the rejection of the claim demonstrates that not only was given

proper notice given with an affidavit from an internal medicine doctor, but the claim was

investigated and evaluated by an expert and rejected.   Defendant Belizaire was not prejudiced at

all and Plaintiff has demonstrated that there was no prejudice to Belizaire.   Further, Dr.

Belizaire failed to respond to Plaintiff's presuit questions regarding the presuit affidavit, request

for his curriculum vitae and area of practice to which he did not respond, failed to have a proper

affidavit by a Florida certified out of State physician to deny the claim, failed to have his

unsworn statement taken.   **Exhibit G**.   If anyone was prejudiced it was the Plaintiff.   These

failures estop Defendants from attacking the Plaintiff's notice of intent or affidavit.   Defendant

Belizaire has waived those arguments by his failure to participate in presuit.  *Ingersoll v.*

*Hoffman*, 589 So.2d  223,224 (Fla. 1991).   Corizon received a Notice of Intent against nurses

and doctors who were employees of FDOC and that included an orthopedic physician/or

surgeon.   DOC 73-2, p.31.   Both were covered with the affidavits of Dr. Paul Genecin and Dr.

Daniel Husted.  DOC 73-2, p.37-8,55-6.   At no time did Attorney Toomey respond to presuit

questions regarding the affidavits propounded by Plaintiff's attorney.   At no time did Attorney

Toomey state he did not represent Dr. Belizaire, in fact the opposite is true. See Exhibit E.

Attorney Toomey is the one who filed the denial of the claim and obtained the affidavit of Dr.

---

[1] The presuit HIPAA in this case has been found to be unconstitutional in *Weaver v.*
*Myers*, 229 So.3d 1118 (Fla. 2018) due to the provision that permitted defense counsel to talk to
plaintiff's physicians ex parte.

Todd Wilcox.

## 768.28 NOTICE WAS SENT WITHIN THREE YEARS

Notice was sent to the Department of Financial Services by both attorneys for the

Plaintiff.  **Exhibit H and I.**   The Notice was sent within three years as required.

## SOVEREIGN IMMUNITY

Plaintiff stands by its arguments made in the Response. DOC 73 p.12.  The burden shifts

to CORIZON to show it was operating within the contract guidelines.   However, Corizon is a

private company and not a sovereign and operates as an independent contractor per the plain

language of the contract.  The delivery of all health care services are exclusively up to Corizon.

The State contracts away the services and provides guidelines for the services that Corizon

agreed to,  but the liability for not meeting the guidelines is solely Corizon's responsibility.

DOC 73-1, p.65, EE.   The Florida Supreme Court in *Plancher v. UCF AthleticsAss'n, Inc*., 175

So.3d 724 (Fla. 2015) cited *Pagan v. Sarasota County Public Hospital Board*, 884 So.2d 257

(Fla. 2d DCA 2004) for the holding that "the key factor in determining whether a private

corporation is an instrumentality of the state for sovereign immunity purposes is the level of

governmental control over the performance and day-to-day operations of the corporation."

Further, the contract explicitly provides that Corizon indemnifies the State's Department

of Corrections.   Corizon is autonomous and independent  in its decisions pertaining to health

care.  Corizon's argument that it cannot be sued is without merit or support.  In fact, it is

responsible for defense, costs and attorney's fees.

Indemnification for Contractors Acting as an Agent of the State:

The Contractor shall be liable, and agrees to be liable for, and shall indemnify, defend, and
hold the Department, its employees, agents, officers, heirs, and assignees harmless from

any and all claims, suits, judgments, or damages including court costs and attorney's fees arising out of intentional acts, negligence, or omissions by the Contractor, or its employees or agents, in the course of the operations of this Contract, including any claims or actions brought under Title 42 USC Â§1983, the Civil Rights Act, up to the limits of liability set forth in Section 768.28, Florida Statutes.  DOC 73-1, p.114, I.

Contractors Acting as an Agent of the State:

In the Contractor's performance of its duties and responsibilities under this Contract, the Contractor shall, at all times, act and perform as an agent of the Department, but not as an employee of the Department.  **The Department shall neither have nor exercise any control or direction over the methods** by which the Contractor shall perform its work and functions other than as provided herein.  Nothing in this Contract is intended to, nor shall be deemed to constitute, a partnership or joint venture between the parties. DOC 73-1, p.114, H.

Its indemnification clause applies to civil rights violations and medical malpractice. Defendant Corizon must show it was "acting within the scope of and pursuant to guidelines established in said contract or by rule" as required by §768.28(10)(a), Florida Statutes. Defendant Corizon had an explicit contractual duty to closely monitor and treat infections. (DOC 73-1 at 13-14). The "achievement of outcome"  must be "one hundred percent."    (Id. at p.76, number 26). Corizon failed in its duty to prevent or treat infections because the medical records x-rays, upon arrival of Plaintiff in mid April 2015, show a severe untreated infection, yet no intervention was done for months. DOC 52-1, p.1, 3.  The same testing continued until finally on July 28, 2015, the Plaintiff's leg was amputated below the knee.

In *Lee v. Perez*, 2018 WL 3884903 (S.D. July 25, 2018) the Southern District Court denied summary judgment because issues of fact remained as to whether the contract was complied with in order to argue Sovereign Immunity as an agent of the State.  Defendant argues that the cite was wrong.  However, it is correct and is attached as  **Exhibit J**.   While Plaintiff argues that the contract is clear that Corizon is not entitled to sovereign immunity because it violated the

contract and because of its obligation to indemnify, its obligation to completely take care of the health of prisoners, at the very least, there are genuine issues of material fact precluding summary judgment.  Further, discovery is just commencing and Corizon has not demonstrated it was acting pursuant to guidelines of the contract.  The contract clearly shifted all responsibility for health care to Corizon and left no decision making to the State.  According to the case law cited in the Plaintiff's response, DOC 73, the contract is clear that Corizon is independent and controlling over the health of the prisoners.

The Court will have to have evidence and Corizon has not provided it.  It  merely moves for summary judgment based upon the contract language, which as Plaintiff has shown, demonstrates the opposite - that Corizon is an independent contractor not entitled to sovereign immunity and has alleged it violated its contract.   No control is kept by the Department of Corrections for the health and welfare of prisoners.

Corizon can be an agent and independent contractor at the same time. Indemnification would not be needed if Corizon was entitled to sovereign immunity.

In *Lee*, Amtrak made the same argument that Corizon makes here, that based upon

Fla. Stat. §§ 768.28(9)(a) and (10)(d) there is automatic entitlement to summary judgment.  "Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lee* citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In assessing if a genuine issue exists for trial, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)."  Importantly, to be considered an agent of the state and thus entitled to statutory immunity under Section

768.28(10)(d), the agent must be acting within the scope of and pursuant to the contract. *See Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 591 (Fla. 2d DCA 20:03). "It is not enough ... to demonstrate simply that the provider contracted to act on behalf of the state in the furnishing of the mentioned services," to show that the agent acted within the scope of and pursuant to the guidelines. *Id.*

Applying this standard, the Florida appellate court found that the contracting parties were not entitled to sovereign immunity under Section 768.28(11)(a), which contains the identical language at issue under Section 768.28(10)(d). *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 591 (Fla. 2d DCA 2003).

Ultimately, the court reversed the dismissal because it found the complaint alleged defendants violated the guidelines of their contract, so immunity did not apply. *See id.* at 590. *See also Peak v. Outward Bound*, 57 So. 3d 997, 999 (Fla. 2d DCA 2011). (finding the lower court erred in dismissing the complaint because it was inconclusive as to whether the defendant was acting pursuant to the contract to be afforded statutory immunity).

The Southern District Court denied summary judgment.

As Plaintiff has shown,   Defendants have not met their burden and the motions to dismiss and for summary judgment must be denied.

## CONCLUSION

Plaintiff complied with the medical malpractice statute and Defendants' attempt to use it in the civil action is improper and violates the purpose of the statute which is to promote settlement.  As to the statute of limitations, when plaintiff knew or should have known is a jury question.  Therefore, summary judgment cannot be granted on the medical malpractice statute

statute of limitations.  The Florida Supreme Court disfavors

the use of presuit to defeat a plaintiff's access to court.   Discovery is not complete and

Defendants have not met their burden for summary judgment.   The motions should be denied.

*/s/ Linda Bellomio Commons*

Linda Bellomio Commons, Esq.
Florida Bar No:0778346
P.O. Box 340261
Tampa, FL 33694
T:(352) 610-4416
F: (813) 265-3010
Email: lcommons@aol.com
Secondary: dmheiser1@gmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY THAT** a true and correct copy of the foregoing Motion For Sur-

Reply served this 23rd day of August, 2019  through the CM/ECF to all counsel of record.

