UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAHEED NELSON,

      Plaintiff,

v.                                     Case No: 8:19-cv-449-T-36JSS

BOB GUALTIERI, FLORIDA
DEPARTMENT OF CORRECTIONS,
CORIZON LLC, MAXIM HEALTHCARE
SERVICES, INC., MATTHEW SWICK,
ALL FLORIDA ORTHOPEDICS
ASSOCIATES, P.A. and WITCHNER
BELIZAIRE,

      Defendants.

_____/

## **O R D E R**

This matter comes before the Court upon Defendants Corizon, LLC, Florida Department of Corrections and Witchner Belizaire, M.D.'s Motion to Dismiss or for Summary Judgment as to Plaintiff's Third Amended Complaint ("DOC MTD") (Doc. 53), Plaintiff's response thereto (Doc. 73), Defendants' reply (80), and Plaintiff's sur-reply (Doc. 88); Defendants, Matthew Swick, M.D. and All Florida Orthopaedic Associates, P.A.'s, Motion to Dismiss and Incorporated Memorandum of Law ("Swick MTD") (Doc. 54), and Plaintiff's response thereto (Doc. 73); and Motion of Bob Gualtieri to Dismiss Plaintiff's Third Amended Complaint ("Sheriff's MTD") (Doc. 58), and Plaintiff's response thereto (Doc. 74).  In the Third Amended Complaint, Plaintiff alleges claims of medical negligence and violation of his constitutional rights pursuant to 42 U.S.C. § 1983, while he was incarcerated, against Bob Gualtieri, in his official capacity as the Sheriff of Pinellas County, Florida ("the Sheriff"); the Florida Department of Corrections ("DOC"); Corizon, LLC ("Corizon"); Witchner Belizaire, M.D. ("Belizaire"); Maxim Healthcare Services, Inc.

("Maxim"); Matthew Swick ("Swick"); and All Florida Orthopedics Associates, P.A. ("All Florida"). The Court, having considered the motions and being fully advised in the premises will grant-in-part and deny-in-part the DOC's MTD (Doc. 53), and will dismiss the medical negligence claim against Corizon without leave to amend, but allow the remaining claims against the DOC, Corizon, and Belizaire to proceed. The Court will deny the Swick MTD (Doc. 54). Finally, the Court will grant-in-part and deny-in-part the Sheriff's MTD (Doc. 74), and allow the medical negligence claim against the Sheriff to proceed, but dismiss the § 1983 claim against the Sheriff with leave to amend.

## I.   BACKGROUND[1]

Plaintiff, Waheed Nelson, filed this action against numerous Defendants alleging negligence in connection with his medical care while incarcerated at the Pinellas County Jail (the "Jail"). Doc. 41. Specifically, Plaintiff, who is diabetic, has renal issues, and suffers from chronic edema, alleges that while he was an inmate at the Pinellas County Jail on January 7, 2015, he suffered a fall that severely injured his right ankle. *Id.* ¶¶ 32-33. Because of his status as an inmate, the DOC was responsible for Plaintiff's care and treatment. *Id.* ¶ 21. Additionally, Plaintiff was under the control and responsibility of the Sheriff. *Id.* ¶ 20.

Diagnostic imaging was performed by All Florida, an independent contractor hired by the Sheriff. *Id.* ¶¶ 19, 43. The imaging showed that Plaintiff's ankle was badly fractured. *Id.* ¶ 34. Nonetheless, either Defendant Maxim, a health contractor for the Jail, or the Sheriff chose a strategy to minimize costs and increase profits by electing to avoid a costly surgery by waiting to

---

[1] The following statement of facts is derived from the Plaintiff's Third Amended Complaint (Doc. 41), the allegations of which the Court must accept as true in ruling on the instant motion. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

see whether Plaintiff would be transferred to prison or released. *Id.* ¶¶ 36-37. Additionally, All Florida and its employee, Matthew Swick, M.D., cooperated with this strategy and did not follow up with the imaging results or contact the Sheriff or Maxim to have Plaintiff admitted to the hospital for immediate surgery. *Id.* ¶¶ 38, 44.

Plaintiff was in intense pain that was never properly treated while he waited for an ankle surgery that was scheduled, delayed, and ultimately cancelled. *Id.* ¶¶ 39-40. Over the course of weeks, the pain and swelling increased and Plaintiff complained of numbness in his ankle. *Id.* ¶¶ 41-42.

