# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

WAHEED NELSON,

     Plaintiff,

vs.

BOB GAULTIERI, Official Capacity as Sheriff
of Pinellas County, Florida, DEPARTMENT OF
CORRECTIONS, CORIZON LLC aka
CORIZON HEALTH, INC., MAXIM
HEALTHCARE SERVICES, INC. dba MAXIM
PHYSICIAN RESOURCES, LLC, MATTHEW
SWICK M.D., ALL FLORIDA
ORTHOPEDICS ASSOCIATES, P.A., and
WITCHNER BELIZAIRE M.D.,

     Defendants.

Case No. 8:19-cv-449-T-36JSS

## FOURTH AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, WAHEED NELSON, sues the Defendants, BOB GAULTIERI in his official capacity as Sheriff of Pinellas County, the FLORIDA DEPARTMENT OF CORRECTIONS, CORIZON LLC aka CORIZON HEALTH, INC., MAXIM HEALTHCARE SERVICES, INC. d/b/a MAXIM PHYSICIAN RESOURCES, LLC, MATTHEW SWICK, M.D., and All Florida Orthopaedic Associates, P.A., WITCHNER BELIZAIRE, M.D. and alleges:

### Jurisdiction and Venue

1.    Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983 and 1988. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to

1

28 U.S.C. § 1367, to consider the state law claims alleged herein.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as the events sued upon occurred in this judicial district.

4.    Plaintiff has provided timely notice under § 768.28 as required by law.

5.    All other conditions precedent to this action have been performed or waived.

## Parties

6.    At all material times, WAHEED NELSON (hereafter Plaintiff or Mr. Nelson) is a resident of Florida, over the age of eighteen, and otherwise sui juris.

7.    At all material times BOB GAULTIERI, Sheriff of Pinellas County, (Sheriff) operated the Pinellas County Jail with a non-delegable duty to provide medical services to inmates at the Jail and is subject to liability in his official capacity.

8.    At all times material the SHERIFF employed physicians, nurse practitioners and nurses to provide medical services to inmates at Pinellas County Jail.

9.    At all times material the SHERIFF contracted with companies, such as Maxim Healthcare Services, Inc. to provide medical services to inmates at the Jail.

10.   At all times material Kevin Kyle, M.D. a licensed medical physician in Florida, Waheed Nelson's physician, employed by the Sheriff, had a duty to Mr. Nelson as his patient to provide patient care within the standard of care.

11.   At all times material Gail Newby, ARNP, Constance Bumiller, ARNP, Darlene Liberti, ARNP, were Advanced Registered Nurse Practitioners licensed in Florida, employed by the SHERIFF, with a duty to Mr. Nelson as their patient to provide

2

patient care within the standard of care.

12.   MAXIM  HEALTHCARE  SERVICES,  INC.  d/b/a  MAXIM  PHYSICIAN RESOURCES, L.L.C. (MAXIM) is a Maryland Corporation doing business in Florida, contracting with the SHERIFF to provide medical services to Mr. Nelson with a duty to provide patient care within the standard of care with the personnel provided.

13.   At all times material, Gail Miranda Newby, ARNP was employed by MAXIM.

14.   At all material times Maurico Rangel, M.D. was a medical physician licensed in Florida, employed by the SHERIFF, had a duty to Mr. Nelson as his patient to provide patient care within the standard of care.

15.   At all times material, Maurico Rangel, M.D. was a medical physician licensed in the State of Florida, had a duty to Mr. Nelson as his patient to provide patient care within the standard of care and was also an employee of MAXIM.

16.   At all times material Bernard Yukna, M.D., was a physician licensed in Florida, employed by the SHERIFF, had a duty to Mr. Nelson as his patient to provide patient care within the standard of care.

17.   At all times material, SHERIFF employed nurses and nurse practitioners to care for patients at the Jail with a duty to provide nursing care within the standard of care.

18.   At all times material, MATTHEW SWICK, M.D. was a physician licensed in the State of Florida and Mr. Nelson's physician for orthopedic care for a fracture in his ankle and an independent contractor with the SHERIFF.

19.   At all times material to this action, All Florida Orthopaedic Associates, P.A., a

3

Florida Corporation employed MATTHEW SWICK, M.D. and was also independent contractor with the SHERIFF.

20.    At all times material to this action, Plaintiff, Waheed Nelson was an inmate in custody at the Pinellas County Jail under the control and responsibility of Bob Gaultieri, Sheriff of Pinellas County in 2015.

21.    At all times material, the Florida Department of Corrections (FDOC) was responsible for the care and treatment of the plaintiff at its facility at Lake Butler and had a nondelegable duty to provide needed medical care within the standard of care to the Plaintiff while Mr. Nelson was a prisoner.

22.    At all material times WITCHNER BELIZAIRE, M.D. was a medical physician with a temporary license in the State of Florida employed by CORIZON to treat Mr. Nelson at Lake Butler and had a duty to Mr. Nelson as his patient to provide patient care within the standard of care.

23.    CORIZON LLC aka CORIZON HEALTH, INC. (CORIZON), is a Tennessee Corporation doing business in Florida and contracted with the Florida Department of Corrections (FDOC) to provide medical services to prisoners, such as Mr. Nelson with a duty to provide needed medical care and patient care within the standard of care.

24.    Either the Florida Department of Corrections and/or CORIZON employed the nurses, other physicians and nurse practitioner who cared for Mr. Nelson at RMC and had a duty to provide patient care within the standard of care.

25.    At all times material, Waheed Nelson, was informed by all Defendants or their

4

employees or agents sued herein, that he was receiving the appropriate treatment and repeatedly reassured of such to his detriment, such that the delay in care ultimately caused the loss of his right leg by amputation on July 28, 2015.

26.    Plaintiff has complied with all pre-suit conditions precedent under Ch. 766 and 768, Fla.Stat., or they have been waived or plaintiff is entitled to estoppel by the actions or inactions of defendants for failure to comply with presuit under Ch. 766.

27.    All conditions precedent to this action have been satisfied or occurred, including certified mail delivery of Notice of Intent to initiate a claim for medical negligence against Defendants and/or their employees or agents or independent contractors or have been waived, (such as the affidavit requirement where defendants failed to produce medical records within the 10 day Statutory request for records).

28.    The SHERIFF refused to participate in good faith when it received notices of intent for its physicians, nurse practitioners and nurses and failed to cooperate at all with the pre-suit requirements of the §766.104 and 766.206, Florida Statutes.

29.    A medical malpractice statute extension was purchased in this case which automatically extended the Statute of Limitations for 90 days.

30.    Pursuant to § 766.104, Florida Statutes, the undersigned attorney certifies that a reasonable investigation has been conducted as to the matters alleged herein, and it has been determined that there are grounds for a good faith belief that there has been negligence in the care and treatment of Waheed Nelson and that grounds exist for filing this action against the above-named Defendants.

5

## Common Allegations of Fact

31.    On or about May 24, 2014, Waheed Nelson was arrested and held in the Pinellas County Jail as a detainee pending trial on felony offenses.

32.    On or about January 7, 2015, while at the Pinellas County Jail, Waheed Nelson suffered a fall and severely injured his right ankle.

33.    Mr. Nelson is diabetic, has renal issues and suffers chronic edema.

34.    Diagnostic imaging showed that the ankle was badly fractured.

35.    At that time, the Sheriff or Maxim controlled medical care at the Jail.

### A. Slow-Walking Medical Care at the Jail

36.    Maxim or the Sheriff or both chose to take a calculated risk to avoid costly surgery by waiting to see if Mr. Nelson would be released or transferred to prison.

