UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAHEED NELSON,

    Plaintiff,

v.                                                Case No: 8:19-cv-449-T-36JSS

BOB GUALTIERI, *et al.*,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon Defendant Bob Gualtieri's Motion to Dismiss Plaintiff's Fourth Amended Complaint ("Sheriff's motion") (Doc. 114), and Plaintiff's response in opposition (Doc. 117). In the Fourth Amended Complaint, Plaintiff sues Defendant Bob Gualtieri, in his official capacity as Sheriff of Pinellas County ("the Sheriff"), for medical negligence (Count I) and for violations of constitutional rights pursuant to 42 U.S.C. § 1983 (Count VIII), while he was incarcerated at the Pinellas County Jail.[1] The Court, having considered the Sheriff's motion and being fully advised in the premises, will deny the Sheriff's Motion (Doc. 114).

**I.    BACKGROUND[2]**

Plaintiff, Waheed Nelson, filed this action against numerous Defendants alleging negligence in connection with his medical care, or lack thereof, while an inmate at the Pinellas

---

[1] Plaintiff also sued the Florida Department of Corrections ("FDOC"); Corizon, LLC ("Corizon"); Witchner Belizaire, M.D. ("Belizaire"); Maxim Healthcare Services, Inc. d/b/a Maxim Physicians Resources, LLC ("Maxim"); Matthew Swick, M.D. ("Swick"); and All Florida Orthopedics Associates, P.A. ("All Florida"). Defendants Maxim, Swick, and All Florida have been dismissed. Docs. 164, 185.

[2] The following statement of facts is derived from the Plaintiff's Fourth Amended Complaint (Doc. 105), the allegations of which the Court must accept as true in ruling on the instant motion. *See*

County Jail (the "Jail"). Doc. 105. Plaintiff, who is diabetic, has renal issues, and suffers from chronic edema, alleges that while he was incarcerated at the Jail on January 7, 2015, he slipped and suffered a fall that severely injured his right ankle. *Id.* ¶¶ 31–34. Because of his status as an inmate, the FDOC was responsible for Plaintiff's care and treatment. *Id.* ¶ 21. Additionally, he alleges he was under the control and responsibility of the Sheriff. *Id.* ¶ 20.

One day after Plaintiff's fall, an initial x-ray confirmed a fracture. *Id.* ¶ 39. One month later, on February 5, 2015, a CT scan was performed by All Florida, an independent contractor hired by the Sheriff. *Id.* ¶¶ 19, 40. The imaging showed that Plaintiff's ankle was badly fractured with severe deterioration of the bone, "[c]harcot foot and/or chronic infection." *Id.* ¶¶ 40, 49. Referrals were scheduled for Plaintiff to see specialists but rather than expedite these appointments, these were scheduled, delayed, and subsequently canceled. *Id.* ¶¶ 41, 49–52.

For nearly three months, the only treatment Plaintiff received was a boot to hold "his bones together like a bag of marbles." *Id.* ¶¶ 42, 43. During this time, Plaintiff's ankle continued to swell, and he was in increasingly "intense pain which was never appropriately treated with pain medication." *Id.* ¶¶ 44, 45. Plaintiff was eventually sent by Swick for an MRI on April 14, 2015, and the results evidenced a need for immediate surgery. *Id.* ¶ 52. After the MRI, medical appointments were made by Maxim (the Jail's health contractor) or the Sheriff, but the Plaintiff was not transported to those appointments, and neither Swick nor All Florida followed up with the MRI. *Id.* ¶¶ 52, 53. On April 16, 2015, without the necessary post-MRI surgery, Plaintiff was transferred from the Jail to the Florida Department of Corrections ("FDC"). *Id.* ¶ 56. The Sheriff failed to notify the FDC of Plaintiff's need for immediate emergency surgery. *Id.* ¶ 54.

---

*Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

On the day of his transfer, Plaintiff received x-rays at the Reception and Medical Center. *Id.* ¶ 57. In May 2016, Plaintiff had another MRI which again showed a severely fractured heel, inflammation, and a likelihood of infection, including bone infection. *Id.* ¶¶ 59–61. The MRI also showed that the bones had not been set or reconstructed despite the age of the injury. *Id.* at ¶ 58. Despite Plaintiff's need for immediate surgery, he was still not sent for surgery, and as a result, he was required to undergo a right leg amputation on July 28, 2015. *Id.* ¶ 66.