*/s/ Linda Bellomio Commons*



**PAM BONDI**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

OFFICE OF THE ATTORNEY GENERAL
Tort Litigation Bureau

Anthony Dean Johnson
Assistant Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3649        Fax (850) 488-4872
*http://www.myfloridalegal.com*

June 13, 2017

**Via Email and U.S. Mail**

Linda Bellomio Commons, Esq.
Linda Bellomio Commons, P.A.
P.O. Box 340261
Tampa, Florida 33694

      RE:    **Waheed Nelson** – Notice of Intent to Initiate Litigation for Medical
             Malpractice

Dear Ms. Commons:

This letter confirms that Corizon Health Services, through its counsel, Mr. Gregg A.
Toomey, has accepted the tender of the defense of the above referenced medical
malpractice allegations against the Florida Department of Corrections regarding your
client Waheed Nelson.  Please direct all inquiries and requests regarding this presuit to
Mr. Toomey.  Mr. Toomey's contact information is as follows:

Gregg A. Toomey, Esq.
The Toomey Law Firm
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, Florida 33901
(239) 337-0103
"Gregg A. Toomey' gat@thetoomeylawfirm.com

EXHIBIT A

1

Thank you and please do not hesitate to contact me if you have any further questions or concerns.

Sincerely,

Anthony Dean Johnson
Assistant Attorney General


cc:

Gregg A. Toomey, Esq.


EXHIBIT A

Case 8:19-cv-00449-CEH-JSS   Document 88   Filed 08/23/19   Page 12 of 50 PageID 1881

**From:** Anthony Johnson <Anthony.Johnson@myfloridalegal.com>
**To:** Lcommons <Lcommons@aol.com>
**Cc:** Britt Thomas <Britt.Thomas@myfloridalegal.com>; JoAnn Mrazek <JoAnn.Mrazek@myfloridalegal.com>
**Subject:** Re: Presuit Re: Waheed Nelson
**Date:** Thu, May 25, 2017 3:00 pm

Ms. Commons:

It was a pleasure speaking with you today regarding the above referenced matter.

As I stated, the Department of Corrections has tendered the defense of this suit to Corizon through Mr. Toomey as their attorney.  Mr. Toomey has advised that he has contacted his client, but not had a response--although he does not anticipate any problem with acceptance of the tender.  You stated that Corizon has indeed been served with its own separate presuit notice so it is indeed aware of the action.

As agreed, we will provide you with a status update on the Corizon tender on Friday, June 2nd, if not before.  Thank you for this extension.

Additionally, as stated, I will personally be out of the office starting tomorrow for a couple weeks.  Please direct all responses to either:

**Britt Thomas**, Chief Assistant Attorney General for the Tort Litigation Unit (Britt.Thomas@myfloridalegal.com -- 850-414-3648); or

**JoAnn Mrazek**, paralegal for the Tort Litigation Unit (joann.mrazek@myfloridalegal.com -- 850-414-3710).

Thank you again for your professional courtesies.

Sincerely,


**A. Dean Johnson**
Assistant Attorney General
Tort Litigation Bureau
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300, direct (850)414-3649
Fax: (850) 488-4872
E-mail: anthony.johnson@myfloridalegal.com


▼ Britt Thomas---05/05/2017 04:13:29 PM---Ms. Commons -- I appreciate you taking the time today to speak to us.  As we discussed, Mr. Johnson

From: Britt Thomas/OAG
To: Lcommons@aol.com
Cc: Anthony Johnson/OAG@OAG
Date: 05/05/2017 04:13 PM                          EXHIBIT A
Subject: Presuit Re: Waheed Nelson

3601 RESSIE COLEMAN BLVD FL 3
FL
33630-5010
1189440600
04/05/2017   (800)275-8777   7:38 PM
======================================
======================================

| Product Description | Sale Qty | Final Price |
|---|---|---|
| First-Class Mail | 1 | $1.82 |
| Large Envelope (Domestic) (SAINT PETERSBURG, FL 33709) (Weight:0 Lb 4.90 Oz) (Expected Delivery Day) (Saturday 04/08/2017) | | |
| Certified | 1 | $3.35 |
| (@@USPS Certified Mail #) (70151520000218643355) | | |
| Return Receipt | 1 | $2.75 |
| (@@USPS Return Receipt #) (95909402206761327499913) | | |
| First-Class Mail | 1 | $1.82 |
| Large Envelope (Domestic) (SAINT PETERSBURG, FL 33703) (Weight:0 Lb 4.90 Oz) (Expected Delivery Day) (Saturday 04/08/2017) | | |
| Certified | 1 | $3.35 |
| (@@USPS Certified Mail #) (70151520000218523947) | | |
| Return Receipt | 1 | $2.75 |
| (@@USPS Return Receipt #) (95909402128752855535955) | | |
| First-Class Mail | 1 | $1.82 |
| Large Envelope (Domestic) (FORT LAUDERDALE, FL 33324) (Weight:0 Lb 4.70 Oz) (Expected Delivery Day) (Saturday 04/08/2017) | | |
| Certified | 1 | $3.35 |
| (@@USPS Certified Mail #) (70160910000102708772) | | |
| Return Receipt | 1 | $2.75 |
| (@@USPS Return Receipt #) (95909402206761327499623) | | |
| First-Class Mail | 1 | $1.82 |
| Large Envelope (Domestic) (TALLAHASSEE, FL 32399) (Weight:0 Lb 4.90 Oz) (Expected Delivery Day) (Saturday 04/08/2017) | | |
| Certified | 1 | $3.35 |
| (@@USPS Certified Mail #) (70160910000102708789) | | |
| Return Receipt | 1 | $2.75 |
| (@@USPS Return Receipt #) (95909402206761327499791) | | |
| First-Class Mail | 1 | $1.82 |
| Large Envelope (Domestic) (LAKE BUTLER, FL 32054) (Weight:0 Lb 4.90 Oz) (Expected Delivery Day) (Saturday 04/08/2017) | | |
| Certified | 1 | $3.35 |
| (@@USPS Certified Mail #) (70151520000218643379) | | |
| Return Receipt | 1 | $2.75 |
| (@@USPS Return Receipt #) | | |



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

TALLAHASSEE, FL 32399

Certified Mail Fee  $3.35
$2.75
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $_____
☐ Return Receipt (electronic)  $ $0.00
☐ Certified Mail Restricted Delivery  $ $0.00
☐ Adult Signature Required  $ $0.00
☐ Adult Signature Restricted Delivery $
Postage  $1.82
04/05/2017
Total Postage and Fees  $7.92
Sent To  Dept of Corrections
Street and Apt. No., or PO Box No.  501 S. Calhoun St
City, State, ZIP+4®  Tallahassee Fl 32399

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

FORT LAUDERDALE, FL 33324

Certified Mail Fee  $3.35
$2.75
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $_____
☐ Return Receipt (electronic)  $ $0.00
☐ Certified Mail Restricted Delivery  $ $0.00
☐ Adult Signature Required  $ $0.00
☐ Adult Signature Restricted Delivery $
Postage  $1.82
Total Postage and Fees  $7.92
Sent To  Corizon / CTCorp
Street and Apt. No., or PO Box No.  1200 Pine Isl
City, State, ZIP+4®  Plantation, FL

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

LAKE BUTLER, FL 32054

Certified Mail Fee  $3.35
$2.75
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)  $_____
☐ Return Receipt (electronic)  $ $0.00
☐ Certified Mail Restricted Delivery  $ $0.00
☐ Adult Signature Required  $ $0.00
☐ Adult Signature Restricted Delivery $
Postage  $1.82
04/05/2017
Total Postage and Fees  $7.92
Sent To  FDOC - RMC
Street and Apt. No., or PO Box No.  7765 S CR 231  P.O.Box 628
City, State, ZIP+4®  LAKE BUTLER, FL 32054

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

EXHIBIT B



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FDOC - RMC
7765 S. CR 231
P.O. Box 628
LAKE BUTLER, FL 32054

9590 9402 2067 6132 7499 20

2. Article Number (Transfer from service label)

7015 1520 0002 1864 3379

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☑ Agent ☐ Delivery

B. Received by (Printed Name)
Barbara Haxlemy 7/17

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

NELSON

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of
Corrections
501 S Calhoun St
Tallahassee, FL 32399

9590 9402 2067 6132 7497 91

2. Article Number (Transfer from service label)

7016 0910 0001 0270 8789

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

NELSON

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

EXHIBIT C

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Witchner Belizaire MD
Reception & Med Ctr
17765 S. CR 231
Lake Butler, Fl 32054

9590 9402 2067 6132 7492 27

2. Article Number (Transfer from service label)

7011 0470 0001 2323 1503

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

JUL 1 4 2017  FL 32054  USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

EXHIBIT C

*Law Offices of*

# *Linda Bellomio Commons, P.A.*

| Tampa Office: | Mailing Address: | Spring Hill Office: |
|---|---|---|
| Telephone: (813) 679-3181 | P.O. Box 340261 | |
| Facsimile: (813)  265-3010 | Tampa, Florida 33694 | (352) 610-4416 |

July 11, 2017

**CERTIFIED MAIL RETURN RECEIPT**
7011 0470 0001 2323 1503

Witchner Belizaire, M.D.
Reception & Medical Center
7765 S. CR 231
Lake Butler, FL 32054

Re: **Waheed Nelson**

**NOTICE OF INTENT TO INITIATE LITIGATION FOR
MEDICAL MALPRACTICE**

**Dear Sir or Madam:**

You hereby notified that Waheed Nelson intends to initiate litigation for medical malpractice against you and any other persons or entities with whom you had a legal relationship during the time you provided medical care and treatment to Waheed Nelson.