Plaintiff was transferred to the DOC on April 16, 2015, without having received necessary treatment. *Id.* ¶ 45. On that date, Plaintiff received x-rays at the Reception and Medical Center ("RMC"), where care is provided by Corizon, a company that contracts with the DOC to provide medical services to prisoners. *Id.* ¶¶ 23, 46, 52. Plaintiff's care was provided by Defendant Witchner Belizaire, M.D. *Id.* ¶ 54. The x-rays showed no sign that the bones had been set or reconstructed. *Id.* ¶ 47. Additionally, obvious tissue swelling remained. *Id.* The reports of diagnostic imaging contained notes that there were indicators for tissue and bone infection, and possible surgery was recommended. *Id.* ¶ 48.

Shortly after Plaintiff's transfer, in May 2015, an additional MRI showed Plaintiff's heel was severely fractured. *Id.* ¶ 49. The diagnostic imaging report showed tissue swelling and inflammation of the periosteum, indicating the likelihood of infection, including bone infection. *Id.* ¶ 50. Additionally, laboratory reports showed multiple abnormalities. *Id.* ¶ 51. Despite these results, Plaintiff was not provided with surgery. *Id.* ¶ 55. Ultimately, on July 28, 2015, Plaintiff was required to have his right leg amputated. *Id.* ¶ 55.

Based on these allegations, Plaintiff raises several claims against the various Defendants. The first six claims are medical negligence claims against the Sheriff, the DOC, Belizaire, Corizon, Maxim, Swick, and All Florida. *Id.* ¶¶ 58-127. The remaining six claims are brought under 42 U.S.C. § 1983 and allege failure to treat in violation of Plaintiff's constitutional rights. *Id.* ¶¶ 128-172.

The DOC, Corizon, and Belizaire filed a joint Motion to Dismiss, and alternative Motion for Summary Judgment, seeking dismissal of, or judgment on, the claims against them. Doc. 53. Likewise, Swick and All Florida filed a joint Motion to Dismiss, seeking to dismiss the claims against them. Doc. 54. Finally, the Sheriff filed a Motion to Dismiss the claims against him. Doc. 58. Defendant Maxim answered the Third Amended Complaint. Doc. 92.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

4

In addition to satisfying the general pleading requirements articulated in *Twombly* and *Iqbal*, a complaint alleging fraud must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which places more stringent pleading requirements on cases alleging fraud. *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *Id.* at 1308 (citation and internal quotations omitted). The Rule 9(b) particularity requirement for fraud allegations exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The failure to satisfy Rule 9(b)'s pleading requirements amounts to a failure to state a claim under Rule 12(b)(6) and requires dismissal of the complaint. *See*, *e.g.*, *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

## III. DISCUSSION

### A. Summary Judgment

The DOC, Corizon, and Belizaire moved to dismiss the claims against them and, alternatively, moved for summary judgment. Doc. 53. The Court will decline to treat the motion to dismiss as a motion for summary judgment. With the exception of the pre-suit notice requirements, which are appropriately considered on a motion to dismiss, the Court will disregard evidence that falls outside of the four corners of the Third Amended Complaint. *See*, *e.g.*, *Baptist Med. Ctr. Of Beaches, Inc. v. Rhodin*, 40 So. 3d 112, 114-15 (Fla. 1st DCA 2010) (granting certiorari review of the denial of a motion to dismiss a medical malpractice claim that was based on whether the plaintiff met the presuit notice requirements); *Jeffrey A. Hunt, D.O., P.A. v. Huppman*, 28 So. 3d 989, 990 (Fla. 2d DCA 2010) (same).

5

**B.**     **Shotgun Pleading**

Defendants Swick and All Florida move to dismiss the Third Amended Complaint as a shotgun pleading.   Doc. 54 at 8-11.   Swick and All Florida argue that the Third Amended Complaint contains no factual allegations that demonstrate when the specific health care providers interacted with Plaintiff, but it instead lumps together their actions and fail to allege who did what when.  *Id.* at 9.

While the Court agrees that the Third Amended Complaint is not a picture of clarity or detail, it is not a shotgun pleading.  It alleges different claims against different parties, does not incorporate previous claims into subsequent claims, and contains allegations as to each Defendant, albeit without the clarity desired by Defendants.  *See generally* doc. 41.  The relief sought by Defendants in this argument is, essentially, for a more definite statement.  Alternatively, the argument is that Plaintiff fails to state a claim that is supported by factual allegations.  However, the Court will deny the Motion to Dismiss to the extent it argues that the Third Amended Complaint is a shotgun pleading.