37.    This "slow-walking" medical care despite an emergency need was a cost-saving strategy that Maxim or the Sheriff used to minimize its costs and increase its profits.

38.    Maxim's or the Sheriff's staff and associated medical professionals, including Swick and All Florida Orthopaedic Associates, P.A., cooperated in this strategy.

39.    After an initial x-ray on January 8, 2015, the day after the fracture was reported, the Sheriff took another month to undertake more sophisticated diagnostic imaging.

40.    On February 5, 2015, a CT Scan showed severe deterioration of the bone structure as a result of the fracture and some indicators for infection.

41.    Referrals to specialists were scheduled, then delayed, and then cancelled.

42.    Rather than having the ankle and foot bones reconstructed through surgery, the

6

Jail gave Plaintiff a "boot" that held his bones together like a bag of marbles.

43.    This boot was his only treatment for the fracture that Plaintiff received over the three more months that he was held in the Pinellas County Jail.

44.    While expectantly awaiting treatment for his ankle, Mr. Nelson felt intense pain which was never appropriately treated with pain medication.

45.    Over the weeks, the pain and swelling in his ankle increased.

46.    Mr. Nelson complained that his ankle was beginning to become numb.

47.     Mr. Nelson had been sent to Swick at All Florida Orthopaedic Associates, P.A.

48.    Dr. Swick was aware that Plaintiff had received no treatment for a severe complex displaced fracture for nearly three months.

49.    The results of a CT scan showing "markedly abnormal" conditions including "Charcot foot and/or chronic infection" and yet Dr. Swick did not expedite treatment, nor is there any indication that the Sheriff encouraged him to do so.

50.    Dr. Swick sent Plaintiff for further diagnostic imaging in the form of an MRI but did not ask that the MRI be expedited to permit a quick response for a long-ignored injury or reschedule Plaintiff for quick surgical follow-up.

51.    Had Plaintiff not been a prisoner in the Pinellas County Jail there is reason to believe that his ankle and foot condition would have been treated as an emergency.

52.    The MRI was not taken until April 14, 2015, confirmed the CT scan, showed a serious fracture requiring immediate surgery. Thereafter, Maxim or the Sheriff made medical appointments for Mr. Nelson but again failed to get him there.

7

53.     Swick and All Florida Orthopaedic Associates, P.A failed to follow up on the MRI results or contact Sheriff or Maxim to have the patient, Mr. Nelson, admitted to the hospital for immediate surgery.

54.     Swick and All Florida Orthopaedic Associates, P.A, and the Sheriff failed to advise the Florida Department of Corrections of the emergency condition of their patient and did not forward the documentation of such emergency.

55.     The Pinellas County Jail has a long history of systemic delay and denial of medical care resulting in death and serious injury, beginning with placement under federal court supervision in 1975 and continuing through numerous Jail administrations with few periods of remission and continuing up to the present time.

### B.  Slow-Walking Medical Care in the Department of Corrections

56.     On April 16, 2015, without having had necessary timely treatment at the Jail, Mr. Nelson was transferred to the Florida Department of Corrections (FDC).

57.     On that date, he received x-rays at the Reception and Medical Center (RMC).

58.     Despite the age of the injury, there was no sign that bones had been set or reconstructed and there was still obvious tissue swelling.

59.     In the reports of diagnostic imaging, indicators for tissue and bone infection are noted and further diagnostic imaging and possibly surgery is recommended.

60.     In May 2015, another MRI showed Mr. Nelson's heel was severely fractured.

61.     The diagnostic imaging report showed tissue swelling and inflammation of the periosteum, indicating the likelihood of infection, including bone infection.

8

62.     Laboratory reports showed multiple abnormalities.

63.     Medical care at the Reception and Medical Center (RMC) is in the hands of Corizon, which held the contract for health care for most Florida prisons.

64.     Corizon has a nationwide corporate policy of denying, minimizing, or delaying care for prisoners until they are "released or deceased."

65.     The physician attending Mr. Nelson was Witchner Belizaire, M.D. a doctor holding a limited medical license working for Corizon on its prison contract. No where on the medical license portal does it display the type of physician Dr. Belizaire is, nor did Corizon identify his background or produce his CV as requested.

66.     Despite indicators for dangerous infection, Dr. Belizaire did not send Nelson for surgery and on July 28, 2015, Nelson had to have his right leg amputated.

67.     Dr. Belizaire was aware Waheed Nelson suffered a serious medical condition, and was in need of treatment, yet failed to act reasonable to abate the risk of harm.

68.      All the Defendants were also deliberately indifferent to known serious medical conditions resulting in injuries from delay and denial of care.

## Causes of Action

## I.      Medical Negligence Against Bob Gaultieri, Official Capacity as Sheriff of Pinellas County for Physicians, Nurse Practitioners and Nurses (Respondeat Superior/Vicarious Liability)

69.     Plaintiff realleges paragraphs 1-48 as if set forth fully herein.

70.     That while Waheed Nelson was a patient of at Pinellas County Jail, physicians, nurse practitioners and nurses, were employees, agents, or apparent agents of

9

Defendant, Bob Gaultieri, Official Capacity as Sheriff of Pinellas County.

71.     Defendant, Bob Gaultieri, Official Capacity As Sheriff Of Pinellas County through its employees and agents and apparent agents, including but not limited to: Kevin Kyle, M.D., Gail Newby, ARNP, Maurico Rangel, M.D., Bernard Yukna, M.D., Constance Bumiller, ARNP, Darlene Liberti, ARNP, as well as other physicians, nurses and nurse practitioners, undertook a duty to provide appropriate medical care and treatment to Waheed Nelson and as such is held to a standard of care of other similarly situated reasonably prudent healthcare providers charged with the care and/or treatment of persons in the condition of Plaintiff, Waheed Nelson.

72.     The nurse practitioners, nurses, support staff, and attending physicians, who treated Waheed Nelson were either employees, agents, dual agents, apparent agents, and/or servants of the Defendant Gaultieri.

73.     That Defendant's employees, agents or servants or dual agents, apparent agents and/or servants undertook to treat Plaintiff Waheed Nelson and/or its agents, servants or employees rendered that treatment and Waheed Nelson accepted the Defendant's treatment, justifiably relying to his detriment upon the care provided.

74.     That the Pinellas County Jail, by and through Bob Gaultieri, Official Capacity As Sheriff Of Pinellas County, held itself out as a correctional facility being possessed of a medical personnel with the requisite experience, knowledge, and skill to medically care for and treat Waheed Nelson for his medical condition which warranted care and treatment.