Plaintiff alleges that the Sheriff for years utilized a "slow walking medical care" strategy to minimize costs and increase profits by electing to avoid costly medical care and surgeries by waiting to see whether an inmate would be released or transferred to prison despite an inmate's emergent need for medical care. *Id.* ¶¶ 36–37, 46. The Jail has a "long standing history of systemic delay and denial of medical care resulting in death and serious injury." *Id.* ¶ 55. Furthermore, the Sheriff had notice of these issues through multiple complaints and lawsuits from prisoners claiming constitutional violations due to the Sheriff's failure, as operator of the Jail, to provide prompt and proper medical treatment. *Id.* ¶¶ 142–46. In May 2014, the Sheriff admitted that the Jail's healthcare system was not working. *Id.* ¶ 144(t).

Based on these allegations, Plaintiff asserts two claims against the Sheriff. The first (Count I) is a medical negligence claim against the Sheriff in his official capacity under the theory of *respondeat superior*/vicarious liability. *Id.* ¶¶ 69–79. The second (Count VIII) is brought under 42 U.S.C. § 1983 and alleges failure to treat in violation of Plaintiff's Fourteenth and Eighth Amendment rights. *Id.* ¶¶ 139–148. The Sheriff moves to dismiss both claims. Doc. 114.

**II.   LEGAL STANDARD**

To survive a motion to dismiss, a pleading must include a "short and plain statement showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)

3

(quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions, too, are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

### III. DISCUSSION

#### A. COUNT I – MEDICAL NEGLIGENCE

Count I of Plaintiff's Fourth Amended Complaint sues the Sheriff for medical negligence based on vicarious liability. Specifically, Plaintiff claims the physicians, nurse practitioners and nurses, who were employees and agents of the Sheriff, negligently failed to properly and timely treat Plaintiff's right ankle fracture, which resulted in his leg having to be amputated. Doc. 105 ¶¶ 70–75. The Sheriff moves to dismiss Count I as a shotgun pleading, arguing that the Fourth Amended Complaint should be dismissed because it "does not clearly set forth which causes of action are being supported by which factual allegations and against which defendant." Doc. 114 at 14.

Defendants Swick and All Florida previously argued that Plaintiff's Third Amended Complaint constituted a shotgun pleading because it lumps together the health care provider's actions and fails to allege who did what and when. The Court rejected Swick and All Florida's

arguments because, while the Complaint was not a picture of clarity, it was not a shotgun pleading. *See* Doc. 98 at 6. Although not raised previously by the Sheriff, he now advances a similar shotgun pleading argument as Swick and All Florida presented earlier. However, the allegations in Count I of the Fourth Amended Complaint are not appreciably different from the allegations asserted in Count I of the Third Amended Complaint, which the Court previously found did not constitute a shotgun pleading. Accordingly, the Court will deny the Sheriff's motion to dismiss the Fourth Amended Complaint as a shotgun pleading.

In his motion to dismiss, the Sheriff also argues Count I does not state a claim against him for medical negligence. Doc. 114 at 13–14. In his recently filed motion for summary judgment, the Sheriff similarly argues Plaintiff's claims in Count I must fail because Plaintiff is unable to show that what was done or failed to be done would have affected the outcome. *See* Doc. 210 at 23–25. That is, the Sheriff submits that Plaintiff fails to satisfy his burden of showing the required elements of breach and causation. *Id.* at 25. To preserve judicial economy, the Court will deny the Motion to Dismiss as to Count I because both motions argue Plaintiff fails to satisfy the elements of a claim for medical negligence. The Court will address the issues related to Count I in ruling on the Sheriff's motion for summary judgment. Consideration of the Sheriff's arguments in his motion for summary judgment will necessarily allow the Court to look beyond the four corners of the Fourth Amended Complaint and perform a thorough review of the submitted evidence, unlike review of the Motion to Dismiss.

### B.     COUNT VIII – 42 U.S.C. § 1983

The Sheriff moves to dismiss the constitutional claims in Count VIII arguing that the Fourth Amended Complaint is impermissibly based on the theory of *respondeat superior* and fails to identify any policy, practice, or custom under the Sheriff's control that was unconstitutional.

5

Section 1983 liability will be imposed on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove that (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). The plaintiff also must prove an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

Officials cannot be held liable pursuant to § 1983 solely on the basis of *respondeat superior* or vicarious liability. *Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009) (citations omitted). Instead, supervisory defendants can only be liable if they participate in the violation or if their actions caused the violation. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). A causal connection can be established: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights; or (3) when the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Id.* at 1234–35 (citations and internal quotation marks omitted).

When alleging a claim against a sheriff based on an official policy, a plaintiff must identify either (1) "an officially promulgated policy, or (2) an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity." *Crenshaw v. Lister*, 509 F. Supp. 2d 1230, 1237 (M.D. Fla. 2007) (citing *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329–30 (11th Cir.