This claim arises out of negligent care, treatment, assessment provided to Waheed Nelson  rendered by you to Mr. Nelson was at the Reception and Medical Center which caused serious and permanent injury to Mr. Nelson.   The acts and omissions of each of the above listed healthcare providers occurred within the course and scope of their employment, actual or apparent agency with Reception and Medical Center.  The specific instances of negligence are set out in greater detail in the affidavit of Paul Genecin, M.D., which is enclosed herein and incorporated by reference.  The records reviewed by Dr. Genecin are also enclosed.

It is our contention that your care and treatment of Waheed Nelson represented a

Page 1 of  6

EXHIBIT D

breach in the prevailing standard of care.  You failed to investigate and treat his pain and ignored the X-rays and MRIs showing a fracture of his right ankle. He lost a limb because of your neglect.


To the best of Mr. Nelson's recollection and knowledge, he was treated by the following health care providers:

1.  Pinellas County Jail

2. Florida Department of Corrections RMC


It is possible that Mr. Nelson does not recall all of his treating health care providers. If you believe Mr. Nelson may have been treated by others, please bring those individuals to my attention so that I may place them on Notice.  I will be happy to respond to any inquiry you make with regard to any additional specific health care provider you believe may have treated Mr. Nelson.  To assist me in responding to such an inquiry, please provide me with the source of your belief that the person identified may have provided care to Mr. Nelson.

As required by Florida Statute §766.1065, enclosed is the mandatory authorization for release of protected health information in the form prescribed by the Statute. The enclosed authorization is provided to allow you to obtain written medical records as described therein.  Immediately upon receipt of any records obtained using this authorization, you are directed to provide the undersigned with complete copies. Failure to timely provide the records may result in sanctions against you as provided in Florida Statute §766.106(7). Please do not speak to any providers outside my presence.

We advise you that we will vigorously take all steps necessary to enforce and protect our client's rights if anyone seeks to go beyond what Rule 1.650 permits.
 As set forth in the Authorization, we have made a good faith effort to identify all known healthcare providers by category based upon information available to present.  We are continuing to investigate this matter and if we learn of additional health care providers or any information that may change a provider's category, we will provide you an updated authorization.  Please inform me immediately if you have any disagreement with the providers and the categories to which they have been assigned or if you learn of any additional healthcare providers who may have been involved with Mr. Nelson's medical care and treatment.  We will examine all information provided by you and respond accordingly.  If we do not receive a response to the contrary from you, we will assume that the information as provided in the Authorization is correct and acceptable to you for the purpose intended.

To the best of Mr. Nelson's recollection and knowledge, he was treated by the

Page 2 of  6

following healthcare providers during the two (2) year period prior to your negligence:

See above LIST

If you would like to take the unsworn statement of any physician who provided treatment to Mr. Nelson that would be relevant to this matter, please advise me.  Upon request, I will cooperate with you to take an unsworn statement of my client.

Section 766.106(3)(a), Florida Statutes, provides no suit shall be filed for a period of 90 days after notice is served upon a prospective defendant.   During this 90 day period, you or your insurer are to conduct a good faith investigation of this claim employing one of the several procedures provided for in the statute.  I am sure you are aware that any unreasonable failure to comply with this section justifies the dismissal of defenses in the event a subsequent lawsuit is filed.

In addition to the above, Section 766.106(6), Florida Statutes, provides that:

"Upon receipt of a prospective defendant of a notice of claim, the parties
shall make discoverable information available without formal discovery.
Failure to do so is grounds for dismissal of claims or defenses ultimately
asserted."

Accordingly, I ask that within  20 days either you or your representative respond in writing to the requests below and furnish the following materials:

 1.             Please state the name, address, occupation and employer of the person or persons investigating this claim and the specific investigative procedures used to evaluate this claim as specified in Section 766.106(3)(a), Florida Statutes.


2. Please forward all medical records, written notes, x-rays, bills, photographs and any other pertinent document or report concerning your treatment of Mr. Nelson.  The request asks you to provide copies of every written note or communication you have regarding Mr. Nelson,  whether it be notes on your file jacket, correspondence, telephone note, email, or anything of the like.

3.  If any other written document or report concerning your treatment
of Mr. Nelsoni is believed to exist but is not in your possession or control, please describe the document or report and provide the  present location and custodian of same.

4.  Please provide the full names and present addresses of all witnesses to your treatment of Mr. Nelson and all persons having knowledge of such treatment.   In addition to their names and present addresses, please briefly indicate each individual's interest in

Page 3 of  6

this matter, i.e., treating nurse, receptionist, eyewitnesses, etc., and the subject matter of their knowledge.  Please do not respond by stating:  "Please refer to medical records" or some similar response.  The purpose of this request is to determine if there are any individuals that may have knowledge of the facts that are material to the issues involved in this matter.

5.      If applicable: Have your privileges at any facility ever been suspended or revoked, or have you ever been disciplined by any State Board of Medicine where an administrative complaint was filed against you?

If so, please state the name of the complainant(s), the nature of the complaint, place of occurrence and assigned case number.

6.      If it is your contention that someone other than yourself was responsible in whole or in part for the occurrence of any of the negligence alleged above, please state each person's name, address, job title, along with the facts which you base your contention that  person was responsible.

In light of the Supreme Court's decision in <u>Fabre</u>, it would be prejudicial to my client for you **not** to identify any third persons during the pre-suit screening period only to attempt to avoid or mitigate your liability during subsequent litigation by alleging or arguing that someone other than yourself  is responsible for the injuries and damages alleged.

7.      Please list the name and last known address for each and every employee of yours during the time care and treatment was rendered to Mr. Nelson.  Please include the job title of each employee named, and whether he or she is still employed by you.

8.      Please state the name and address of your medical malpractice  insurance carrier, as well as the type and amount of coverage available to you as protection against this claim.  Please state the name and address of your medical malpractice insurance carrier as well as the type and amount of coverage available to your group as protection against this claim.

9.   Identify who you work for, and whether any outside agency hired  you to provide medical care to Mr. Waheed Nelson while he was at the Pinellas County Jail.

10.     If you believe this claim is not meritorious or, if you feel the case  may have merit against others but you should not be a defendant, or if you know facts that exculpate you, please explain.   We expect you to fully explain the basis of any defense you intend to raise should this claim result in litigation.  Please give facts, not conclusions that your care was acceptable.

Page 4 of  6

EXHIBIT D

11.     Please state the name and address of any entities, or persons with whom you had a legal relationship regarding the practice of medicine and nursing services during the period of time you treated Mr. Nelson. Please provide copies of any contracts or agreements between you and these entities or persons.

12.     Please advise when you will be available for an unsworn statement.

13.     Please advise whether or not you reported any incident involving the care of Mr. Nelson.

14.     Please indicate whether any person or entity is, or may be vicariously liable for your negligence as alleged.

15.  Produce any and all correspondence, including emails, relating to the care and treatment of Mr. Nelson while at your facility.

16.     With respect to your fees for services rendered to Mr. Nelson,  please:

1.     State the total amount of your charges;
2.     State the total amount you were paid;
3.     Provide an itemized statement of your charges;
4.     Identify if there any amounts of charges under dispute or under appeal;
5.     Identify the person or entity that paid the bill for your
         your services.

17.     Do you contend that this Notice of Intent is insufficient to place you upon notice of Plaintiff's claim?  If so, please respond to this question immediately, otherwise we will assume the answer is that you have been noticed properly.

18.  Provide a copy of your employment contract and any insurance for malpractice.

19.  If you believe this claim is not meritorious, or, if you feel the case may have Merit, but that you should not be a defendant; or if you know a fact that exculpates you, please explain.

20. Do you contend this Notice of Intent or Affidavit is defective in any way?   If so, please describe in detail the alleged defect so that I may cure it if necessary.

21.  Please state the complete legal name and address and any contracts for medical care in 2015.

22.  Please provide any and all contracts between you and Pinellas County, your

Page 5 of  6

employer, in effect at the time of Mr. Nelson's care in  2015.

The purpose of the 90 day investigatory period is to allow all parties concerned an opportunity to determine the validity of a claim, fairly assess the extent of damages and, hopefully, resolve the matter without the necessity of a lawsuit.   It is my intent to fully cooperate with you and your agents; therefore, I expect reciprocity.  In the event you or your representatives fail to comply with the requirements contained within this statute, then I will move to strike any and all defenses raised in response to a lawsuit, if one is ultimately filed.

Thank you for your time and attention to this matter.  Please call with any questions.

Very truly yours,

*Linda Bellomio Commons*

Linda Bellomio Commons, Esquire

**I HEREBY CERTIFY** that on11th day of July 2017, the original of the foregoing Notice of Intent to Initiate Litigation for Medical Negligence, along with the affidavit, HIPPA authorization and medical records has been furnished with this Notice by Certified Mail, Return Receipt Requested to the above addressee.