**C.**     **Medical Negligence**

**1.**     **The Sheriff**

The Sheriff argues that the medical negligence claim against him must be dismissed pursuant to § 768.28 of the Florida Statutes, which relates to the waiver of sovereign immunity. Doc. 58 at 10-12.  The statute provides that "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency . . . ."  § 768.28(6)(a), Fla. Stat.  The statute requires the pre-suit notice to be provided within three years of the claim accruing.  *Id.*

The statute also provides that claims "for damages arising from medical malpractice" "against the state or one of its agencies or subdivisions . . . shall be forever barred unless . . . commenced within the limitations for such actions in s. 95.11(4)." *Id.* § 768.28(14). Section 95.11(4) sets the limitations period for medical malpractice as two years from the time the incident giving rise to the action occurred, or from the time the incident is or should have been discovered with the exercise of due diligence.

Plaintiff contends, without providing any legal support,[2] that the statute of limitations did not begin to run until expiration of the three-year period contained in section 768.28(6). Indeed, although the Court has not found a case addressing this argument, other courts have not tolled the statute of limitations for three years before starting the statute of limitations. *Thomas v. City of Jacksonville*, No. 3:13-cv-737-J-32MCR, 2017 WL 3316478, at *8 (M.D. Fla. Aug. 3, 2017) (applying two-year statute of limitations in an action against a city).

The Sheriff argues that because Plaintiff's incarceration at the jail ended on April 15, 2015, notice was required to be provided under § 768.28, and the suit was required to be filed, on or before April 15, 2017. Doc. 58 at 11. Because Plaintiff provided notice on May 13, 2017, more than two years after his release from the jail, the Sheriff argues that this claim is untimely and barred by the statute of limitations. *Id.*

---

[2] Plaintiff vaguely argues that he argued the issue of tolling "elsewhere" without providing any explanation as to where this argument can be found or how it relates to the Sheriff. The Court will not search through the numerous filings on the docket to determine whether Plaintiff did, in fact, present this argument elsewhere, or how it relates to the Sheriff. *Ameris Bank v. Lexington Ins. Co.*, No. CV413-241, 2016 WL 5496383, at *1 (S.D. Ga. Sept. 28, 2016) ("This Court does not accept piecemeal briefs that incorporate by reference arguments contained in other filings, leaving this Court with the dubious task of having to sift through filings and assemble a party's argument.").

Here, Plaintiff purchased a 90-day extension of the statute of limitations, which is permitted by statute. *See* § 766.104(2), Fla. Stat. ("Upon petition to the clerk of court where the suit will be filed and payment to the clerk of a filing fee . . . an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable investigation required . . . . This period shall be in addition to other tolling periods."); Doc. 23-1 at 24. Additionally, after Plaintiff mailed a notice of intent on April 5, 2017 to the DOC and Corizon, the statute of limitations was tolled for ninety days as to all potential defendants. § 766.106(4), Fla. Stat. (stating that "[t]he notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11," but also stating that "during the 90-day period [following mailing the notice], the statute of limitations is tolled as to all potential defendants."); Doc. 23-1 at 25, 32.

The Sheriff argues that such provisions do not apply to it. However, the Sheriff does not explain why the notice of intent mailed on April 5, 2017 does not apply to it. This notice was mailed within the two-year limitations period and within the three-year pre-suit notice period.

Moreover, Plaintiff alleges that he "complied with all pre-suit conditions precedent under Ch. 766 . . . or they have been waived or plaintiff is entitled to estoppel by the actions or inactions of defendants for failure to comply with presuit under Ch. 766." Doc. 41 ¶ 26. Similarly, Plaintiff alleges that he complied with the condition precedent of mailing the notice of intent to initiate a claim for medical negligence, or that the requirement has been waived. *Id.* ¶ 27. Whether Plaintiff's medical negligence claim against the Sheriff is barred by the statute of limitations cannot be determined on the Sheriff's MTD. Accordingly, the Court will deny the Sheriff's MTD the medical negligence claim on the basis of the statute of limitations, without prejudice to the Sheriff raising this argument at a later stage of the proceedings.