75.    That during the period of time that Waheed Nelson was a patient and under medical care at the Pinellas County Jail, by and through Defendant, Bob Gaultieri, Official Capacity As Sheriff Of Pinellas County and notwithstanding the duties, representations and undertakings applicable toward Waheed Nelson, the Defendant, Bob Gaultieri, Official Capacity As Sheriff Of Pinellas County, by individual acts or, in the alternative, in any combination of the acts of negligence by said Defendant's agents, dual agents, apparent agents, servants, employees and/or students did not have and/or did not exercise the degree of learning, skill, knowledge, care and diligence set forth above and were negligent by careless violation of their duty to Plaintiff. Said medical negligence, and/or malpractice included, but is not limited to, the commission and/or omission of the following acts:

a.  Failure to treat infection;

b.  Failure to timely consult infectious disease specialist;

c.  Failure to review the medical records from Swick and All Florida Orthopaedic Associates, P.A.

d.  Failure to perform tests to determine the extent of infection and pain of Waheed Nelson;

e.  Failure to provide proper care, treatment and/or management of Waheed Nelson under the facts and circumstances, as they existed in this matter;

f.  Failed to possess the skills and training required to treat the patient;

g.  Failure to maintain accurate records;

h.   Failure to treat infection by administering antibiotics;

i.  Further delay in treatment of Mr. Nelson's right ankle fracture, that had been untreated for 4 months contributed to loss of limb

j.  Failure to immediately call in orthopedic consults to review films, CT scan and MRI;

      k.  Failure to be proactive in the treatment including follow up appointments;

      l.  Failure to evaluate and treat Mr. Nelson's continued pain;

      m. The continued delay caused or contributed to the loss of limb;

      n.  Failure to instruct agents, apparent agents, dual agents, employees, servants and/or students on the proper procedures and/or management to be used under the facts and circumstances as they existed in this matter;

      o.  Failure to respond to the patient's changing conditions in a timely manner, resulting in significant talus and calcaneus fracture that developed into a charcot deformity, destruction and ultimately loss of limb;

76.    That as a direct and proximate result of (a) any of the acts of negligence by said Defendant, Sheriff's employees, agents, apparent agents, or, in the alternative, (b) any combination of the acts of negligence by any Defendant Sheriff's employees, agents or apparent agents, servants and/or students, or, in the alternative, c) any combination of the acts of negligence by any combination of Defendant Sheriff's agents, apparent agents, servants, employees and/or students, Waheed Nelson suffered damages.

77.    That as a direct and proximate result of any of the above acts of negligence, the Plaintiff has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an

aggravation of a previously existing condition. All these losses and damages are permanent and continuing and Plaintiff will continue to suffer from them in the future.

78.    The Defendant Bob Gaultieri is vicariously liable for the negligence of its actual or apparent agents, dual agents, employees, servants and/or students committed within the scope of their actual or apparent authority.

79.    As a direct and proximate result of the negligence by Defendant Bob Gaultieri, Plaintiff demands judgment from Defendant for all damages recoverable and permitted under the law.

WHEREFORE, Plaintiff, Waheed Nelson demands judgment for damages, against Defendant, Bob Gaultieri, Official Capacity As Sheriff Of Pinellas County and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## II.    Medical Negligence Against the FLORIDA DEPARTMENT OF CORRECTIONS for Negligence for Its Physicians, Nurse Practitioners and Nurses (Respondeat Superior/Vicarious Liability)

80.    Plaintiff re-alleges paragraphs 1-57 as if set forth fully herein.

81.    That while Waheed Nelson was a patient of at the Department of Corrections at Lake Butler, it employed, physicians, nurse practitioners and nurses, who were employees, agents, or apparent agents of Defendant Department of Corrections.

82.    Florida Department of Corrections, through its nurse practitioners, nurses, support staff, and attending physicians, who treated Waheed Nelson were either employees, agents, dual agents, apparent agents, and/or servants of the Defendant

13

Florida Department of Corrections who undertook a duty to provide appropriate medical care and treatment to Waheed Nelson and as such are held to a standard of care of other similarly situated reasonably prudent healthcare providers who are charged with the care and/or treatment of persons who were in the condition of Plaintiff, Waheed Nelson.

83.    Defendant's employees, agents or servants or dual agents, apparent agents and/or servants undertook to treat Plaintiff Waheed Nelson and/or its agents, servants or employees rendered that treatment and Plaintiff, Waheed Nelson accepted the Defendant's treatment, justifiably relying to his detriment upon the care provided.

84.    The Lake Butler Corrections Facility, by and through Florida Department of Corrections, held itself out as a correctional facility being possessed of the requisite experience, knowledge, and skill to medically care for and treat Waheed Nelson for his medical condition, which warranted care and treatment.

85.    That during the time that Waheed Nelson was a patient and under medical care by Florida Department of Corrections, at the Reception and Medical Center and notwithstanding the duties, representations and undertakings applicable toward Waheed Nelson, the Defendant, Florida Department of Corrections, by individual acts or, in the alternative, in any combination of the acts of negligence by said Defendant's agents, dual agents, apparent agents, servants, employees and/or students did not have, and/or did not exercise the degree of learning, skill, knowledge, of other similar healthcare providers, and breached their duty to MR. NELSON. Said medical

14

negligence, and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

     a. Failure to treat infection;

     b. Failure to timely consult infectious disease specialist;

     c. Failure to review the medical records from Swick and All Florida Orthopedic Associates, P.A.

     d. Failure to perform tests to determine the extent of infection and pain of Waheed Nelson;

     e. Failure to provide proper care, treatment and/or management of Waheed Nelson under the facts and circumstances, as they existed in this matter;

     f. Failed to possess the skills and training required to treat the patient;

     g. Failure to maintain accurate records;

     h. Failure to treat infection by administering antibiotics;

     i. Further delay in treatment of Mr. Nelson's right ankle fracture, that had been untreated for 4 months contributed to loss of limb

     j. Failure to immediately call in orthopedic consults to review films, CT scan and MRI;

     k. Failure to be proactive in the treatment including follow up appointments;

     l. Failure to evaluate and treat Mr. Nelson's continued pain;

     m. The continued delay caused or contributed to the loss of limb;

     n. Failure to instruct agents, apparent agents, dual agents, employees, servants and/or students on the proper procedures and/or management to be used under the facts and circumstances as they existed in this matter;

     o. Failure to respond to the patient's changing conditions in a timely manner, resulting in significant talus and calcaneus fracture that developed into a Charcot deformity, destruction and ultimately loss of limb;

86.    That as a direct and proximate result of (a) any of the acts of negligence by, Florida Department of Corrections, or, in the alternative, (b) any combination of the acts of negligence by their agents, employees, servants and/or students, or, in the

alternative, c) any combination of the acts of negligence by any combination of their agents, servants, employees and/or students, Waheed Nelson suffered damages.

87. That as a direct and proximate result of any of the above acts of negligence, the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

88. As a direct and proximate result of the medical negligence by Defendant Florida Department of Corrections' employees, agents, and apparent agents herein, Plaintiff demands judgment from Defendant for all damages recoverable and permitted by law.

89. Defendant Florida Department of Corrections, is vicariously liable for the negligence of its actual or apparent agents, dual agents, employees, servants and/or students committed within the scope of their actual or apparent authority.

WHEREFORE, Plaintiff demands judgment for damages, against Defendant,

16

Florida Department of Corrections, and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

### III. <u>Medical Negligence Against WITCHNER BELIZAIRE, M.D.</u>

90.    Plaintiff realleges paragraphs 1- 57 as if set forth fully herein.

91.    Plaintiff was a patient of Witchner Belizaire, M.D. thereby creating a physician-patient relationship and a duty to provide medical care and treatment to Plaintiff Waheed Nelson within the standard of care.

92.    Witchner Belizaire M.D. undertook a duty to provide appropriate medical care and treatment to Waheed Nelson is, and was, held to a standard of care of other similarly situated physicians charged with the care and/or treatment of persons who were in the condition of Plaintiff, Waheed Nelson and as such are held to a standard of care of other similarly situated reasonably prudent healthcare providers charged with the care and/or treatment of persons who were in the condition of Plaintiff Nelson.