6

2003)). "Plaintiff must identify the policy or custom which caused his injury so that liability will not be based on an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation." *Crenshaw*, 509 F. Supp. 2d at 1237 (citing *Grech*, 335 F.3d at 1330).

Here, Plaintiff pleads a deprivation of his constitutional right to receive prompt and proper medical treatment occurred while he was a prisoner at the Pinellas County Jail and was therefore under the color of state law. Doc. 105 ¶¶ 139–43. Plaintiff's allegations are based on a policy or custom of the Sheriff's Jail, particularly a "slow walking medical care" theory that caused widespread abuse and made constitutional deprivations like the Plaintiff's substantially certain to occur. *Id.* ¶¶ 139–48. Plaintiff alleges that the Sheriff should be held liable for injuries caused by the Jail's failure to treat his fracture because the Sheriff was put on notice and condoned the Jail's long-standing custom and practice of delaying and denying care to prisoners. *Id.* ¶¶ 140–143. The Plaintiff further alleges that despite this notice, the Sheriff showed deliberate indifference and failed to correct the pattern of alleged constitutional deprivations. *Id.* ¶¶ 139–43. In support of the claim that the Jail's policy of failing to timely treat prisoners was widespread, the Plaintiff proffers multiple complaints and lawsuits asserted against the Sheriff by inmates, spanning many years, with many plaintiffs claiming that the Jail failed to provide adequate and prompt treatment for their serious medical needs, which resulted in further injuries. *Id.* ¶ 144. In support of the contention that the Sheriff was on notice, Plaintiff cites to statements publicly made by the Sheriff in May 2014 acknowledging the deficiencies in the Jail's health care system. Such statements were made less than seven months prior to Plaintiff's injury. *Id.*

In response, the Sheriff argues that the cited complaints are "a cornucopia of unrelated, irrelevant events" and that "[n]othing about them could have put the Sheriff on notice of a history

7

of widespread, prior unconstitutional acts by his medical personnel." Doc. 114 at 10. The Sheriff subsequently engages in a detailed discussion attacking the reliability and veracity of the complaints, contending many of the allegations stemmed from *pro se* lawsuits that were dismissed. *Id.* at 9. The Court finds that resolution of such factual disputes is improper on the instant motion. Plaintiff need only plead a short, plain statement supported by enough facts for a reasonable inference of plausibility. The Court must view the facts in the light most favorable to the Plaintiff, accepting the well-pleaded allegations as true. Because the Court finds that the Plaintiff has adequately pleaded a policy or custom of the Sheriff, the motion to dismiss Plaintiff's claims under § 1983 will be denied.

Additionally, the Sheriff moves to dismiss Count VIII, arguing that the constitutional protections against cruel and unusual punishment under the Eighth Amendment only apply to inmates who are convicted and not those who are merely pretrial detainees. Doc. 114 at 14–15. "It is well-settled that the 'deliberate indifference' to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eight Amendment." *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Here, Plaintiff pleads that he was deprived of this constitutional right because as a prisoner of the Sheriff's Jail during the relevant timeframe (first awaiting trial and later after sentencing), he suffered from a severely fractured and infected foot without proper medical treatment or pain relief. Doc. 105 ¶¶ 31, 141.

In response, the Sheriff contends that Eighth Amendment protections should not be afforded to Plaintiff because *Whitely v. Albers*, 475 U.S. 312, 327 (1986) and *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977), hold that "the prohibition against cruel and unusual punishment only applies after conviction." Doc. 114 at 14–15. The Fourth Amended Complaint specifically

alleges Plaintiff was ultimately sentenced while in custody. Doc. 105 ¶ 141. Although Plaintiff was transferred shortly thereafter, Plaintiff was nevertheless convicted and under the Sheriff's control and care, albeit for a short period of time, while incarcerated at the Jail. In a light favorable to Plaintiff and accepting the allegations as true, the Court will not rule out the applicability of the Eight Amendment under Plaintiff's § 1983 claim. Because the Court finds that the Plaintiff has adequately pleaded that he was a prisoner of the Jail, entitled to Eighth Amendment protections, the Sheriff's motion to dismiss Count VIII on this basis is due to be denied.[3]

Accordingly, it is hereby

**ORDERED**:

1.   The Motion of Bob Gualtieri to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 114) is **DENIED.**

2.   Defendant Bob Gualtieri shall file an answer to Plaintiff's Fourth Amended Complaint within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on November 23, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[3] The Court agrees that Defendant Gualtieri's treatment of a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). However, the standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner. *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985). Plaintiff contends that he has alleged both a Fourteenth and Eighth Amendment violation.