*Linda Bellomio Commons*

_____
Linda Bellomio Commons, Esq.
FL Bar No: 0778346

Page 6 of  6

EXHIBIT D

## AFFIDAVIT OF PAUL GENECIN, M.D.

STATE OF CONNECTICUT

COUNTY OF NEW HAVEN

    COMES NOW, PAUL GENECIN, M.D., being first duly sworn, who deposes and says as follows:

1. My name is PAUL GENECIN, M.D.   I am an active doctor duly licensed to practice medicine in the State of Connecticut and approved to render expert opinions in Florida.  My qualifications are set out fully in my curriculum vitae, a copy of which is attached hereto and incorporated by reference herein.

2. I have reviewed the following medical records and materials concerning Waheed Nelson:

        Pinellas County Jail
        RMC (Lake Butler Correctional Facility)

3. During the past three (3) years, my medical and surgical practice has included the evaluation, diagnosis and treatment of medical conditions that are the subject matter of claims brought on behalf of Waheed Nelson and I have had prior experience treating patients presenting with similar conditions.

4. I am familiar with the acceptable standards of care of the healthcare providers who are listed hereinafter and who are the subject of my opinions, and furthermore, I am familiar with the acceptable standards of care for the management of patients presenting with symptoms similar to those of Waheed Nelson.

5. It is my professional opinion that there exists reasonable grounds to believe that there was medical negligence on the part of Kevin Kyle, M.D. Benard Yukna, M.D. Witchner Belizaire, M.D. Maurico Rangel, M.D., nurses and nurse practitioners:

Constance Bumiller, Gail Newby, Darlene Liberti, in their care and treatment of Waheed Nelson and that such medical negligence resulted in the loss of his leg.

6. My opinions include, but are not limited to, that the care was below the standard of care, by:

    a. Failure to treat infection

    b. Failure to consult infectious disease specialist

    c. Delay in treatment and follow up

    d. Failure to follow up with orthopedic consults and failure to be proactive in the treatment; instead, only pain medicine and ointment symptomatic treatment was given.

    e. Delay in care and lack of follow up caused or contributed to the loss of limb

7. All of the opinions stated in this affidavit are expressed within a reasonable degree of medical probability and are based upon my education, training and experience, and upon my review of the records of Waheed Nelson.

8. This affidavit is not intended to, and does not, contain all of the opinions that I have reached concerning Waheed Nelson's care.

9. No opinion of mine has ever been disqualified by any court.

FURTHER AFFIANT SAYETH NOT.

Paul Genecin, M.D.

SWORN TO AND SUBSCRIBED, before me this ___11th___ day of __July__, 2017.

LORETTA C. MILLER

__Loretta C. Miller #139924__

NOTARY PUBLIC

My commission expires: 11/30/2019

EXHIBIT D

**AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION**
**[Pursuant to Florida Statute, 766.1065(3)]**

> *Florida Statute* s 766.1065 (1), Presuit notice of intent to initiate litigation for medical negligence under s. 766.106(2) must be accompanied by an authorization for release of protected health information in the form specified by this section, authorizing the disclosure of protected health information that is potentially relevant to the claim of personal injury or wrongful death. The presuit notice is void if this authorization does not accompany the presuit notice and other materials required by s 766.106(2)

A.    I, Waheed Nelson _____ authorize that the prospective defendants:

1. Kevin Kyle MD        2. Bernard Yukna MS

3. Witchner Belizaire MD   4. Maurico Rangel MD

and his/her/its insurer(s), self-insurers(s), and attorney(s), and the designated treating health care provider(s) listed below and his/her/its insures(s), self-insurer(s) and attorney(s), may obtain and disclose (within the parameters set out below) the protected health information described below for the following specific purposes:

1.    Facilitating the investigation and evaluation of the medical negligence claim described in the accompanying presuit notice, or;

2.    Defending against any litigation arising out of the medical negligence claim made on the basis of the accompanying presuit notice; or

3.    Obtaining legal advice or representation arising out of the medical negligence claim described in the accompanying presuit notice.

B.    The health information obtained, used, or disclosed extends to, and includes, verbal health information as well as written health information and is described as follows:

1.    The health information in the custody of the following health care providers who have examined, evaluated, or treated the Patient in connection with injuries complained of after the alleged act of negligence: (Names of current and prior health care providers are stated within the Notice.) This authorization extends to any additional health care providers that may in the future evaluated, examine, or treat the Patient for the injuries complained of.

2.    The health information in the custody of the following health care providers who have examined, evaluated, or treated the Patient during a period commencing two (2)

EXHIBIT D

years before the incident that is the basis of the accompanying presuit notice.   (Please note the names are provided within the Notice of Intent).

1. _____    2. _____
   _____       _____

3. _____    4. _____
   _____       _____

5. _____    6. _____
   _____       _____

C.   This authorization does not apply to the following list of health care providers possessing health care information about the Patient because the Patient certifies that such health care information is not potentially relevant to the claim of personal injury or wrongful death that is the basis of the accompanying presuit notice.

> [List the names of each health care provider to who this authorization does not apply and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure, if none, specify "none."]

### NONE

D.   The persons or class of persons to who the Patient authorizes such health care information to be disclosed or by whom such health care information is to be used:

   1.   Any health care provider providing care or treatment for the Patient.

   2.   Any liability insurer or self-insurer providing liability insurance coverage, self-insurance, or defense to any health care provider to whom presuit notice is given, or to any health care provider listed in subsections B. 1-2 above, regarding the care and treatment of the Patient.

   3.   Any consulting or testifying expert employed by or on behalf (name the health care provider the health care providers addressed in this notice and his/her/its insurer(s), self-insurer(s). or attorney(s) regarding the matter of the presuit notice accompanying this authorization.

   4.   Any attorney (including his/her staff) employed by or on behalf of (name of health care provider to whom presuit notice was given) or employed by or on behalf of any health care provider(s) listed in subsections B. 1-2 above, regarding the matter of the presuit notice accompanying this authorization or the care and treatment of the Patient.

5.       Any trier of the law or facts relating to any suit filed seeking damages arising out of the medical care or treatment of the Patient.

E.       This authorization expressly allows the persons or class of persons listed in subsections D. 2-4 above to interview the health care providers listed in subsections B. 1-2 above, without the presence of the Patient or the Patient's attorney.

F.       This authorization expires upon resolution of the claim or at the conclusion of any litigation instituted in connection with the matter of the presuit notice accompanying this authorization, whichever occurs first.

G.       The Patient understands that, without exception, the Patient has the right to revoke this authorization in writing. The Patient further understands that the consequence of any such revocation is that the presuit notice under s 766.106(2), Florida Statutes, is deemed retroactively void from the date of issuance, and any tolling effect that the presuit notice may have had on any applicable statute-of-limitations period is retroactively rendered void.

H.       The Patient understands that signing this authorization is not a condition for continued treatment, payment, enrollment, or eligibility for health plan benefits.

I.       The Patient understands that information used or disclosed under this authorization may be subject to additional disclosures by the recipient and may not be protected by federal HIPAA privacy regulations.

Signature of Patient Representative: _Waheed Nelson_

Name of Patient Representative:  Waheed Nelson

Description of Representative's Authority:

Date:   March 3, 2017

EXHIBIT D



# THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: alr@thetoomeylawfirm.com
Direct Line: 239.337.0279
May 2, 2017

***Via Email***
Linda B. Commons
P.O. Box 340261
Tampa, FL 33694

Re:     Your Client: Waheed Nelson

Dear Ms. Commons:

This office represents Corizon, LLC, and all current and former employees providing medical and mental health care to inmates in the custody of the Florida Department of Corrections. Please direct all inquiries to me, and have no contact with any of my clients.

I am in receipt of your notice of intent, and will respond in due course.

Very truly yours,

Gregg A. Toomey

GAT/sb
Cc:     Britt Herron

EXHIBIT E



# THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida 33901
Telephone: 239.337.1630 / Facsimile: 239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
July 10, 2017

*__Via Email to: lcommons@aol.com and Certified Mail, Return Receipt Requested__*

Linda Bellomio Commons
PO Box 340261
Tampa, FL 33625

Re:     Your Client: Waheed Nelson

Dear Ms. Bellomio-Commons:

Based on our investigation of this claim, we do not believe that the Florida Department of Corrections ("FDOC"), Corizon, LLC or any FDOC or Corizon employee, including its physicians and nurses, departed from the standard of care or that they were responsible for the damages claimed by your client.

We are enclosing a sworn "Corroboration of Lack of Reasonable Grounds for Medical Negligence Litigation" affidavit executed by Todd Wilcox, M.D., to support our rejection of your client's claims against the FDOC, Corizon, LLC and their employees, including its physicians and nurses.