2.      **DOC**

"Florida's medical malpractice statutory scheme . . . requires that prospective medical malpractice plaintiffs obtain the opinion of a medical expert to corroborate the claim of medical malpractice before filing suit." *Morris v. Muniz*, 252 So. 3d 1143, 1151 (Fla. 2018); *see also* § 766.201(2), Fla. Stat. ("Presuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses.").  The Florida Statutes require that a claimant conduct a presuit "investigation to ascertain that there are reasonable grounds to believe that:  (a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) Such negligence resulted in injury to the claimant."   § 766.203(2), Fla. Stat.   Additionally, "[c]orroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed . . . ." *Id.*

The Florida Statutes also provide for certain defenses.   Among the defenses is one regarding non-compliance with the requirements of the notice of intent.  The statute states that:

> If the court finds that the notice of intent to initiate litigation mailed by the claimant does not comply with the reasonable investigation requirements of ss. 766.201-766.212, including a review of the claim and a verified written medical expert opinion by an expert witness as defined in s. 766.202, . . . the court shall dismiss the claim . . . .

§ 766.206(2), Fla. Stat.

"[T]he presuit process 'restrict[s] plaintiffs' ability to bring medical malpractice claims.' " *Morris*, 252 So. 3d at 1151 (quoting *Dockswell v. Bethesda Mem'l Hosp., Inc.*, 210 So. 3d 1201, 1205 (Fla. 2017)).  Because of this, "the requirements of the presuit process must be 'interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to the courts.' " *Id.* (quoting *Kukral v.Mekras*, 679 So. 2d 278, 284 (Fla. 1996)).

As previously noted, in the Third Amended Complaint, Plaintiff alleges that he "complied with all pre-suit conditions precedent under Ch. 766 . . . or they have been waived or plaintiff is entitled to estoppel by the actions or inactions of defendants for failure to comply with presuit under Ch. 766." Doc. 41 ¶ 26.  Similarly, Plaintiff alleges that he complied with the condition precedent of mailing the notice of intent to initiate a claim for medical negligence, or that the requirement has been waived, including the affidavit requirement, because Defendants failed to produce medical records.  *Id.* ¶ 27.

The DOC argues that it was not served with presuit notice of the medical malpractice claim within the two-year statute of limitations and, in fact, that it never received the required pre-suit notice.  Doc. 53 at 9-10.  Because receipt of the presuit notice is a condition precedent to the action, the DOC argues that the medical negligence claim against it must be dismissed.  *Id.*  Additionally, the DOC argues that the claim must be dismissed because Plaintiff did not comply with § 768.28(6) by providing the state with notice of the claim in writing.  *Id.*

Plaintiff disagrees and filed a copy of a Notice of Intent mailed to the DOC via certified mail.  Doc. 73 at 4-7; Doc. 23-1 at 2-4, 25-31.  Plaintiff also relies on a letter from the Office of the Attorney General to Plaintiff's counsel confirming that Corizon, through counsel, accepted tender of the defense of a Notice of Intent to Initiate Litigation for Medical Malpractice against the DOC by Plaintiff.  Doc. 23-1 at 2-3.

The DOC argues that, because the receipt card is not signed, there is no evidence of service. Doc. 80 at 2.  Nonetheless, the card was stamped by the post office and returned to Plaintiff.  Doc. 88 at 14.  At this stage, the Court considers this to be sufficient and any factual dispute is more properly resolved at the summary judgment stage.  *Nelson v. Hillsborough Cty.*, 189 So.3d 1037, 1040 (Fla. 2d DCA 2016) (stating that the trial court improperly decided the factual issue of

whether a notice was sufficient at the motion to dismiss stage).  To the extent that the DOC argues that the notice sent to it was deficient because it was not supported by an affidavit, this argument is not presented in the Motion to Dismiss, but is made for the first time in the DOC's reply. Accordingly, the Court will not consider this argument and will deny the Motion to Dismiss on this basis without prejudice to it being raised on summary judgment.  Doc. 80 at 2.

### 3.    Corizon and Belizaire

#### a.    Sufficiency of Presuit Notice

Corizon and Belizaire move to dismiss the medical negligence claim against them on the basis that the presuit notice served on Corizon was accompanied by an affidavit of an expert who is not of the same specialty as the physicians on which liability is alleged.  Doc. 53 at 10-11. Pursuant to § 766.105(5), a person providing "expert testimony concerning the prevailing professional standard of care" must, in cases in which the allegedly negligent provider is a specialist, among other qualifications, "[s]pecialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered[.]"