93.    That during the period of time that Waheed Nelson was a patient of Witchner Belizaire M.D., notwithstanding the duties, representations and undertakings applicable to, and toward Waheed Nelson, Witchner Belizaire M.D. did not have, and/or, did not exercise, the degree of learning, skill, knowledge of other similar healthcare providers, and breached his duty to MR. NELSON.

94.    Said negligence and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

     a.  Failure to review the medical records from Pinellas County Jail and Swick

and All Florida Orthopaedic Associates, P.A.

b. Failure to treat infection;

c. Failure to timely consult infectious disease specialist;

d. Failure to review the medical records from Swick and All Florida Orthopaedic Associates, P.A.

e. Failure to perform tests to determine the extent of infection and pain of Waheed Nelson;

f. Failure to provide proper care, treatment and/or management of Waheed Nelson under the facts and circumstances, as they existed in this matter;

g. Failed to possess the skills and training required to treat the patient;

h. Failure to maintain accurate records;

i.  Failure to treat infection by administering antibiotics;

j. Further delay in treatment of Mr. Nelson's right ankle fracture, that had been untreated for over 4 months contributed to loss of limb

k. Failure to immediately call in orthopedic consults to review films, CT scan and MRI;

l. Failure to be proactive in the treatment including follow up appointments;

m. Failure to evaluate and treat Mr. Nelson's continued pain;

n. The continued delay caused or contributed to the loss of limb;

o. Failure to instruct agents, apparent agents, dual agents, employees, servants and/or students on the proper procedures and/or management to be used under the facts and circumstances as they existed in this matter;

p. Failure to respond to the patient's changing conditions in a timely manner, resulting in significant talus and calcaneus fracture that developed into a Charcot deformity, destruction and ultimately loss of limb;

95.    That as a direct and proximate result of any of the above acts of negligence, the

patient, Waheed Nelson, has been significantly and permanently damaged with

resulting pain and suffering, disability, disfigurement, loss of capacity for the

enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and

bodily condition; caused him to be at a significantly higher risk for health problems in

the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

96.    As a direct and proximate result of the negligence by Defendant Witchner Belizaire, Plaintiff demands judgment from Defendant for all damages recoverable.

WHEREFORE, Plaintiff, Waheed Nelson, demands judgment for damages, prejudgment interest and costs against Defendant, Witchner Belizaire M.D.., and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## IV.    Medical Negligence Against CORIZON
### (Respondeat Superior/Vicarious Liability)

97.    Plaintiff realleges paragraphs 1- 57 as if set forth fully herein.

98.    That Waheed Nelson was a patient at Lake Butler Correctional Facility when the Florida Department of Corrections, contracted with Defendant, Corizon to provide medical care to prisoners.

99.    DR. Witchner Belizaire was an employee of Corizon and therefore Corizon is vicariously liable for the care and treatment rendered by him to Mr. Nelson.

100.   Corizon employed other physicians, nurse practitioners and nurses, were agents,

apparent agents, or employees of Defendant Corizon and is vicariously liable for their care and treatment of Mr. Nelson.

91. Defendant Corizon through its employee Dr. Witchner Belizaire, M.D., and other physicians, nurse practitioners and nurses in the medical records of Plaintiff, undertook a duty by and through its officers, agents, servants and employees to provide appropriate medical care and treatment to Plaintiff and as such is held to a standard of care of other similarly situated healthcare providers who are charged with the care and/or treatment of persons who were in the condition of Plaintiff Nelson.

92. Defendant, Corizon and/or its agents, servants or employees rendered that treatment and Plaintiff Waheed Nelson accepted the defendant's treatment, justifiably relying to his detriment upon the care provided.

101. That Corizon , held itself out to the public as a health care group corporation being possessed of employees, physicians, nurse practitioners and nurses, that had the requisite experience, knowledge, and skill to medically care for and treat Waheed Nelson for his medical condition.

102. That Defendant Corizon's employees, agents and apparent agents were held to a standard of care of other similarly situated healthcare providers who are charged with the care and/or treatment of persons who were in the condition of Waheed Nelson.

103. That during the period of time that Waheed Nelson was a patient of the Defendant, Corizon and notwithstanding the duties, representations and undertakings applicable toward Waheed Nelson, the Defendant's, Corizon, agents, dual agents,

20

apparent agents, servants, employees and/or students did not have and/or did not exercise the degree of learning, skill, knowledge, care of other similar healthcare providers in the community. Said negligence and/or malpractice included, but is not limited to the commission and/or omission of the following acts:

a.  Failure to review the medical records from Pinellas County Jail and Swick and All Florida Orthopaedic Associates, P.A.

b.  Failure to perform tests to determine the extent of infection and pain of Waheed Nelson;

c.  Failure to provide proper care, treatment and/or management of Waheed Nelson under the facts and circumstances, as they existed in this matter;

d.  Failed to possess the skills and training required to treat the patient;

e.  Failure to maintain accurate records;

f.   Failure to treat infection by administering antibiotics;

g.  Failure to timely consult infectious disease specialist;

h.  Further delay in treatment of Mr. Nelson's right ankle fracture, that had been untreated for 4 months; contributed to loss of limb

i.  Failure to immediately call in orthopedic consults to review films, CT scan and MRI;

j.  Failure to be proactive in the treatment;

k.  Failure to evaluate and treat Mr. Nelson's continued pain;

l.  The continued delay caused or contributed to the loss of limb;

m. Failure to instruct agents, apparent agents, dual agents, employees, servants and/or students on the proper procedures and/or management to be used under the facts and circumstances as they existed in this matter;

n.  Failure to respond to the patient's changing conditions in a timely manner, resulting in significant talus and calcaneus fracture that developed into a Charcot deformity, destruction and ultimately loss of limb.

104.  That as a direct and proximate result of any of the above acts of negligence, the patient, Waheed Nelson, has been significantly and permanently damaged with

21

resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

105.   As a direct and proximate result of the negligence by Defendant Witchner Belizaire M.D. herein, and nurses, nurse practitioner and other physicians at RMC Lake Butler, Plaintiff demands judgment from Defendant Corizon for all damages recoverable for its employee's negligence.

WHEREFORE, Plaintiff, Waheed Nelson demands judgment for damages, prejudgment interest and costs against Defendant, Corizon and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## V.   Medical Negligence Against MAXIM HEALTHCARE SERVICES, INC. d/b/a MAXIM PHYSICIAN RESOURCES, LLC (Respondeat Superior/Vicarious Liability)

106.   Plaintiff realleges paragraphs 1- 48 as if set forth fully herein.

107.   That Waheed Nelson was a patient at Pinellas County Jail when Defendant,

22

Maxim's agent, apparent agent, or employee provided services to Mr. Nelson.

108.   The Defendant Maxim is vicariously liable for the negligence of its actual or apparent agents, dual agents, employees, servants and/or students committed within the scope of their actual or apparent authority.

109.   Defendant Maxim through its agents, apparent agents and employees, Maurico Rangel, M.D. and Gail Newby, ARNP undertook a duty to provide appropriate medical care and treatment to Waheed Nelson.

110.   As such, Maurico Rangel, M.D. and Gail Newby, ARNP are held to a standard of care of other similarly situated healthcare providers who are charged with the care and/or treatment of persons who were in the condition of Plaintiff, Waheed Nelson.

111.   Maurico Rangel, M.D. and Gail Newby, ARNP undertook to treat Plaintiff Nelson as employees of Defendant, Maxim, and Plaintiff Nelson accepted the defendant's treatment, justifiably relying to his detriment upon the care provided.