Very truly yours,

Gregg A. Toomey

GAT/ar
Enclosure as stated

EXHIBIT E

## AFFIDAVIT TODD WILCOX, M.D.

STATE OF ~~UTAH~~ Arizona   )
             : SS
COUNTY OF ~~SALT LAKE~~  )
         maricopa

   BEFORE ME, the undersigned authority, this day personally appeared Todd Wilcox, M.D. who after being duly sworn, deposes and says as follows:

   a. My name is Todd Wilcox, M.D.  I am a medical expert as defined by Florida Statute 766.202(6) in that I am a correctional physician currently licensed to practice in the State of Utah.

   b. I have been practicing as such for 20 years.  I am currently in private practice in Salt Lake City, Utah.  My curriculum vitae is attached hereto and incorporated by reference.

   c. I am board certified by the American Board of Urgent Care Medicine, American Academy of HIV Medicine and I am an Advanced Certified Correctional Health Care Provider. During the 20 years immediately preceding the date of this incident, my medical practice included evaluation, diagnosis and treatment of the medical condition which is the subject of this claim, as well as interaction with other healthcare providers.

   d. I have never been disqualified as an expert in court when rendering an expert opinion.  I have not rendered a previous medical opinion which has been disqualified in any administrative forum, court of law or proceeding to my knowledge.  I have never been found guilty of fraud or perjury in any jurisdiction.

   e. I am familiar with the prevailing professional standard of care for the care and treatment of patients with signs and symptoms such as Waheed Nelson in Florida and similar medical communities throughout the United States.  I have reviewed and analyzed the following pertaining to Waheed Nelson:

EXHIBIT E

- Notice of Intent served on Corizon
- Florida Department of Corrections medical records
- Corizon Health Utilization Management records
- Pinellas Surgical Associates medical records.

f.     Based on my training and experience and my review of the records provided to me, it is my opinion that the care and treatment afforded to Waheed Nelson by Corizon, LLC ("Corizon") and it's employees during his incarceration within the Florida Department of Corrections met the prevailing standard of care in Florida, for patients undergoing this type of care. Nothing that Corizon or its employees did or did not do with regard to the care and treatment of Waheed Nelson deviated from the standard of care, and did not cause or contribute to any damage.

g.     In summary, I believe that the care and treatment rendered to Waheed Nelson by Corizon was appropriate.   Thus, I find no deviation from the standard of care regarding the care and treatment rendered to Waheed Nelson by Corizon and its employees, and nothing Corizon or its employees did or failed to do caused or contributed to any injury to Waheed Nelson.

EXHIBIT E

FURTHER AFFIANT SAITH NAUGHT.

DATED on this __10th__ day of __July__, 2017.

_____
Todd R. Wilcox, M.D.

The foregoing instrument was acknowledged before me this __10__ day of __July__, 2017. The above-named individual, Todd R. Wilcox, M.D., is personally known to me or has produced the following identification which is current or has been issued within the past five years and bears a serial or other identifying number and did (did not) take an oath:

_____ the sworn written statement of a credible witness (who is personally known to the Notary) that the signer is personally known to the witness;

__X__ a driver's license or non-driver's ID issued by __Utah__ or any other U.S. state;

_____
(Signature of Notary)

> Christine Amaro
> Notary Public
> Maricopa County, Arizona
> My Comm. Exp. 08-18-2020

Christine Amaro
_____
(Name of Notary Typed, Printed or Stamped)

NOTARY PUBLIC STATE OF __Arizona__
(Commission number) (Notarial Seal)

My Commission Expires: __08·18·2020__



# THE TOOMEY LAW FIRM

The Old Robb & Stucky Building
1625 Hendry St., Suite 203, Ft. Myers, Florida  33901
Telephone: 239.337.1630 / Facsimile:  239.337.0307
www.thetoomeylawfirm.com

Reply to: gat@thetoomeylawfirm.com
Direct Line: 239.337.0103
October 16, 2017

*Via Email to: lcommons@aol.com*
Linda Bellomio Commons
PO Box 340261
Tampa, FL 33625

  Re:  Your Client: Waheed Nelson

Dear Ms. Bellomio-Commons:

  Based on our investigation of this claim, we do not believe that Dr. Witchner Belizaire departed from the standard of care or that he was responsible for the damages claimed by your client.

  We are enclosing a sworn "Corroboration of Lack of Reasonable Grounds for Medical Negligence Litigation" affidavit executed by Todd Wilcox, M.D., to support our rejection of your client's claims against Dr. Belizaire.

         Very truly yours,

         Gregg A. Toomey

GAT/hms
Enclosure as stated

EXHIBIT E

## AFFIDAVIT TODD WILCOX, M.D.

STATE OF ~~UTAH~~ Arizona                      )
                                               : SS
COUNTY OF ~~SALT LAKE~~ maricopa               )

BEFORE ME, the undersigned authority, this day personally appeared Todd Wilcox, M.D. who after being duly sworn, deposes and says as follows:

a.      My name is Todd Wilcox, M.D.  I am a medical expert as defined by Florida Statute 766.202(6) in that I am a correctional physician currently licensed to practice in the State of Utah.

b.      I have been practicing as such for 20 years.  I am currently in private practice in Salt Lake City, Utah.   My curriculum vitae is attached hereto and incorporated by reference.

c.      I am board certified by the American Board of Urgent Care Medicine, American Academy of HIV Medicine and I am an Advanced Certified Correctional Health Care Provider. During the 20 years immediately preceding the date of this incident, my medical practice included evaluation, diagnosis and treatment of the medical condition which is the subject of this claim, as well as interaction with other healthcare providers.

d.      I have never been disqualified as an expert in court when rendering an expert opinion.  I have not rendered a previous medical opinion which has been disqualified in any administrative forum, court of law or proceeding to my knowledge.  I have never been found guilty of fraud or perjury in any jurisdiction.

e.      I am familiar with the prevailing professional standard of care for the care and treatment of patients with signs and symptoms such as Waheed Nelson in Florida and similar medical communities throughout the United States.  I have reviewed and analyzed the following pertaining to Waheed Nelson:

EXHIBIT  E

- Notice of Intent served on Corizon

- Florida Department of Corrections medical records

- Corizon Health Utilization Management records

- Pinellas Surgical Associates medical records.

f.      Based on my training and experience and my review of the records provided to me, it is my opinion that the care and treatment afforded to Waheed Nelson by Corizon, LLC ("Corizon") and it's employees during his incarceration within the Florida Department of Corrections met the prevailing standard of care in Florida, for patients undergoing this type of care. Nothing that Corizon or its employees did or did not do with regard to the care and treatment of Waheed Nelson deviated from the standard of care, and did not cause or contribute to any damage.

g.      In summary, I believe that the care and treatment rendered to Waheed Nelson by Corizon was appropriate.   Thus, I find no deviation from the standard of care regarding the care and treatment rendered to Waheed Nelson by Corizon and its employees, and nothing Corizon or its employees did or failed to do caused or contributed to any injury to Waheed Nelson.

EXHIBIT  E

FURTHER AFFIANT SAITH NAUGHT.

DATED on this 10th day of July, 2017.

_____
Todd R. Wilcox, M.D.

The foregoing instrument was acknowledged before me this 10 day of July, 2017. The above-named individual, Todd R. Wilcox, M.D., is personally known to me or has produced the following identification which is current or has been issued within the past five years and bears a serial or other identifying number and did (did not) take an oath:

_____ the sworn written statement of a credible witness (who is personally known to the Notary) that the signer is personally known to the witness;

___X___ a driver's license or non-driver's ID issued by Utah or any other U.S. state;

_____
(Signature of Notary)

Christine Amaro
Notary Public
Maricopa County, Arizona
My Comm. Exp. 08-18-2020

Christine Amaro
(Name of Notary Typed, Printed or Stamped)

NOTARY PUBLIC STATE OF Arizona
(Commission number) (Notarial Seal)

My Commission Expires: 08·18·2020

EXHIBIT E



# Department of Health

## TODD RANDALL WILCOX

## License Number: MEEW657

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW657 |
| **License Status** | NULL AND VOID/ |
| **License Expiration Date** | 8/7/2014 |
| **License Original Issue Date** | 08/08/2012 |
| **Address of Record** | If further information is needed, please contact the Department of Health at (850) 488-0595. |
| | UNITED STATES |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

EXHIBIT  F

COMPOSITE EXHIBIT B

 **Department of Health**



# TODD RANDALL WILCOX

## License Number: MEEW1981

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW1981 |
| **License Status** | NULL AND VOID/ |
| **License Expiration Date** | 5/12/2016 |
| **License Original Issue Date** | 05/13/2014 |
| **Address of Record** | If further information is needed, please contact the Department of Health at (850) 488-0595. |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

EXHIBIT F

COMPOSITE EXHIBIT B

FL DOH MQA Search Portal

 Department of Health



# TODD RANDALL WILCOX

## License Number: MEEW5930

*Data As Of 6/21/2019*

| | |
|---|---|
| **Profession** | Medical Doctor Expert Witness |
| **License** | MEEW5930 |
| **License Status** | ACTIVE/ |
| **License Expiration Date** | 9/4/2020 |
| **License Original Issue Date** | 09/05/2018 |
| **Address of Record** | 4760 SOUTH HIGHLAND DRIVE |
| | SALT LAKE CITY, UT 84117 |
| | UNITED STATES |
| **Discipline on File** | No |
| **Public Complaint** | No |

The information on this page is a secure, primary source for license verification provided by the Florida Department of Health, Division of Medical Quality Assurance. This website is maintained by Division staff and is updated immediately upon a change to our licensing and enforcement database.