"Florida courts have previously decided that 'same specialty' is to be taken literally and is not synonymous with physicians with different specialties providing similar treatment to the same areas of the body." *Riggenbach v. Rhodes*, 267 So. 3d 551, 555 (Fla. 5th DCA 2019).  For example, a Florida court previously granted certiorari review of a trial court order denying a motion to dismiss in which the defendant argued the presuit notice that was accompanied by the affidavit of a board-certified podiatrist was insufficient because the defendant was a board-certified orthopedic surgeon, and not a podiatrist.  *Clare v. Lynch*, 220 So. 3d 1258, 1259 (Fla. 2d DCA 2017).  The injury involved in the case was a broken toe, on which the plaintiff ultimately received surgery. *Id.*  The appellate court quashed the order denying the motion to dismiss because although "both

doctors' practices focus[ed] primarily on foot and ankle surgery, the[] two doctors ha[d] different training and practice in different specialties." *Id.* at 1260-61. The court stated that the podiatrist's affidavit "could not meet the requirements of the plain language of section 766.102(5), and the noncomplying affidavit was insufficient on its face to constitute the required corroboration of reasonable grounds to initial medical negligence litigation." *Id.* at 1261. Because of this, the court explained that the case must be dismissed. *Id.*

The Notice of Intent provided to Corizon was accompanied by an affidavit of a physician, Daniel Husted, M.D. Doc. 23-1 at 38-39. Husted is an orthopedic surgeon and swore that he is "familiar with the acceptable standards of care for the management of patients presenting with symptoms similar to those of" Plaintiff. *Id.* ¶ 3; 19-1 at 12. He further attested that he is "familiar with the acceptable standards of care of the healthcare providers who are listed hereinafter," which included "Matthew Swick, M.D., nurse practitioners, Pinellas Surgical Associates, Pinellas County Jail (nurses) and RMC . . . ." Doc. 23-1 ¶¶ 4-5.

Defendants state in their Motion to Dismiss that Belizaire is an internal medicine physician. Doc. 53 at 9. Plaintiff responds that he did not know this until it was asserted in the Motion to Dismiss. Doc. 73 at 11. Nonetheless, on July 11, 2017, Plaintiff sent a second Notice of Intent to Belizaire and attached the affidavit of an internal medicine physician, Paul Genecin, M.D. Doc. 79-1 at 7. A successive notice with the affidavit of an internal medicine physician was not sent to Corizon.

Plaintiff claims that any problem with the affidavit has been waived by Defendants. Doc. 73 at 8. Indeed, in *Ingersoll v. Hoffman*, 589 So. 2d 223, 224 (Fla. 1991), the Florida Supreme Court explained that the defendant waived any argument that presuit notice was not sufficient by failing to specifically deny that this condition precedent was met in his answer. Likewise, in

*Florida Hospital Waterman v. Stoll*, 855 So. 2d 271, 277 (Fla. 5th DCA 2003), a Florida appeals court stated that the defendant waived the issue of whether a medical opinion was defective for presuit notice purposes where it was not raised in a motion to dismiss. Had it been timely raised, the plaintiff would have had the opportunity to correct any error. *Id.*

The Court finds Plaintiff's reliance on these cases to be misplaced. Plaintiff's argument is, essentially, that Defendants waived any argument regarding the sufficiency of the affidavit prior to this suit being filed. That is not what either *Hoffman* or *Stoll* state and Plaintiff cites to no law stating that a defendant's pre-suit actions in connection with pre-suit notice can waive defenses based on the pre-suit notice. Here, Defendants promptly raised the issue in their first responsive filing. Doc. 20. Accordingly, they did not waive and are not estopped from disputing the sufficiency of the affidavit.

The Court agrees that the medical negligence claim against Corizon must be dismissed for failure to provide an affidavit that complies with Florida's pre-suit notice requirements. Plaintiff presents no argument that the subsequent notice provided to Belizaire should be imputed to Corizon, nor does Plaintiff dispute that the affidavit attached to the notice provided to Corizon was not by an internal medicine physician. To the extent that Plaintiff argues he also alleged negligence by Corizon based on the actions of other employees, *see* doc. 88 at 4, nothing indicates that sufficient pre-suit notice was provided with respect to other medical professionals so as to salvage the claim against Corizon. *Largie v. Gregorian*, 913 So. 2d 635, 638-39 (Fla. 3d DCA 2005) (affirming the dismissal of a claim against a nurse where the pre-suit notice did not identify the nurse and was accompanied by an affidavit of a physician, explaining that the affidavit made no mention of the nurse, "either by name or job description," did not delineate the standard of care applicable to a certified registered nurse practitioner, and did not suggest an investigation took

13

place as to that defendant).   Accordingly, the medical negligence claim against Corizon is dismissed.  Because the same rationale does not apply to Belizaire, the claim against him will not be dismissed on the basis of the affidavit.