112.   That during the period of time that Waheed Nelson was a patient of the Defendant, MAXIM, the Defendant, Maxim's employees' Maurico Rangel, M.D. and Gail Newby, ARNP did not have and/or did not exercise the degree of learning, skill, knowledge, care of other similarly reasonably prudent healthcare providers in the community.

113.   Said negligence, and/or malpractice breached the duty to Mr. Nelson and included, but is not limited to the commission and/or omission of the following acts:

a.   Failure to review the medical records from Pinellas County Jail and Swick

and All Florida Orthopaedic Associates, P.A.

b. Failure to perform tests to determine the extent of infection and pain of Waheed Nelson;

c. Failure to provide proper care, treatment and/or management of Waheed Nelson under the facts and circumstances, as they existed in this matter;

d. Failed to possess the skills and training required to treat the patient;

e. Failure to maintain accurate records;

f. Failure to treat infection by administering antibiotics;

g. Failure to timely consult infectious disease specialist;

h. Further delay in treatment of Mr. Nelson's right ankle fracture, that had been untreated for 4 months; contributed to loss of limb

i. Failure to immediately call in orthopedic consults to review films, CT scan and MRI;

j. Failure to be proactive in the treatment;

k. Failure to evaluate and treat Mr. Nelson's continued pain;

l. The continued delay caused or contributed to the loss of limb;

m. Failure to instruct agents, apparent agents, dual agents, employees, servants and/or students on the proper procedures and/or management to be used under the facts and circumstances as they existed in this matter;

n. Failure to respond to the patient's changing conditions in a timely manner, resulting in significant talus and calcaneus fracture that developed into a charcot deformity, destruction and ultimately loss of limb;

114.   That as a direct and proximate result the acts of negligence by said Defendant,

Maxim through its employees acts of negligence Waheed Nelson suffered damages.

115.   Such damages occurred as a direct and proximate result of any of the above acts

of negligence and the patient, Waheed Nelson, has been significantly and permanently

damaged with resulting pain and suffering, disability, disfigurement, loss of capacity

for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health

24

and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

116.   As a direct and proximate result of the negligence by Defendant Maxim herein, Plaintiff demands judgment from Defendant for all damages recoverable.

WHEREFORE, Plaintiff, Waheed Nelson demands judgment for damages, prejudgment interest and costs against Defendant, Maxim Healthcare Services, Inc. and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## VI.   Medical Negligence Against MATTHEW SWICK, M.D.

117.   Plaintiff realleges paragraphs 1-48 as if set forth fully herein.

118.   Plaintiff was a patient of Matthew Swick, M.D., who is an orthopedic surgeon, thereby creating a physician-patient relationship and a duty to provide medical care and treatment to Plaintiff Waheed Nelson within the standard of care.

119.   Dr. Swick is, and was, held to a standard of care of other similarly situated physicians who are charged with the care and/or treatment of persons who were in the conditions of Plaintiff, Waheed Nelson.

120.  That during the period of time that Waheed Nelson was a patient of Dr. Swick,

notwithstanding the duties, representations and undertakings applicable to Dr. Swick,

and toward Waheed Nelson, his physician Dr. Swick, had a duty to treat Mr. Nelson as

other reasonably prudent similar orthopedic surgeons in the community.

121.  Dr. Swick did not have, and/or, did not exercise, the degree of learning, skill,

knowledge of other similar orthopedic surgeons and breached his duty to Plaintiff.

122.  Said negligence, and/or malpractice included, but is not limited to the

commission and/or omission of the following acts:

   a.  Failure to perform tests to determine the extent of infection and pain of
       Waheed Nelson;

   b.  Failure to provide proper care, treatment and/or management of Waheed
       Nelson under the facts and circumstances, as they existed in this matter;

   c.  Failure to treat infection by administering antibiotics;

   d.  Failure to timely consult infectious disease specialist;

   e.  Further delay in treatment of Mr. Nelson's right ankle fracture, that had been
       untreated for 4 months; contributed to loss of limb

   f.  Failure to be proactive in the treatment;

   g.  Failure to evaluate and treat Mr. Nelson's continued pain;

   h.  The continued delay caused or contributed to the loss of limb;

   i.  Failure to instruct agents, apparent agents, dual agents, employees, servants
       and/or students on the proper procedures and/or management to be used
       under the facts and circumstances as they existed in this matter;

   j.  Failure to respond to the patient's changing conditions in a timely manner,
       resulting in significant talus and calcaneus fracture that developed into a
       charcot deformity, destruction and ultimately loss of limb.

123.  Such damages occurred as a direct and proximate result of any of the above acts

of negligence and the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

124.   As a direct and proximate result of the negligence by Defendant Dr. Swick herein, Plaintiff demands judgment from Defendant for all damages recoverable under Chapter 766, Florida Statutes and allowed by law.

WHEREFORE, Plaintiff, Waheed Nelson, demands judgment for damages, prejudgment interest and costs against Defendant, Matthew Swick, M.D., and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## VII.   Medical Negligence Against ALL FLORIDA ORTHOPAEDIC ASSOCIATES, P.A. for Defendant MATTHEW SWICK, M.D. (Respondeat Superior/Vicarious Liability)

125.   Plaintiff realleges paragraphs 1-48 as if set forth fully herein.

126.   That Waheed Nelson was a patient of Defendant, Matthew Swick, M.D.

127. That Matthew Swick M.D. was an agent, apparent agent, or employee of Defendant All Florida Orthopaedic Associates, P.A..

128. Defendant, All Florida Orthopaedic Associates, P.A. is vicariously liable for its employees and agents.

129. That All Florida Orthopaedic Associates, P.A. through its agent Matthew Swick, M.D., undertook a duty by and through its officers, agents, dual agents, apparent agents and/or servants or employees to provide appropriate medical care and treatment to Waheed Nelson and as such is held to a standard of care of other similarly situated healthcare providers who are charged with the care and/or treatment of persons who were in the condition of Plaintiff, Waheed Nelson.

130. All Florida Orthopaedic Associates, P.A., held itself out to the public as a health care group being possessed of the requisite experience, knowledge, and skill to medically care for and treat Waheed Nelson for his medical condition which warranted care and treatment.

131. That Defendant, All Florida Orthopaedic Associates, P.A. undertook to treat Plaintiff through its employee or agents, Matthew Swick, M.D. and rendered that treatment and Plaintiff accepted the defendant's treatment, justifiably relying to his detriment upon the care provided.

132. That Defendant, All Florida Orthopaedic Associates, P.A. employees, agents, apparent agents, dual agents and/or servants were held to a standard of care of other similarly situated healthcare providers who are charged with the care and/or treatment

of persons who were in the condition of Waheed Nelson.

133.   Dr. Swick did not have, and/or, did not exercise, the degree of learning, skill,

knowledge of other similar orthopedic surgeons and breached his duty to Plaintiff.