**EXHIBIT F**

COMPOSITE EXHIBIT B

*Law Offices of*

# Linda Bellomio Commons, Esq.

| **Tampa Office:** | **Mailing Address:** | **Spring Hill** |
|---|---|---|
| **Office:** | | |
| Telephone: (813) 679-3181 | P.O. Box 340261 | (352) 610-4416 |
| Facsimile: (813)   265-3010 | Tampa, Florida 33694 | |

August 5, 2017

Gregg A. Toomey, Esq.
**VIA EMAIL**gat@thetoomeylawfirm.com

   Re: Waheed Nelson vs. Dr. Witchner Belizaire

## SUPPLEMENTAL PRESUIT INTERROGATORIES AND REQUEST FOR PRODUCTION

   1. It is my understanding you, Mr. Toomey, are assuming defense for the Florida Department; therefore, please answer number 2 of Waheed Nelson's presuit request.

   2. Please answer number 18 of Waheed Nelson's presuit request and provide the contract of employment between Dr. Witchner Belizaire and the Florida Department of Corrections.

   3. Please answer number 18 of Waheed Nelson's presuit request and provide the contract of employment between Dr. Witchner Belizaire and Corizon, LLC.

   4. Please provide potential dates for your unsworn statement during the end of August and September, 2017.

   5. What specialty is Dr. Witchner Belizaire?

   6. Please provide a copy of Dr. Witchner Belizaire's CV.

   7. Please provide a better response to Waheed Nelson's presuit request number 20.

   Thank you for your attention to this matter.

     Sincerely,

     Linda Bellomio Commons, Esq.

LBC/amb

**EXHIBIT G**

**From:** Linda Bellomio Commons, R.N., J.D. <lcommons@aol.com>
**To:** hms <hms@thetoomeylawfirm.com>; gat <gat@thetoomeylawfirm.com>; alr <alr@thetoomeylawfirm.com>
**Subject:** Fwd: Waheed Nelson
**Date:** Thu, Aug 24, 2017 12:18 pm
**Attachments:** Letter to Atty Toomey - Presuit Discovery Requests.pdf (16K)

May I have a response?

-----Original Message-----
From: Linda Bellomio Commons, R.N., J.D. <lcommons@aol.com>
To: hms <hms@thetoomeylawfirm.com>
Cc: gat <gat@thetoomeylawfirm.com>; alr <alr@thetoomeylawfirm.com>
Sent: Sat, Aug 5, 2017 5:15 pm
Subject: Re: Waheed Nelson

Please see attached discovery requests

*Linda Bellomio Commons, R.N., J.D.*
Law Office of Linda Bellomio Commons, P.A.
P.O. Box 340261
Tampa, FL 33694
T:(813) 679-3181
T:(352) 610-4416
F:(813) 265-3010
Email: LCommons@aol.com
This e-mail contains legally privileged and confidential information intended only for the individual or entity named within the message. Should the intended recipient forward this message to another person or party, that action could constitute a waiver of the attorney/client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited. If this communications was received in error, please notify us by reply e-mail and delete the original message.

-----Original Message-----
From: Heidi Szolga <hms@thetoomeylawfirm.com>
To: lcommons <lcommons@aol.com>
Cc: Gregg A. Toomey <gat@thetoomeylawfirm.com>; Andrea L. Rousseau <alr@thetoomeylawfirm.com>
Sent: Mon, Jul 31, 2017 3:00 pm
Subject: Waheed Nelson

Attached please find correspondence on the above matter. Please contact our office should you have any questions.
Thank you,

Heidi
Heidi M. Szolga, Legal Assistant
The Toomey Law Firm
Main:  (239) 337-1630
Fax:  (239) 337-0307
Email:  hms@thetoomeylawfirm.com

 The Toomey Law Firm LLC
The Old Robb & Stucky Building

**EXHIBIT G**

*Law Offices of*

# *Linda Bellomio Commons, P.A.*

| **Tampa Office:** | **Mailing Address:** | **Spring Hill Office:** |
|---|---|---|
| Telephone: (813) 679-3181 | P.O. Box 340261 | |
| Facsimile: (813)  265-3010 | Tampa, Florida 33694 | (352) 610-4416 |

May 13, 2017

**CERTIFIED MAIL**

7011 0470 0001 2323 1527

Department of Financial Services

200 East Gaines Street

Tallahasee, FL 32399

### NOTICE OF CLAIM PURSUANT
### TO SECTION 768.28, FLORIDA STATUTES

> RE:   **Claimant:           Waheed Nelson**
> **Date of Birth:        10/1/78**
> **Social Security Number:    xxx-xx-1507**
> **Date of Incident:      2015**
> **Place of Birth:      Florida**

Dear Risk Manager:

You are hereby placed on Notice of a Medical Malpractice Claim against the County on behalf of Waheed Nelson.  Enclosed is the Notice of Intent letter sent April 3, 2017, along with an affidavit from an expert, medical records and HIPPA . Please be advised that there are no prior adjudicated, unpaid claims owed by the claimant to the state, its agency, officer or subdivision.

You hereby notified that Waheed Nelson intends to initiate litigation for medical malpractice against you and any other persons or entities with whom you had a legal relationship during the time you provided medical care and treatment to Waheed Nelson while in the Pinellas County Jail.

**EXHIBIT  H**

This claim arises out of negligent care, treatment, assessment provided to Waheed Nelson  rendered by physicians, nurses and nurse practitioners and other treaters while at the Pinellas County Jail which caused serious and permanent injury to Mr. Nelson.   The acts and omissions of each healthcare provider occurred within the course and scope of their employment, actual or apparent agency with Pinellas County.

It is our contention that your care and treatment of Waheed Nelson represented a breach in the prevailing standard of care.  There was a failure to investigate and treat a fractured ankle, pain and ignored the X-rays and MRIs showing a talus and calcaneus fracture of his right ankle.  Ultimately, he lost a limb because of the neglect.

The value for the loss of a limb exceeds $200,000.  In the future, he will need a prosthesis, wheelchair, mobility devices.

I look forward to hearing from you and hope that we can come to a resolution of the matter without litigation.

Yours truly,

*Linda Bellomio Commons*

Linda B. Commons

**EXHIBIT  H**



```
U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage        $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees   $

Sent To   Dept Fin Serv
Street, Apt. No.;
or PO Box No.  200 # Gaines St
City, State, ZIP+4  Tallah 32399

PS Form 3800, August 2006        See Reverse for instructions
```

```
                        TAMPA
             7601 BESSIE COLEMAN BLVD FL 3
                        TAMPA
                         FL
                     33630-5010
                     1189440600
05/13/2         (800)275-8777   3:30 PM

Product                 Sale      Final
Description             Qty       Price

First-Class             1         $0.49
Mail
Letter
   (Domestic)
   (LARGO, FL  33779)
   (Weight:0 Lb 0.60 Oz)
   (Expected Delivery Day)
   (Monday 05/15/2017)
Certified               1         $3.35
   (@@USPS Certified Mail #)
   (70110470000123231497)
Return                  1         $2.75
Receipt
   (@@USPS Return Receipt #)
   (95909402206761327749661)
First-Class             1         $0.49
Mail
Letter
   (Domestic)
   (TALLAHASSEE, FL  32311)
   (Weight:0 Lb 0.70 Oz)
   (Expected Delivery Day)
   (Monday 05/15/2017)
Certified               1         $3.35
   (@@USPS Certified Mail #)
   (70160750000054520132)
Affixed                 1        ($0.49)
Postage
   (Affixed Amount:$0.49)
First Class             1         $2.67
Parcel Service
   (Domestic)
   (L... FL  33779)
   (...  Lb 3.90 Oz)
   (E... Delivery Day)
   (Monday 05/15/2017)
Certified               1         $3.35
   (@@USPS Certified Mail #)
   (70110470000123231473)
Return                  1         $2.75
Receipt
   (@@USPS Return Receipt #)
   (95909402206761327749692)
First-Class             1         $2.85
Parcel Service
   (Domestic)
   (TALLAHASSEE, FL  32399)
   (Weight:0 Lb 4.50 Oz)
   (Expected Delivery Day)
   (Monday 05/15/2017)
Certified               1         $3.35
   (@@USPS Certified Mail #)
   (70110470000123231527)
Return                  1         $2.75
Receipt
   (@@USPS Return Receipt #)
   (95909402206761327749678)
First-Class                       $2.67
```

**EXHIBIT  H**



**JAMES V. COOK**
ATTORNEY-AT-LAW

MAIL TO: POST OFFICE BOX 10021
TALLAHASSEE, FLORIDA 32302

(850) 222-8080
FAX: (850) 561-0836

July 28, 2017

**Re: NOTICE OF CLAIM PURSUANT TO § 768.28, FLORIDA STATUTES**

Julie Jones
Secretary, Department of Corrections
501 South Calhoun Street
Tallahassee, FL 32399-2500

Florida Department of Financial Services
Risk Management, State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0338

**CERTIFIED RCPT: 7014 0150 0002 0389 2859**   **CERTIFIED RCPT: 7014 0150 0002 0389 2866**

CLAIMANT: **WAHEED NELSON**
BASIS OF CLAIM: **Medical Negligence; Negligence; Failure to Treat**
DATE AND PLACE OF BIRTH: **October 1, 1978, Pinellas County, Florida**
SOCIAL SECURITY NUMBER: **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**
STATE CLAIMS OVER $200: **None known**

**Claim:** On January 7, 2015, Waheed Nelson was the victim of a slip and fall accident at the Pinellas County Jail. X-rays were ordered but no other imaging. X-rays show the ankle is broken. Surgery was scheduled and then cancelled. Nelson feels increasing pain which is not effectively addressed. Over weeks, the swelling in his ankle increases. He begins to feel numbness. The jail fails to take him to some appointments. He suffers chronic edema. On April 16, 2015, without having had significant treatment, he is transferred to the Florida Department of Corrections (FDC). On that date, he receives additional x-rays at the Reception and Medical Center of the FDC. Possible infection is noted and MRI recommended. MRI in May shows bone infection. Failure to treat leads to amputation of right leg.