### b.    Sovereign Immunity

Corizon and Belizaire claim that the medical negligence claim must be dismissed against them because they are entitled to sovereign immunity under section 768.28(10) of the Florida Statutes.  The Court has already determined that dismissal of the medical negligence claim against Corizon is warranted.   Accordingly, the Court will address this argument only with respect to Belizaire.  The Florida waiver of sovereign immunity statute provides as follows:

> Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section, while acting within the scope of and pursuant to guidelines established in said contract or by rule.  The contracts shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

§ 768.28(1).  The statute limits personal liability for officers, employees, and agents of the state as follows:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . .  The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.* § 768.28(9)(a).

14

Belizaire argues that Corizon, his employer, was under contract with the DOC at the time Nelson was in DOC custody and that the contract provided that Corizon and its employees were agents of the state while providing medical services under the contract. Doc. 53 at 13. Accordingly, Belizaire argues that he is immune from suit against him in his personal capacity. *Id.*

The Court declines to consider this argument at this stage of the proceedings. Evaluation of this argument requires the Court to examine the contract between the DOC and Corizon, which is outside of the four corners of the Third Amended Complaint. Accordingly, the Court will deny Belizaire's Motion to Dismiss the medical negligence claim against him on sovereign immunity grounds without prejudice to this argument being raised at the summary judgment stage.

### D.      42 U.S.C. § 1983

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). The plaintiff also must prove an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

### 1.      The Sheriff

Plaintiff claims that the Sheriff violated the Fourth and Eighth Amendments by maintaining policies and procedures, and customs and practices in the Jail that made constitutional violations

such as those suffered by Plaintiff (specifically, a failure or delay in medical treatment) substantially certain to happen.  Doc. 41 ¶¶ 129-30.  Plaintiff also alleges that the Sheriff ignored a history of such abuses.  *Id.* ¶ 130.

Officials cannot be held liable pursuant to § 1983 solely on the basis of respondeat superior or vicarious liability.  *Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. Ga. 2009) (citations omitted).  Instead, supervisory defendants can only be liable if they participate in the violation or if their actions caused the violation.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003).  A causal connection can be established: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights; or (3) when the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  *Id.* at 1234–35 (citations and internal quotation marks omitted).

Here, Plaintiff's allegations are based on a policy or custom of the Sheriff.  In the Third Amended Complaint, Plaintiff alleges that the Sheriff violated the Eighth and Fourteen Amendments by having policies and procedures, and customs and practices at the Jail that made constitutional violations such as those suffered by Plaintiff substantially certain to happen.  Doc. 41 ¶ 130.  Additionally, Plaintiff alleges that the Sheriff ignored a history of such abuses.  *Id.*

When alleging a claim against a sheriff based on an official policy, a plaintiff must identify either (1) "an officially promulgated policy, or (2) an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity."  *Crenshaw v. Lister*, 509 F. Supp. 2d 1230, 1237 (M.D. Fla. 2007) (citing *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003)).  "Plaintiff must identify the policy or custom which caused his injury so that liability will

not be based on an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation." *Id.* (citing *Grech*, 335 F.3d at 1330).

Plaintiff fails to identify a policy by the Sheriff or a custom that caused his injury. Indeed, in his response to the Sheriff's Motion to Dismiss on this issue, Plaintiff does not even address the lack of allegations as to a policy or custom. Accordingly, Count VIII of the Third Amended Complaint, which alleges a violation of the Fourth and Eighth Amendment by the Sheriff, is dismissed with leave to amend.

### 2.    Belizaire

Plaintiff raises a § 1983 claim against Belizaire for failure to treat. Doc. 41 ¶¶ 135-140. Plaintiff alleges that Belizaire violated Plaintiff's rights under the Eighth Amendment because he acted with deliberate indifference by failing to provide adequate or timely treatment. *Id.*

"The United States Supreme Court has determined that deliberate indifference to a prisoner's serious medical condition may violate the Eighth Amendment prohibition against 'cruel and unusual punishment.' " *Davis v. Bay Cty. Jail*, 155 So. 3d 1173, 1175 (Fla. 1st DCA 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Being deliberately indifferent, or purposefully ignoring serious medical needs of prisoners amounts to cruel and unusual punishment. *Id.* A claim of inadequate medical care has two components, an objective one and a subjective one. *Evans v. St. Lucie Cty. Jail*, 448 F. App'x 971, 974 (11th Cir. 2011).