134.   Said negligence, and/or malpractice included, but is not limited to the

commission and/or omission of the following acts:

a.   Failure to perform tests to determine the extent of infection and pain of
Waheed Nelson;

b.   Failure to provide proper care, treatment and/or management of Waheed
Nelson under the facts and circumstances, as they existed in this matter;

c.   Failure to treat infection by administering antibiotics;

d.   Failure to timely consult infectious disease specialist;

e.   Further delay in treatment of Mr. Nelson's right ankle fracture, that had been
untreated for 4 months; contributed to loss of limb

f.   Failure to be proactive in the treatment;

g.   Failure to evaluate and treat Mr. Nelson's continued pain;

h.   The continued delay caused or contributed to the loss of limb;

i.   Failure to instruct agents, apparent agents, dual agents, employees, servants
and/or students on the proper procedures and/or management to be used
under the facts and circumstances as they existed in this matter;

j.   Failure to respond to the patient's changing conditions in a timely manner,
resulting in significant talus and calcaneus fracture that developed into a
charto a charcot deformity, destruction and ultimately loss of limb;

135.   That as a direct and proximate result of the breach of the standard of care by All

Florida Orthopaedic Associates, P.A.'s employee, Matthew Swick, M.D., Waheed

Nelson suffered damages.

136.   Such damages occurred as a direct and proximate result of any of the above acts

29

of negligence and the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

137.   As a direct and proximate result of the negligence by Defendant Dr. Swick, employee of All Florida Orthopaedic Associates, P.A. herein, Plaintiff demands judgment from Defendant All Florida Orthopaedic Associates, P.A. for all damages permitted by law.

138.   Since Defendant All Florida Orthopaedic Associates, P.A. is vicariously liable for the negligence of its actual or apparent agents, dual agents, employees, servants and/or students committed within the scope of their actual or apparent authority.

WHEREFORE, Plaintiff, Waheed Nelson demands judgment for damages, prejudgment interest and costs against Defendant, All Florida Orthopaedic Associates, P.A. and for such other and further relief as the Court may deem just and proper. Plaintiff demands trial by jury on all issues.

## VIII.  Constitutional Failure to Treat pursuant to 42 U.S.C. 1983
## BOB GAULTIERI, Official Capacity as Sheriff of Pinellas County

139.   Plaintiff realleges the Common Allegations as if set forth fully herein.

140.   Plaintiff is entitled to relief against Defendant Gaultieri, as Sheriff for violation

of the Fourteenth and Eighth Amendments to the U.S. Constitution.

141.   Plaintiff is entitled to relief against the Sheriff for violation of both the

Fourteenth and Eighth Amendments as Plaintiff was sentenced while in his custody.

142.   Defendant Gaultieri maintained policies and procedures, customs and practices

at the Jail that made constitutional violations such as those suffered by Plaintiff

substantially certain to happen and ignored a history of known such abuses.

143.   That during the period of time that Waheed Nelson was a patient and under

medical care at the Pinellas County Jail, by and through Defendant, Bob Gaultieri,

Official Capacity as Sheriff of Pinellas County, were deliberately indifferent to the

risk of harm from a known serious medical condition included, but is not limited to,

the commission and/or omission of the following acts:

   a. Failure to provide Waheed Nelson treatment for infection or to take him to
      medical providers who could provide treatment;
   b. Failure to provide Waheed Nelson treatment for his fractured ankle and foot
      and take him to medical providers who could provide treatment;
   c. Unconscionable reliance on a medical provider who consistently failed to
      provide needed care to prisoners to save costs and maximize profit;
   d. Failure to ensure that Waheed Nelson received follow-up treatment;
   e. Failure to ensure that Waheed Nelson received needed pain management;
   f. Failure to maintain policies and protocols to make sure that prisoners with

serious chronic and acute medical conditions were timely treated;

g. Failure to respond to Plaintiff's changing medical condition in a timely manner, resulting in significant talus and calcaneus fracture that developed into a charcot deformity, destruction and ultimately the loss of a limb.

144. Sheriff Gualtieri engaged in the following customs and practices as Sheriff and

operator of the Pinellas County Jail which bespoke deliberate indifference toward the

failure to treat known serious medical conditions:

a. Failure to maintain a policy of timely follow-up on known injuries. Plaintiff suffered a severe fracture January 7, 2015, was x-rayed the next day, January 8, 2015, showing a severe displaced ankle and foot fracture, yet, while misaligned bones begin to fuse within days, Plaintiff did not receive further diagnostic imaging for a month nor see an orthopedist for three months.

b. The Sheriff had no regular monitored protocol for timely addressing known injuries at the Jail and if anyone was designated by the Sheriff to see that injuries were addressed timely, there was no oversight of that designee

c. Although the orthopedist who finally saw Plaintiff three months after his fracture would have known that time was of the essence and failed to expedite treatment, the Sheriff did not communicate any such expectation.

d. A casual attitude toward illness and injury was endemic at the Pinellas County Jail and the Sheriff seemed more inclined to litigate the harm from failure to treat than to actually offer timely, adequate treatment.

e. Jail medical records do not indicate a policy to track timelines for treating severe fractures and referrals were repeatedly cancelled and reset, raising a reasonable inference of "slow-walking" medical care so inmates would be released or transferred before expensive medical procedures took place.

f. In some cases, the Sheriff tried to arrange the release of a severely ill patient so as not to have to pay for costly medical care. George Arthur Hunt IV died in 2013 from a serious heart attack while the Sheriff tried to arrange release from the Jail for Hunt instead of calling an ambulance.

g. The Pinellas County Jail has a long history of inadequate inmate care. It came under federal court oversight in 1975 pursuant to *Davis v. Roberts*, No. 75-411-CIV-T-2. By March 12, 1993, the court monitor reported pervasive problems with Jail medical treatment, which failed to examine inmates with

medical problems or respond to medical complaints in a timely manner.

h. On March 6, 1994, Diane Nelson entered the Jail with a heart condition. She never got her heart medication, Procardia XL, because it wasn't verified. She complained of shortness of breath and chest pain. No EKG was done. She died March 9, 1994. One Jail nurse was quoted as saying, "We save money because we skip the ambulance and bring them right to the morgue."

i. On April 2, 1996, 24-year-old Melony Bird died after a 13-hour delay in hospitalization after a diagnosed heart failure. Jail Medical Director Dr. David Webb vetoed a 911 call for her. Dr. Webb had a contract that gave him a $250 bonus for every emergency 911 call that could be avoided.

j. On April 13, 1996, Michael K. Smith began to vomit and complain of stabbing pain in his abdomen. He repeatedly begged to be sent to a hospital for 30 hours before he was sent to the ER with a burst appendix.

k. On April 23, 1996, Charles Henderson, a diabetic with a bad heart, had a crisis when he was injected with a sugar solution. His lawsuit maintained that Dr. David Webb delayed a 911 call, nearly causing his death.

l. On April 25, 1996, Nancy Bradwell was found unable to speak after pus and blood had seeped from her right ear for over a week. Dr. David Webb cancelled a 911 call resulting in Bradwell's severe brain damage.

m. From July 11 to September 20, 2007, Derek Jules Henderson was forced to go without his psychotropic medication despite a suicide effort. Jail staff simply told him to "man up."

n. On March 16, 2009, Jail staff became aware that Jennifer DeGraw was suffering mental and physical conditions that required treatment. She was denied care for eight days while records documenting checks were falsified. She died on March 24, 2009. Her lawsuit settled for $1.15 million.

o. After Fernando Cantres complained of night sweats, stomach pain, headaches, loss of memory and constipation, significant weight loss, incontinence and vision and balance problems beginning on April 16, 2009, it took the Jail four months to order his medical history.

p. Lewis Hays, Health Services Administrator at the Hillsborough County Jail who came under fire in May, 2012, for allowing a stroke victim to remain in the jail without medical screening until he slipped into a coma and died three months later and, according to an investigation, mishandled records and intimidated the nurse who recognized the stroke symptoms, moved to the Pinellas County Jail until his removal in February 2014.

q. On May 18, 2013, George Arthur Hunt, IV, was admitted to the jail with a serious liver condition and rather than simply send him to a hospital, the Jail tried to cut costs by getting him released from Jail to go to the emergency room on his own while his condition deteriorated. He died May 19, 2013.

r. In February 2013, medical staff, knowing of serious collar-bone, neck, back, and ribs injuries, of inmate Willie Billue, denied him pain medication and forced him to sign a "refusal" threatening denial of further care.

s. On November 21, 2013, Anthony Newkirk, who suffered six gunshot wounds, complained of being denied care after medical staff told him to clean his own wounds, which showed indications of infection.

t. On May 12, 2014, Sheriff Gualtieri admitted the Jail health care system "wasn't working" and fired his contractor, Armor Correctional Health Services. Armor also admitted health care delivery problems, but blamed the Sheriff for failure to adopt electronic medical record-keeping.