**Damages.** Physical injury and loss of his right leg. Emotional distress, loss of mobility and enjoyment of life. Claimant will seek pecuniary damages and damages for physical injury, mental distress, costs and, if permitted by law, attorney's fees and punitive damages as well.

**Spoliation.** The public entity to which this claim is addressed may have records, physical evidence, documents, recordings, or other evidence relevant to a civil claim. This letter will serve as general notice that all such documents, items, and records should be preserved, regardless of purge schedules, as evidence in a prospective legal action. Please let us know if there is any reason that an action should not be filed in this case.

**Please respond to acknowledge this Letter of Claim when received.**

James V. Cook,
Attorney-at-Law

Copy: Fla. Dept. Ins., Risk Mgmt.

**EXHIBIT I**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

| A. Signature | |
| --- | --- |
| X | ☐ Agent ☐ Addressee |
| B. Received by ( Printed Name) | C. Date of Delivery |

1. Article Addressed to:

**Florida Dept. of Financial Services**
Risk Management, State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0338

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

Received
DEPT OF FINANCIAL SERVICES
TALLAHASSEE, FL 32399-0311

**EXHIBIT I**

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

045

7014 0150 0002 0389 2866

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

2018 WL 3884903
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Tairia LEE and Lashawne Josaphat, as Guardian
of Tairia Lee, Plaintiffs,
v.
Alberto PEREZ; Russell Griffin, Jr.; James Knox;
Veolia Transportation Maintenance and
Infrastructure, Inc.; National Railroad Passenger
Corporation d/b/a Amtrak; and South Florida
Regional Transportation Authority, Defendants.

Case No. 16-cv-81745-Brannon
|
Signed 07/25/2018

**Attorneys and Law Firms**

Christopher Joseph Keller, Lytal, Reiter, Smith, Ivey &
Fronrath, West Palm Beach, FL, for Plaintiffs.

Daniel John Fleming, Gray Robinson, Philip Charles
Mokris, Jose Alfredo Gutierrez, Melkus Fleming &
Gutierrez, Tampa, FL, James Michael Fishman, Miami,
FL, Shane Weaver, Office of the Attorney General, West
Palm Beach, FL, William Edward Calnan, Waldman
Trigoboff Hildebrandt & Calnan, P.A., Fort Lauderdale,
FL, Anthony Merendino, Luks, Santaniello, Petrillo &
Jones, Boca Raton, FL, for Defendants.

**ORDER DENYING DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT [DE 122, DE 108]**

DAVE LEE BRANNON, U.S. MAGISTRATE JUDGE

**\*1** THIS MATTER is before the Court on Defendant's,
Veolia Transportation Maintenance and Infrastructure,
Inc. ("VTMI"), Motion for Summary Judgment [DE 108]
and Defendant's, National Railroad Passenger
Corporation d/b/a Amtrak ("Amtrak"), Motion for Partial
Summary Judgment [DE 122], Plaintiffs', Tairia Lee and
Lashawne Josaphat as Guardian of Tairia Lee
("Plaintiffs"), responses in opposition [DE 113 and DE
125], and VTMI's reply [DE 116]. The Court has

carefully reviewed the Motions, all supporting and
opposing filings, and the record in this case. For the
reasons set forth below, Defendants' Motions [DE 108
and DE 122] are DENIED.

**I. BACKGROUND**

On July 6, 2016, a northbound Amtrak train collided with
Plaintiff Tairia Lee's ("Lee") vehicle at the South Florida
Regional Transportation Authority ("SFRTA") Crossing
at 25th Street in West Palm Beach, Florida (the
"Crossing"). DE 112-2 at 1. As a result of the collision,
Lee sustained serious injuries. *Id.*; DE 65 at ¶ 23.
Defendants Russel Griffin, Jr. ("Griffin") and James
Knox ("Knox") were employed by Amtrak as locomotive
engineers and acting within the scope of their
employment at all times relevant to this matter. DE 65 at
¶¶ 11, 12. Griffin was operating the Amtrak train and
Knox was in the train as it approached the Crossing. *Id.* at
¶ 18. Defendant Alberto Perez ("Perez"), who was under
VTMI's supervision and instruction, was performing
signal testing at the Crossing at the time of the accident.
DE 109-1 at ¶¶ 4-5; 112-2 at 5-6; DE 64 at ¶ 10.

Prior to the accident, Perez contacted Amtrak dispatcher,
Rodney Fernandez, to report that he was conducting relay
testing at the Crossing and it would not affect any train
traffic, although the [crossing] gates may go up an down.
DE 121-5 at 23:1-3; 122-2 at 2:9-25. Around the time of
Perez's testing, the crossing signals and gates failed to
properly operate. DE 112-2 at 2-3.

Before the collision, the train had received a clear signal
indicating that it was okay to proceed toward the
Crossing, but as the train approached one of the
locomotive engineers noticed that vehicles were passing
over the Crossing, the warning system was not
functioning properly, and the gates remained in the
upright position. *Id.* at 2-4. The train was unable to stop
before reaching the Crossing, and it collided with Lee's
vehicle. *Id.* at 3.

At the time of the collision, Amtrak was under contract
with SFRTA to provide dispatcher services, and VTMI
was under contract with SFRTA to provide railroad
infrastructure and signal maintenance. DE 122-1; DE
109-1 at ¶¶ 3-4. It is undisputed that SFRTA is an agency
of the State of Florida within the meaning of Section
768.28, Florida Statutes. DE 64 at ¶ 13; DE 65 at ¶ 13.

Amtrak maintains that at the time of the accident, through

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT J**

its dispatchers, it was acting within the scope and pursuant to the guidelines of the contract with SFRTA. DE 122 at ¶ 16. Plaintiffs dispute this material fact and argue that there is a genuine issue regarding whether Amtrak complied with the contractual guidelines and applicable rules. DE 125 at ¶ 16.

**\*2** VTMI maintains that at the time of the accident Perez was acting pursuant to the guidelines and rules set forth in VTMI's contract with SFRTA. DE 108 at ¶ 14. Plaintiffs dispute this material fact and assert that Perez failed to comply with requirements of SFRTA, VTMI, and federal law. DE 113 at 7. Specifically, Plaintiffs argue that Perez did not report an activation failure or request positive protection as required. *Id.*

Amtrak and VTMI seek statutory immunity as agents of the state under Fla. Stat. § 768.28. Amtrak seeks partial summary judgment as to Count VI for negligent dispatching and/or negligent performance of work related to the railroad crossing warning systems. DE 122 at p.2, n.1. VTMI seeks summary judgment on Counts II (negligence) and III (vicarious liability). Perez joins in VTMI's motion and seeks summary judgment on Count I for negligence.[1]

## II. **Legal Standards**

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show that there is no genuine dispute, the moving party must support its position by citing to evidence in the record which may include depositions, documents, affidavits, electronically stored information, admissions, or other materials. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden is met if it shows the nonmoving party failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the nonmoving party may "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 243 (internal citations omitted). The party opposing the motion for summary judgment may not rely on conclusory statements or unsupported facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 447 U.S. at 248. In assessing if a genuine issue exists for trial, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

### B. Statutory Immunity under Fla. Stat. § 768.28

Section 768.28 of the Florida Statutes provides sovereign immunity for some torts, and provides immunity for "agents of the state" under certain circumstances. Section 768.28(9)(a) states:

> No officer, employee, or *agent of the state* or any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad

**EXHIBIT J**

faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*3 Fla. Stat. § 768.28(9)(a) (emphasis added). Section 768.28(10)(d) defines "agents of the state" as those who contract with SFRTA as follows:

For the purposes of this section, operators, dispatchers, and providers of security for rail services and rail facility maintenance providers in the South Florida Rail Corridor, or any of their employees or agents, performing such services under contract with and on behalf of the [SFRTA] or the Department of Transportation *shall be considered agents of the state while acting within the scope of and pursuant to guidelines established in said contract or by rule.*

Fla. Stat. § 768.28(10)(d) (emphasis added).