For the objective component of a claim for inadequate medical care, the plaintiff "must demonstrate 'an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm.' " *Id.* (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). A serious medical need may be "one diagnosed by a physician as mandating treatment or one so

obvious that even a lay person would 'easily recognize' the need for a doctor's attention." *Race v. Bradford Cty., Fla.*, No. 3:18-cv-153-J-39PDB, 2019 WL 7482235, at *8 (M.D. Fla. Aug. 20, 2019) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). A serious medical need may also "be determined by whether delay in treatment worsened the condition." *Id.* (citing *Mann*, 588 F.3d at 1307). "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (quoting *Mann*, 588 F.3d at 1307).

To meet the subjective component, the "plaintiff must show (1) the official had subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that exceeds gross negligence." *Id.* (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Whether an official has subjective knowledge may be shown through circumstantial evidence, but not by imputed or collective knowledge. *Id.* (citing *Goebert*, 510 F.3d at 1326; *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty.* 871 F.3d 1272, 1280 (11th Cir. 2017)). An official disregards a risk by conduct that exceeds gross negligence where he "knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate . . . ." *Id.* (quoting *Nam Dang*, 871 F.3d at 1280). A delay in treatment, or provision of treatment that is "so cursory as to amount to no treatment at all" also fulfills these elements. *Id.* (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).

"The meaning of 'more than gross negligence' is not self-evident but past decisions have developed the concept." *Id.* (quoting *Goebert*, 510 F.3d at 1327). It is not sufficient for conduct to be an accident or mistake, negligent, malpractice, or a difference of medical opinion. *Id.* (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)). "Instead, medical treatment must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

In cases where the claim is based on a delay in providing medical care, the Eleventh Circuit considers "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Id.* (citing *Goebert*, 510 F.3d at 1326). Where the case is based "on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.' " *Gandy v. Bryson*, No. 5:16-cv-44, 2016 WL 4385851, at *9 (S.D. Ga. Aug. 15, 2016) (quoting *Blanchard v. White Cty. Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008)).

Belizaire argues that Plaintiff cannot meet this standard because the only claim against him is that he delayed sending Plaintiff to a specialist. Doc. 53 at 18. Belizaire further states that other physicians referred Plaintiff to specialists in a timely manner and that, on this record, Belizaire has no constitutional liability. *Id.*

Belizaire provides no discussion of the allegations of the Third Amended Complaint, and does not provide any citations to this purported record. The Third Amended Complaint sufficiently alleges a claim under § 1983 and any factual issues as to whether Plaintiff can prove that claim cannot be resolved at the motion to dismiss stage.

### 3. Corizon

Plaintiff raises a § 1983 claim against Corizon for failure to treat. Plaintiff alleges that "Corizon has a nationwide corporate policy of denying, minimizing, or delaying care for prisoners until they are 'released or deceased.' " Doc. 41 ¶ 53. Plaintiff further alleges that "[a]s a matter of policy, costly care was generally provided, if ever, only in life-threatening situations without regard for the pain and debilitation to the patient." *Id.* ¶ 152. Additionally, Plaintiff states that "Corizon has been terminated as a prison health care provider in several states" because of this policy, practice, and custom. *Id.* ¶ 153. In support of these allegations, Plaintiff states that "one

year after Corizon took over prisoner medical care, then-FDOC Secretary Michael Crews sent a letter to Corizon threatening to withhold payment and remove facilities from Corizon control if improvements were not made to the level of care being provided to Florida prisoners." *Id.* ¶ 154. "The letter stated that Corizon's 'level of care continues to fall below the contractually required standard.' " *Id.* ¶ 155.

Corizon correctly argues that constitutional liability exists against it only if it had an unconstitutional policy or custom that caused the alleged deprivation of constitutional rights. Doc. 53 at 18; *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) (affirming "the district court's finding that the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates."). A corporation may not be held liable under section 1983 on a theory of respondeat superior. *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017); *Salmon v. Aramark Food Serv. Corp.*, No. 8:10-cv-998-T-33EAJ, 2010 WL 3463656, at *2 (M.D. Fla. Sept. 2, 2010). Instead, a plaintiff must allege a policy or custom of deliberate indifference that led to violation of a constitutional right. *Morris v. Johnson*, No. 3:16cv15-RV-CJK, 2017 WL 3492874, at *4 (N.D. Fla. July 13, 2017).

Plaintiff meets the pleading standard for his claim against Corizon. The allegations of the Third Amended Complaint sufficiently allege that Corizon has a policy or custom of deliberate indifference towards inmates' medical care, which resulted in violation of their constitutional rights regarding medical treatment. Additionally, Plaintiff provided sufficient factual allegations to withstand a motion to dismiss. Accordingly, Corizon's Motion to Dismiss the § 1983 claim against it is denied.