145.  Since the failure to treat Plaintiff, denial and slow-walking medical care for

serious conditions has continued at the Pinellas County Jail, confirming that the

pattern was not temporary or anomalous.

a. On April 10, 2016, Terry Jones, who suffered from diabetes, gastric bypass surgery, and a history of stroke, complained of increased pelvic pain and discolored urine, and pressure from the catheter he wore. On April 18, 2016, he complained he could not urinate, lost consciousness and fell down. No medical tests were done. Infection from the catheter damaged his kidneys.

b. On June 1, 2016, Elias Morales was given a BiPAP machine and mask but complained he was allergic to that kind of mask and, when nothing was done, wrote a grievance. On June 9, 2016, the Jail doctor took away the breathing machine, telling Morales writing him up "had repercussions."

c. On September 30, 2016, Timothy Robertson Matthews suffered shortness of breath and chest pain and received heartburn medication. After burning pain in the midsternal area, he was given Prilosec and advised to drink more fluids. On October 5, he shook uncontrollably and complained of numbness in his left hand and sharp chest pain. He was given ibuprofen, Mylanta, and Prilosec. On October 30, he suffered a seizure and died.

d. On March 3, 2017, Jonathan William Nelson was attacked by an inmate who was not supposed to be outside his cell. He was choked and struck in the

head and lost consciousness. He was seen by medical staff and pictures of the injuries were taken and his wounds were cleaned but he received no further medical care though he expressed severe pain and dizziness. Medical staff ignored his complaints and told officers to place him back in his cell.

e. On July 21, 2017, Justin Ford and 12 other inmates at the Pinellas County jail filed a lawsuit based on respiratory problems due to mold throughout the jail that made it difficult to breathe after no response to complaints.

f. On October 31, 2017, Ryan Sturgis received a severe head injury in a use of force. After he returned from the hospital, Jail staff interfered with his medical treatment by denying him pain medication and a neck brace.

g. On July 5, 2018, Mark Hughes reported a history of seizures. After his prescription was cut in half, he had seven seizures in four days. Jail staff then took Hughes completely off his seizure medication without checking his medical history and took his wheelchair. Hughes suffered a broken nose and eye socket from falls. He was denied a specialist for testicular cancer and denied treatment for hepatitis C although he had cirrhosis.

146. As a direct and proximate result of the Sheriff's custom and practice of deliberate indifference in failing to treat the known serious medical condition and in implementing customs and practices that made Plaintiff's further injuries substantially certain to occur, that patient, Waheed Nelson, sustained serious additional injuries.

147. As a direct result of deliberate indifference, Plaintiff has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; placed at a significantly higher risk for health problems in the future, and further reduced life expectancy, increased expense of medical care, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and

35

treatment and aggravation of a previously existing injury or condition. All these losses

are permanent and continuing and Plaintiff will continue to suffer them in the future.

148.  Plaintiff was obliged to retain the services of attorneys in bringing this lawsuit

and is entitled to reasonable attorneys' fees and costs.

    WHEREFORE, Plaintiff demands relief as noted below.

## IX.    Constitutional Failure to Treat Pursuant to 42 U.S.C 1983 WITCHNER BELIZAIRE, M.D.

149.  Plaintiff realleges the Common Allegations as if set forth fully herein.

150.  Plaintiff was a patient in the care of Dr. Witchner Belizaire, M.D.

151.  In the alternative, Plaintiff is entitled to relief against Defendant, Witchner

Belizaire M.D. for violation of the Eighth Amendment to the U.S. Constitution.

152.  Defendant Belizaire acted with deliberate indifference included, but is not

limited to the commission and/or omission of the following acts:

    a.  Failure to provide Waheed Nelson treatment for infection or to take him to medical providers who could provide treatment;

    b.  Failure to provide Waheed Nelson treatment for his injured leg or to take him to medical providers who could provide treatment;

    c.  Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

    d.  Failure to ensure that Waheed Nelson received follow-up treatment;

    e.  Failure to ensure that Waheed Nelson received needed pain management;

    f.  Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

    g.  Failure to respond to Waheed Nelson's changing medical condition in a timely manner, resulting in significant talus and calcaneus fracture that developed

into a charcot deformity, destruction and ultimately the loss of a limb;

153. That as a direct and proximate result of any of the above acts of deliberate indifference, the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously existing injury or condition. All these losses and damages are permanent and continuing and Plaintiff will continue to suffer from them in the future.

154. Plaintiff was obliged to retain the services of attorneys in bringing this lawsuit and is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands relief as noted below.

## X.     Constitutional Failure to Treat pursuant to 42 U.S.C. 1983 Defendant CORIZON

155. Plaintiff realleges the Common Allegations as if set forth fully herein.

156. Waheed Nelson was a patient at the Reception and Medical Center at Lake Butler, Florida when the Florida Department of Corrections, contracted with Defendant, Corizon to provide medical care to prisoners.

37

157.   Plaintiff is entitled to relief against Corizon, in the alternative, because it was deliberately indifferent in maintaining policies and procedures, customs and practices that made constitutional violations such as those suffered by Plaintiff substantially certain to happen and ignored a history of known such abuses.

158.   Defendant Corizon, had a duty to provide medical treatment for a known serious medical condition under the Eighth Amendment to the U.S. Constitution.

159.   Defendant Corizon was also deliberately indifferent in failing to treat a known serious medical condition in that it also had a custom and practice of delaying and denying care to maximize its profits and of demanding that its employees make decisions calculated to save money rather than to provide needed medical care, including decisions that delayed or denied care, resulting in more serious injuries than otherwise would have been suffered.

160.   The Corizon contract became operational in 2013. As early as 2014, the Florida Department of Corrections (FDOC) expressed concern that audits showed Corizon failing to provide care to prisoners.

161.   In 2015, FDOC Secretary Julie Jones reported that private health care providers, including Corizon, were not performing "at the level that's covered by their contracts." By late 2015, Corizon was being fined by the State of Florida for failure to live up to its contract obligations to provide adequate health care to prisoners.

162.   In May of 2016, the contract with Corizon for prisoner health services was terminated more than two years before it was scheduled to expire.

163. Defendant Corizon maintained policies and procedures or customs and practices that made the harm to Mr. Nelson substantially certain.

164. Corizon failed to provide, or cooperated in, maintained, enforced, tolerated, or condoned, the failure to provide timely and adequate medical care to an inmate suffering a life-threatening medical condition.

165. Corizon had a custom of basing medical care on cost rather than medical judgment in deciding what treatment to provide and when it should be provided, and a custom of not providing more expensive care to prisoners except when the condition had reached an emergency stage and sometimes not even then.