Importantly, to be considered an agent of the state and thus entitled to statutory immunity under Section 768.28(10)(d), the agent must be acting within the scope of and pursuant to the contract. *See Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 591 (Fla. 2d DCA 20:03). "It is not enough ... to demonstrate simply that the provider contracted to act on behalf of the state in the furnishing of the mentioned services," to show that the agent acted within the scope of and pursuant to the guidelines. *Id.* Applying this standard, the Florida appellate court found that the contracting parties were not entitled to sovereign immunity under Section 768.28(11)(a), which contains the identical language at

issue under Section 768.28(10)(d).[2] *See id.* Ultimately, the court reversed the dismissal because it found the complaint alleged defendants violated the guidelines of their contract, so immunity did not apply. *See id.* at 590. *See also Peak v. Outward Bound*, 57 So. 3d 997, 999 (Fla. 2d DCA 2011) (finding the lower court erred in dismissing the complaint because it was inconclusive as to whether the defendant was acting pursuant to the contract to be afforded statutory immunity); *Roldan v. Dassau*, No. 12-22103 CACE (04), Order Denying Motion for Summary Judgment (Fla. 17th Cir. Ct. Dec. 30, 2013) (denying summary judgment regarding sovereign immunity under Section 768.28(10)(d) where genuine issues of material fact existed concerning whether defendants were acting within the scope of and pursuant to the guidelines established by contract or by rule).

### III. <u>ANALYSIS</u>

**A. A genuine issue of material fact exists as to whether Amtrak is an "agent of the state" and thus entitled to statutory immunity.**

Amtrak moves for partial summary judgment on Plaintiffs' amended complaint, which alleges acts of negligence, on the belief that it is entitled to statutory immunity pursuant to Fla. Stat. §§ 768.28(9)(a) and (10)(d) as a statutory agent of SFRTA. Amtrak argues that it is completely immune from suit as an "agent of the state" for the claim against it for negligent dispatching and/or negligent performance of work with respect to the railroad crossing warning systems. Plaintiffs maintain that Amtrak is not entitled to statutory immunity because there are genuine issues of material fact as to whether Amtrak was acting within the scope and pursuant to the guidelines established in the contract and applicable rules.

*4 Under Section 768.28(10)(d), dispatchers or their agents in the South Florida Rail Corridor "performing such services under contract with and on behalf of the [SFRTA] ... shall be considered agents of the state *while acting within the scope and pursuant to guidelines established in said contract or by rule.*" Fla. Stat. § 768.28(10)(d) (emphasis added). No agent of the state "shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the

scope of her or his employment or function[.]" Fla. Stat. § 768.28(9)(a).

Here, Amtrak was providing dispatcher services at the time of the subject accident. Pursuant to Amtrak's contract with SFRTA, "[a]ll Dispatching, Train Traffic Control and Yard Services shall be governed by and subject to all current applicable operating and safety rules, orders, procedures, and regulatory standards of CSXT, FRA, APTA, FDOT, and AAR as agreed to with SFRTA." DE 122-1 at 33 [4.5 Dispatching, Train Traffic Control and Yard Services]. Plaintiffs argue that there are genuine issues of material fact as to whether the dispatcher complied with Federal Railroad Administration ("FRA") guidelines regarding communications as well as SFRTA operating rules. This Court agrees.

Specifically, the Plaintiffs point to the dispatch transcripts and assert that the dispatcher failed to comply with some or all of the procedures of Title 49, Chapter II, Part 220 of the Code of Federal Regulations including the requirement that the dispatcher repeat to Perez what action(s) Perez would be taking. The rule "prescribes minimum requirements governing the use of wireless communications in connection with railroad operations." 49 C.F.R. § 220.1. After reviewing the radio dispatch [DE 122-2], the Court finds that Plaintiffs have raised a genuine issue of material fact as to whether the dispatcher properly repeated and ended the radio transmission under 49 C.F.R. §§ 220.33 and 220.35.

Plaintiffs also point to the dispatcher's failure to adhere to SFRTA operating rules. Under SFRTA operating rules, a train dispatcher must "[t]ake prompt action to provide protection against any known condition that could affect safety," and record and report any "[u]nsafe conditions" or "[o]ther unusual occurrences." DE 125-2 at 2 (Chapter 6 - Train Dispatching, Section 600.4). Amtrak dispatcher Matt Kirk testified that "[i]f a signal maintainer is going to work on a crossing, the crossing gates, and impact the integrity in any way, it calls to put a full activation failure or a false partial on it." DE 125-4 at 28:17-20. Accordingly, there is a genuine issue of material fact as to whether the dispatcher failed to take prompt action to provide protection and/or whether the dispatcher failed to record and report any unsafe conditions or unusual circumstances after receiving the radio transmission from Perez.

Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that Plaintiffs have presented genuine issues of material fact as to whether Amtrak, by and through its agents, was acting within the scope and pursuant to the guidelines established in the

contract or by rule at all material times. Because a genuine issue exists for trial, partial summary judgment is improper.[3]

**B. A genuine issue of material fact exists as to whether VTMI is an "agent of the state" and thus entitled to statutory immunity.[4]**

**\*5** VTMI moves for summary judgment on Plaintiffs' amended complaint alleging acts of negligence on the belief that it is entitled to statutory immunity pursuant to Fla. Stat. §§ 768.28(9)(a) and (10)(d). VTMI argues that it is completely immune from suit as an "agent of the state" with respect to all claims made against it by Plaintiffs. Plaintiffs maintain that there are genuine issues of material fact as to whether VTMI was acting within the scope and pursuant to the guidelines established in the contract or by rule. For the reasons set forth below, this Court agrees.

Here, VTMI was under contract with SFRTA to provide railroad infrastructure and signal maintenance, and VTMI employee Perez was performing signal testing pursuant to the contract at the time of the accident. DE 109-1 at ¶ 7. Plaintiffs argue that Perez failed to comply with SFRTA, VTMI, and federal law requirements.[5] For instance, Plaintiffs point to VTMI's Signal/Communication Jumper Policy, VTMI Test No. 6, and the FRA's Notice of Safety Advisory. The Jumper Policy requires that when altering the normal operation of equipment, positive protection must be obtained. DE 112-4. VTMI Test No. 6, Relays, Section 1.0 states "when making test of relays, approved instruments must be used and it must be known that no unsafe conditions are set up by the application of the test instrument." DE 113-2. Additionally, the FRA issued a Safety Advisory that stated: "Failure to provide for the safety of highway traffic and train operations during all periods while the normal functioning of a system is interfered with is a violation of Federal rail safety regulations." (citing 49 C.F.R. §§ 234.209 and 236.4). Fed. Reg. 78, No. 106, 33147 (June 3, 2013). DE 113-4 at 2. The evidence presented demonstrates that Perez failed to request any positive protection during his relay testing at the Crossing, during which the crossing gates were affected and remained in the upright position.

Moreover, pursuant to Section 700.3 of the SFRTA Operating Rules, VTMI signal employees must not perform work that (1) interferes with the safe passage of trains; (2) is not properly protected; or (3) is not in accordance with the operating rules. DE 109-1 at ¶ 11.

**EXHIBIT J**

Lee v. Perez, Slip Copy (2018)

Plaintiffs maintain that Perez failed to properly provide for positive protection as required. VTMI argues that even if Perez did not follow the contractual guidelines and pertinent rules, VTMI would nevertheless be entitled to immunity under Section 768.28(10)(d) according to laws of statutory construction. However, Florida case law interpreting the relevant statutory language has made clear that in order for immunity to apply the agent must be acting within the scope and pursuant to the guidelines established by contract or by rule. *See Sierra*, 850 So. 2d at 691; *Peak*, 57 So. 3d at 999.

Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that the Plaintiffs have presented genuine issues of material fact as to whether VTMI, by and through its agents, was acting within the scope and pursuant to the guidelines established in the contract or by rule at all material times. Because a genuine issue exists for trial, summary judgment is improper.

### IV. CONCLUSION

**\*6** Based on the foregoing, the Court ORDERS that Defendant Amtrak's Motion for Partial Summary Judgment [DE 122] and Defendant VTMI's Motion for Summary Judgment [DE 108] are DENIED.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 25th day of July, 2018.

**All Citations**

Slip Copy, 2018 WL 3884903

Footnotes

1    The amended complaint does not allege any act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. DE 60.

2    Under Section 768.28(11)(a), Florida Statutes, "[p]roviders or vendors, or any of their employees or agents, that have contractually agreed to act on behalf of the state as agents of the Department of Juvenile Justice to provide services to children in need of services, families in need of services, or juvenile offenders are, solely with respect to such services, agents of the state for purposes of this section *while acting within the scope of and pursuant to guidelines established in the contract or by rule.*" (emphasis added).

3    The Court notes that Amtrak asserts it is entitled to the sovereign immunity caps of Fla. Stat. § 768.28(5), but this issue is premature as the question remains whether Amtrak was an agent of the state.

4    Defendant Alberto Perez adopted and joined in VTMI's statement of material facts and motion for summary judgment on statutory immunity pursuant to Fla. Stat. §§ 768.28(10)(d) and 9(a). DE 110.

5    VTMI has designated the "Invitation to Bid for Maintenance of Way Services" as the contract between VTMI and the SFRTA. DE 20-1. Section 2.5 of the contract states "The Contractor is to be familiar with and shall comply with all Federal, State, and local laws, ordinances, rules, and regulations." DE 20-1 at 86.

---

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

### EXHIBIT J