### 3.    Swick

Plaintiff alleges that Swick violated his rights under the Fourteenth and Eighth Amendments because Swick was deliberately indifferent to Plaintiff's medical care.  Doc. 41 ¶ 169.  Swick argues that Plaintiff failed to state a claim under § 1983 because he does no more than argue that Swick should have acted differently, and it is not sufficient to show more than a difference in medical opinion.  Doc. 54 at 14.  Swick also argues that Plaintiff's allegations demonstrate that Plaintiff was in the custody and control of other Defendants, and that Swick had no ability to deprive Plaintiff of his medical needs sufficient to state a claim under § 1983.

### a.    Failure to State a Claim

Here, Plaintiff alleges that Swick was deliberatively indifferent by failing to provide adequate treatment.  Doc. 41 ¶ 170.  Plaintiff also alleges that Swick ordered an MRI of Plaintiff's ankle, which revealed the fracture.  *Id.* ¶ 43.  Plaintiff further alleges that Swick failed to follow up on the results or ensure that Plaintiff was admitted to the hospital for surgery, and that Swick participated in a "slow walking" medical care strategy to minimize costs.  *Id.* ¶¶ 37-38, 44.  Another MRI was performed later, although Plaintiff does not clarify who performed the second MRI.  *Id.* ¶ 49.

At this stage of the proceedings, the Court cannot determine whether Swick disregarded a serious risk of medical harm in a way that exceeds gross negligence.  Plaintiff's allegations are sufficient to state a claim, and further examination of this issue will require factual development that is not appropriate for a motion to dismiss.

### b.    Custody and Control

In presenting this argument, Swick relies on *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994).  There, Dekalb County was named in a complaint alleging

various claims connected to the plaintiff's treatment in a juvenile detention center, including his medical treatment. *Id.* at 1179-83. The county argued that it was not liable under § 1983 because the juvenile detention center was operated by the state, not the county. *Id.* at 1195. Therefore, the county had no control over the juvenile detention center and did not set its policies or procedures. *Id.*

Here, Swick argues that its relationship was with the Sheriff, not the DOC, and after Plaintiff was transferred from the Jail to the DOC's custody, it was the DOC's responsibility to care for Plaintiff and Swick lacked the requisite control to direct Plaintiff's care. Doc. 54 at 17.

The Court notes that *Hill* was determined on summary judgment and concludes that this is an issue more properly resolved on summary judgment. The allegations of the Third Amended Complaint are sufficient to state a § 1983 claim against Swick. To the extent that the facts demonstrate that Swick could not have acted in a way that violated Plaintiff's constitutional rights, that is an issue for summary judgment. Accordingly, Swick's Motion to Dismiss is denied. Accordingly, it is

**ORDERED**:

1. Defendants' Corizon, LLC, Florida Department of Corrections and Witchner Belizaire, M.D.'s Motion to Dismiss or for Summary Judgment as to Plaintiff's Third Amended Complaint (Doc. 53) is **GRANTED-in-part and DENIED-in-part**. The medical negligence claim against Corizon is **DISMISSED.** The Court denies the motion to the extent it seeks dismissal of the remaining claims against the DOC, Corizon, and Belizaire, without prejudice to these issues being raised on summary judgment.

2. Defendants, Matthew Swick, M.D. and All Florida Orthopaedic Associates, P.A.'s, Motion to Dismiss and Incorporated Memorandum of Law (54) is **DENIED** without prejudice to these issues being raised on summary judgment.

3. Motion of Bob Gualtieri to Dismiss Plaintiff's Third Amended Complaint (Doc. 58) is **GRANTED-in-part and DENIED-in-part.** The Court denies the motion to the extent it seeks dismissal of the medical negligence claim against the Sheriff. The § 1983 claim against the Sheriff is **DISMISSED, with leave to amend.** Plaintiff is granted leave to file an amended complaint within fourteen (14) days of entry of this Order.[3] Failure to file an amended complaint within this time period will result in this case proceeding on the remaining counts of the Third Amended Complaint.

**DONE AND ORDERED** in Tampa, Florida on March 10, 2020.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[3] Plaintiff is given one final opportunity to amend his complaint, as the previous amendments to the complaint were made by plaintiff voluntarily, without the benefit of an Order from the Court addressing the merits of the complaint's factual allegations.