166. As a matter of policy, costly care was generally provided, if ever, only in life-threatening situations without regard for the pain and debilitation to the patient.

167. Corizon has enforced this policy, practice, and custom around the nation so that Corizon has been terminated as a prison health care provider in several states.

168. In Florida, one year after Corizon took over prisoner medical care, then-FDOC Secretary Michael Crews sent a letter to Corizon threatening to withhold payment and remove facilities from Corizon control if improvements were not made to the level of care being provided to Florida prisoners.

169. The letter stated that Corizon's "level of care continues to fall below the contractually required standard." Specifically, Crews identified failures in patient care issues, utilization management, and communication.

170. The 11th Circuit, in a case brought from Florida, upheld a jury verdict against

Corizon by finding that a jury reasonable concluded that Corizon "had a policy that improperly delayed treatment of serious medical needs…" *Fields v. Corizon*, 490 F. App'x 174, 184 (11th Cir. 2012).

171. That during the period of time that Waheed Nelson was a patient of the Defendant, Corizon, Corizon was deliberately indifferent in failing to provide needed medical care for a known serious medical condition. Said deliberate indifference included, but is not limited to the commission and/or omission of the following acts:

   a. Maintaining policies of denial, delay, and minimization of care in order to cut costs and maximize profits in its Florida contracts and across the nation.

   b. Short-staffing medical positions needed for timely care and treatment;

   c. Failure to provide Waheed Nelson timely treatment for infection or to take him to medical providers who could provide treatment;

   d. Failure to provide Waheed Nelson timely treatment for his injured leg or to take him to medical providers who could provide treatment;

   e. Failure to ensure that Waheed Nelson received follow-up treatment;

   f. Failure to ensure that Waheed Nelson received needed pain management;

   g. Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

   h. Failure to timely respond to changes in Waheed Nelson's medical condition resulting in significant talus and calcaneus fracture that developed into a Charcot deformity, destruction and ultimately the loss of a limb;

   i. Failure to maintain accurate records to provide a guide for treatment;

   j. Further delay in treatment of Mr. Nelson's known serious right ankle fracture, that had been untreated for 4 months prior to coming to prison.

172. That as a direct and proximate result of any of the above acts of deliberate indifference, the patient, Waheed Nelson, has been significantly and permanently

40

damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing and Plaintiff will continue to suffer from them in the future.

173.   Plaintiff was obliged to retain the services of attorneys in bringing this lawsuit and is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands relief as noted below.

## XI.   Constitutional Failure to Treat Pursuant to 42 U.S.C. 1983 Against Defendant MAXIM

174.   Plaintiff realleges the Common Allegations as if set forth fully herein.

175.   That Waheed Nelson was a patient at Pinellas County Jail when Defendant, Maxim contracted to provide care to Mr. Nelson.

176.   In the alternative, Plaintiff is entitled to relief against Maxim because it maintained policies and procedures, customs and practices at the Jail that made constitutional violations such as those suffered by Plaintiff substantially certain to happen and ignored a history of known such abuses.

177.   Maxim was also deliberately indifferent in failing to treat a known serious medical condition in that it also had a custom and practice of delaying and denying care to maximize its profits and of demanding that its employees make decisions calculated to save money rather than to provide needed medical care, including decisions that delayed or denied care, resulting in more serious injuries than otherwise would have been suffered..

178.   Said deliberate indifference included, but is not limited to the commission and/or omission of the following acts:

   a.  Maintaining policies of denial, delay, and minimization of care in order to cut costs and maximize profits in its Florida contracts;

   b.  Short-staffing medical positions needed for timely care and treatment;

   c.  Failure to provide Waheed Nelson timely treatment for infection or to take him to medical providers who could provide treatment;

   d.  Failure to provide Waheed Nelson timely treatment for his injured leg or to take him to medical providers who could provide treatment;

   e.  Failure to ensure that Waheed Nelson received follow-up treatment;

   f.  Failure to ensure that Waheed Nelson received needed pain management;

   g.  Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

   h.  Failure to timely respond to changes in Waheed Nelson's medical condition resulting in significant talus and calcaneus fracture that developed into a Charcot deformity, destruction and ultimately the loss of a limb.

179.   That as a direct and proximate result the acts of deliberate indifference by said Defendant, Maxim through its employees acts of deliberate indifference, Waheed Nelson suffered damages.

180.   Such damages occurred as a direct and proximate result of any of the above acts of deliberate indifference and the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing and Plaintiff will continue to suffer from them in the future.

181.   Plaintiff was obliged to retain the services of attorneys in bringing this lawsuit and is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands relief as noted below.

## XII.   Constitutional Failure to Treat pursuant to 42 U.S.C. 1983 MATTHEW SWICK, M.D.

182.   Plaintiff realleges the Common Allegations as if set forth fully herein.

183.   In the alternative, Plaintiff is entitled to relief against Dr. Swick, because Dr. Swick violated the Fourteenth and Eighth Amendments to the U.S. Constitution.

184.   Said deliberate indifference included, but is not limited to the commission and/or omission of the following acts:

43

a.  Failure to provide Waheed Nelson treatment for infection or to take him to medical providers who could provide treatment;

b.  Failure to provide Waheed Nelson treatment for his injured leg or to take him to medical providers who could provide treatment;

c.  Unconscionable adherence to a medical provider who consistently failed to provide needed care to prisoners to save costs and maximize profit;

d.  Failure to ensure that Waheed Nelson received follow-up treatment;

e.  Failure to ensure that Waheed Nelson received needed pain management;

f.  Failure to maintain policies and protocols to make sure that prisoners with serious chronic and acute medical conditions were timely treated;

g.  Failure to respond to Waheed Nelson's changing medical condition in a timely manner, resulting in significant talus and calcaneus fracture that developed into a charcot deformity, destruction and ultimately the loss of a limb;

185.   Such damages occurred as a direct and proximate result of any of the above acts of deliberate indifference and the patient, Waheed Nelson, has been significantly and permanently damaged with resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, loss of limb, permanent damage to Plaintiff 's overall health and bodily condition; caused him to be at a significantly higher risk for health problems in the future, and has further reduced his life expectancy, increased the expense of medical treatment, inability to lead a normal life, embarrassment, humiliation, great discomfort in the future; additional medical and related medical expenses for care and treatment and an aggravation of a previously exiting injury or condition. All of these losses and damages are permanent and continuing in nature and Plaintiff will continue to suffer from them in the future.

186.   Plaintiff was obliged to retain the services of attorneys in bringing this lawsuit and is entitled to reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands relief as noted below.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief as follows:

A. Compensatory damages, attorney's fees and costs as permitted by law;

B. Punitive damages as to the individual Defendants as permitted by law;

C. Pre-judgment and post-judgment interest as permitted by law;

D. A jury trial on all Counts; and

E. Any such further and additional relief as this Court deems proper.

Respectfully submitted,   */S/ Linda Bellomio Commons*
Law Offices of Linda Bellomio Commons, P.A.
Florida Bar No: 0778346
P.O. Box 340261
Tampa, Florida 33694
T: (352) 610-4416
Fax: (813) 265-3010
Service E-mail: lcommons@aol.com
Secondary email: Dheiser1@gmail.com

JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080
(850) 561-0836 fax
cookjv@gmail.com

Attorneys for Plaintiff

I CERTIFY the foregoing was filed electronically on 4/7/20 and served on all counsel registered with the CM/ECF electronic mail system:

*s/James V. Cook*