IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____
                                  )
WAHEED NELSON,                    )
                                  )
          Plaintiff,              )
                                  )
vs.                               )  Case No.:  8:19-CV-449
                                  )
BOB GUALTIERI, official           )
capacity as Sheriff of            )
Pinellas County, Florida,         )
FLORIDA DEPARTMENT OF             )
CORRECTIONS, CORIZON LLC,         )
                                  )
          Defendants.             )
_____  )

**ZOOM VIDEOCONFERENCE**
**MOTION PROCEEDINGS**
**BEFORE THE HONORABLE JULIE S. SNEED**

**October 29, 2020**
**2:02 p.m. to 3:09 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          JAMES V. COOK, ESQUIRE
**(Via Zoom)**                  Law Office of James V. Cook
                                314 West Jefferson Street
                                Tallahassee, Florida 32301


**FOR THE PLAINTIFF:**          LINDA BELLOMIO COMMONS, ESQUIRE
**(Via Zoom)**                  Linda Bellomio Commons, PA
                                5629 Glencrest Boulevard
                                Tampa, Florida 33625


**FOR THE DEFENDANT:**          JASON G. GORDILLO, ESQUIRE
**(GUALTIERI)**                 Pinellas County Sheriff's Office
**(Via Zoom)**                  10750 Ulmerton Road
                                Largo, Florida 33778


(Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.)

**REPORTED BY (VIA ZOOM):**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 317-8286 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

**APPEARANCES (CONTINUED):**

**FOR THE DEFENDANTS:**    GREGG A. TOOMEY, ESQUIRE
**(FDOC, CORIZON)**    The Toomey Law Firm, LLC
**(Via Zoom)**    1625 Hendry Street
    Suite 203
    Fort Myers, Florida 33901

**ALSO PRESENT:**    ANTHONY DEAN JOHNSON, ESQUIRE
**(Via Zoom)**    Office of the Attorney General
    The Capitol, Suite PL01
    Tallahassee, Florida 32399

1          THE COURT:  Hello and good afternoon to everyone.

2          We are here in the case of Nelson versus Gualtieri,

3     and it's 8:19-CV-449-T-36JSS.

4          Can I have the lawyers state your appearances for the

5     record, starting with counsel for plaintiffs.

6          MR. COOK:  James Cook for the plaintiff.

7          MS. COMMONS:  Linda Commons for the plaintiff.

8          MR. TOOMEY:  Good afternoon, Judge.  Gregg Toomey for

9     Department of Corrections.

10          I also have Anthony Dean Johnson from the AG's Office

11     just in case.  He's my handler on this case.

12          MR. GORDILLO:  Your Honor, Jason Gordillo on behalf

13     of Sheriff Bob Gualtieri.

14          THE COURT:  Good afternoon.  I believe that's

15     everyone.

16          Let -- I want to mention that we're here on a number

17     of motions.  They are all filed by plaintiffs, Document

18     Nos. 170, 189, 191, and then we went ahead and set Document 196

19     as well, although I understand that we may not have a written

20     response yet because it's a little early.  It's -- you still

21     have additional time to provide that response.  Oh, actually,

22     there is a response.  Never mind.

23          MR. GORDILLO:  Yes, Your Honor.  It's Document 198.

24          THE COURT:  Read that, yes.  I did review that.

25          MR. GORDILLO:  Thank you, Your Honor.

1          THE COURT:  All right.  So we have the four motions

2     set for hearing, and, again, all filed by plaintiffs.  And I

3     want to just give you-all some information.  You've heard all

4     of this information before.  But I do want to mention that

5     we're proceeding by videoconference because of the coronavirus

6     pandemic.

7          If at any point this videoconference line is

8     compromised, I'll discontinue it, and we'll resume it using a

9     different meeting ID.

10          I also want to remind everyone that recording or

11     broadcasting this hearing remains strictly prohibited, and also

12     I can see and hear everyone well at this time.  If at any time

13     you all are unable to see or hear well, just say so, and then

14     we'll address that issue right away.

15          We are joined here with our official court reporter,

16     who is making sure that we have an accurate record.  So if

17     everyone would speak up to be sure that she is able to hear

18     everyone.

19          Now, what I would like to do is hear from the

20     plaintiff first on each motion.  We'll take each motion

21     individually.  For example, we'll talk about Document 170 right

22     now, and then I want to hear from the respondent as to each

23     motion.  And then we'll go through each of the motions in

24     that -- each of the motions in that fashion.  And I do

25     understand that you-all have resolved some of these issues, and

UNITED STATES DISTRICT COURT

1    I commend you for that.  And that's great.

2            All right.  Let's hear from the movant as to Document

3    No. 170.

4            MR. COOK:  Thank you, Your Honor.

5            We have substantially resolved these issues, and I'd

6    like to just go through and, for the record, state what we have

7    resolved.  We have resolved interrogatory two.  We have

8    resolved interrogatory three, actually, just with a 30(b)(6)

9    deposition that we have done over the last couple days.  We

10   have resolved request for production two, also five.

11   Interrogatory five, we have resolved.  We have resolved request

12   for production two.  I think that request for production three

13   is substantially resolved.  Seven is resolved.  Request for

14   production ten is resolved.  Eleven and 13 are resolved.  And

15   that is everything except for interrogatory four.

16           Interrogatory four was a request by us for Defendant

17   Department of Corrections to comprehensively describe the

18   reasons for the prolonged delay in treating plaintiff for his

19   fractured ankle from April 16, 2015 to July 28, 2016, including

20   any communications between FDOC officials and medical

21   providers, how such communications were documented, and where

22   the documentation is maintained, and the identity of the

23   custodian.  The response was, there was no delay.  The process

24   of treatment was handled by the contract medical provider.

25           We believe that that is an insufficient answer,

UNITED STATES DISTRICT COURT

1    because it does not explain the delay.  It merely states that

2    the Department of Corrections handed the issue off to its

3    contract medical provider.

4          And I would just cite the case of Vicksburg Meridian

5    Railroad v. O'Brien, 119 U.S. 99, which says that the acts of

6    the agent within the scope of authority delegated to it are

7    deemed the acts of the principal, and that the department still

8    owed us an explanation for the delay, even if the delay was at

9    the hands of its agent.

10          And that, I believe, may be the only interrogatory.

11    And I think we've now resolved all the requests for production.

12          I would add this into the record, that I understand

13    that we are going to be getting something like 3,700 e-mails.

14    And we're assuming that that is going to satisfy our requests

15    for communications.  Our Rule 30(b)(6) depositions over the

16    last couple of days indicate that e-mail is the primary means

17    of communication with the 3,700 e-mails, approximately.

18          We anticipate there are going to be some claims of

19    privilege, which means that we would also expect to receive a

20    privilege log, which was our final request for production,

21    request for production 13.

22          Mr. Toomey can tell me if I'm mistaken, but I believe

23    that that resolves all -- those would resolve all issues.

24          THE COURT:  Has request for production four, has the

25    dispute been resolved as to that request as well?

1        MR. COOK:  Yes, with the e-mails.

2        THE COURT:  All right.  Mr. Toomey?

3        MR. TOOMEY:  Okay.  As to the interrogatory, it is

4  predicated on there being prolonged delay.  Give the reasons

5  for the prolonged delay.  There was no delay.  I can't explain

6  or give any information explaining something that, it's our

7  position, did not occur.

8        The second half is that the process of treatment was

9  undertaken by the contract provider, Corizon, which I also

10  represent.  It's well-known that they provided all the medical

11  care.  In response, I don't know what else I could say about

12  this responding to this interrogatory.  It's predicated on

13  there being a prolonged delay.  That's the plaintiff's

14  position.  It's not ours.  If there was no delay, then there's

15  nothing more to answer.

16        THE COURT:  And as to the e-mails, you believe that

17  issue has all been resolved?

18        MR. TOOMEY:  Well, I hope so.  I haven't seen them.

19  They were delivered to my office through Mr. Johnson this

20  morning.  But I understand that they are corrupted, or they

21  can't be opened.  So I'm going to hike on over to DOC security

22  as soon as we're finished and pick up five DVDs.

23        Now, I don't know -- there were two e-mail searches.

24  I don't know if these are both, if it's one.  I'm suspicious

25  that there's 3,700 e-mails, and having done these e-mail

1    searches before, I know I got to sit down and read them.  Until

2    I do, I don't know that it solves everything, but I think we

3    can get me to read them as fast as possible and figure it out.

4              THE COURT:  And you agree to provide a privilege log

5    if there are any materials that are privileged and being --

6              MR. TOOMEY:  Oh, sure.

7              THE COURT:  -- withheld on that basis?

8              MR. TOOMEY:  Sure.  Anything I remove from that file,

9    I will describe.

10             THE COURT:  All right.  I -- as phrased, I agree with

11   the defense, that they've adequately responded to the request

12   as phrased, as to the interrogatory.  So I am going to sustain

13   that objection.

14             It appears that the motion to compel in Document 189

15   has been completely resolved.  Is that accurate from the

16   plaintiff's side?

17             MR. COOK:  That's correct, Your Honor.

18             MR. TOOMEY:  Yes, ma'am.

19             THE COURT:  All right.  And then as to 191, let me

20   hear from the plaintiffs.

21             MR. COOK:  Okay.  We have resolved interrogatory

22   three, four, five, and six -- five and six through the Rule

23   30(b)(6) depositions -- seven, ten, 11, and 15.  We have

24   resolved now with the interrogatories -- I mean, with the

25   e-mails and the promise of a privilege log, which we would deem

1  as being a privilege log sufficient to allow us to challenge

2  any privilege that the request for production would all be

3  resolved.

4          I don't think that it would be useful to waste the

5  Court's time, if it turns out that the e-mails are turned over

6  and appropriate and a privilege log is complete, and so

7  therefore, I believe that we can lay the matter at rest from

8  everything I know now.

9          As to the -- as to the interrogatories, 12 and 13 are

10  not resolved, and it says -- the request was, "Please describe

11  in detail the consideration that went into the decision to

12  amputate plaintiff's leg rather than to surgically debride and

13  reconstruct the fractures, and how that decision was

14  documented, and any related communications, including e-mail,

15  where the documents and communications may be found at

16  present."

17          Corizon's answer was, "The decision was made by

18  nonCorizon specialty physicians, presumably using their own

19  medical judgment."

20          That answer is the only question we didn't ask.  It

21  does not answer the question about what consideration went into

22  the decision to amputate the leg rather than to surgically

23  debride it and reconstruct the fractures, and how that decision

24  was documented, and any related communications, including

25  e-mail and where the documents may be found.

UNITED STATES DISTRICT COURT

1      The -- again, the department's contractor, Corizon,

2  was not a free agent.  It was -- the Corizon was their agent,

3  and Mr. Nelson was their patient, and it would be a grave

4  confession if they had no idea about why the decision was made

5  to amputate their patient, their -- the person that they were

6  committed to care for.  This is information that should be in

7  their -- within their knowledge.  And so we feel that that is

8  an inadequate answer.

9      The response -- I believe it's a matter of the rules

10 or the commentary to the rules, the response must fairly meet

11 the request, and this does not do so.  The rule itself says

12 that each interrogatory must be answered separately and fully

13 in writing under oath.  The interrogatories -- interrogatory

14 was not answered fully, and so a better answer is appropriate.

15     Number 13, we asked, "Please describe in detail how

16 Corizon -- should be contends that the incident referenced in

17 the complaint happened, including all efforts made by Corizon

18 to minimize the harm."

19     The Corizon answer is that he was immediately

20 referred to an orthopedic doctor who referred him to a surgeon

21 who in turn found the amputation necessary.

22     Again, and I think this really goes back to the first

23 interrogatory that we complained of in the Department of

24 Corrections side, that it does not explain why the orthopedic

25 doctor who took the referral took three months to -- to have

UNITED STATES DISTRICT COURT

1    surgery done, and at which point the surgery required,

2    according to the surgeon, an amputation.

3            So the three-month delay is there.  It's the delay of

4    the department, and it's also the delay of Corizon.  And

5    essentially what they're doing is just pointing the fingers at

6    each other, but Corizon is their agent, and it -- and the

7    department has a nondelegable duty -- they both have a duty to

8    treat the defendant -- I mean, the plaintiff.

9            The plaintiff was not timely treated.  After having

10   gone through a three-and-a-half-month delay in treatment in the

11   county jail, he -- he had another three-and-almost-a-half-month

12   delay in the Department of Corrections with the result that by

13   now it is badly deteriorated.  The leg had to be cut off

14   according to the final surgeon.

15           So those are the only two issues that we still have.

16           THE COURT:  Mr. Toomey?

17           MR. TOOMEY:  Thank you, Judge.  I know you read the

18   paperwork.  You read my response.  The -- the -- Mr. Nelson

19   came into the prison.  He needed specialty care.  It was

20   ordered.

21           The specialists do not work for Corizon.  They do

22   visit the prison.  He's at RMC, which is a hospital.  They came

23   in.  They take over the case.  They make the decisions as to

24   whether or not the leg is going to be amputated.

25           When I go to see my primary care physician, and he

                    UNITED STATES DISTRICT COURT

1   sends me to a gastroenterologist for some specific belly

2   problem, the gastroenterologist makes the decisions, not my

3   primary care physician.  So that's why we answered it this way.

4          He was sent off for specialty care, and it's not

5   mystery that specialists make the decisions regarding that

6   specialty.  That's what happened here.  I don't know why we're

7   discussing agency law.  It's got nothing to do with this

8   interrogatory.  It's simply -- it asked me a question.

9          Oh, and by the way, all these records are had.  This

10  is no mysterious things after a couple of years.  The

11  specialists' records are had by the plaintiff.  The Memorial

12  Jacksonville Hospital records are had by the plaintiff.  The

13  decisions that those physicians made are in those records.

14  They're not -- they weren't made by my client.

15         As for 13, I don't know how much better I could have

16  answered it.  "Please describe in detail how Corizon contends

17  the incident happened."

18         Well, he came into the prison.  He had a preexisting

19  foot condition.  X-rays were done at the time of his arrival.

20  He was immediately referred to an orthopedist who took over the

21  case.  I don't know that there's anything more to say as to how

22  this happened.  I mean, I could, I suppose, write a 40- or

23  50-page, motion-like thing, but it wouldn't answer the question

24  any better.  That's all.

25         THE COURT:  The specialist that you mentioned, the

1    records of the specialist, those have already been produced?

2            MR. TOOMEY:  Yes, ma'am.  They were produced by them,

3    because they're not involved in the case.

4            THE COURT:  So I'm just wondering were those people

5    eligible to be deposed?

6            MR. TOOMEY:  Definitely.

7            THE COURT:  Were they deposed?

8            MR. TOOMEY:  No.

9            THE COURT:  Okay.  But these individuals are not

10   employed by your client?

11           MR. TOOMEY:  Neither Corizon nor FDOC.

12           THE COURT:  All right.  Because of that, and because

13   you already do have these records, and certainly could have

14   deposed these individuals to figure out why, in their minds,

15   they decided to amputate rather than take alternative action, I

16   am going to sustain the objection and find that those responses

17   are sufficient.  Now --

18           MR. TOOMEY:  I believe that resolves everything for

19   my client.

20           THE COURT:  All right.  Very well.

21           MR. TOOMEY:  If so, I'd like to be excused.

22           THE COURT:  Why?  No, it's fine.

23           MR. TOOMEY:  Judge, I want to go home.

24           THE COURT:  It's fine.

25           MR. TOOMEY:  I'm stuck in Tallahassee.

                    UNITED STATES DISTRICT COURT

14

1           THE COURT:  We'll see you next time.

2           MR. TOOMEY:  Thank you, Judge.

3           THE COURT:  All right.  Very well.

4           Now, we're on to Document No. 196.

5           MR. COOK:  Yes, Your Honor.  196 is a request to

6     receive records that are not massively redacted.  We made a

7     request for personnel records of public employees, which are

8     presumptively public records, even though courts tend to be

9     deferential to personnel records overall.

10          Under Florida law, under the Florida Constitution,

11    and as has repeatedly been held by the Florida Supreme Court,

12    personnel records of public employees are presumptively public

13    records, and these public records had numerous questions that

14    related to the individual's fitness for their job, including

15    questions about crimes of dishonesty, various kinds of

16    misconduct, fraudulent claims, drugs, gambling, alcohol-related

17    crimes, illegal gratuities, tampering with evidence, just about

18    150 pages were either substantially or completely redacted.

19          And I provided the Court with thumbnails of the total

20    redactions and a sample of the kind of redactions, so the Court

21    could see the kind of information that was redacted, namely

22    responses and explanations for those background questions.

23          The sheriff has stated that personnel records are

24    confidential, although these are public records, and

25    presumptively not confidential, and that we had an opportunity

UNITED STATES DISTRICT COURT

1    to depose the persons who -- whose public -- whose personnel

2    records they were.

3            Our opportunity to depose them, which we did take,

4    occurred in August, and these documents were provided to us.

5    They were mailed out by U.S. mail on October 9th, and they

6    actually got into my hands on October 14.

7            And so this motion was the first opportunity I had to

8    try to get unredacted records of these very, very relevant

9    questions relevant to false statement and credibility in

10   general, opportunity to observe all of those things.

11           And -- and so I think that the case law lines up

12   pretty clearly that these records should have been produced to

13   us without these kinds of redactions.  Of course, we don't

14   object to redactions of Social Security numbers and birth dates

15   and home addresses and things like that.  But those kinds of

16   things that are fund -- both admissible and also fundamentally

17   relevant to claims, defenses, and credibility, including

18   fitness for employment, both for the individual -- individuals

19   involved and also for the sheriff who hired them, we believe

20   that these documents need to be made available to us without

21   those kinds of redactions.

22           THE COURT:  All right.  I am interested in knowing

23   more about each of these individual people, and specifically

24   what relevance they have to your claims.

25           MR. COOK:  Okay.

```
 1              THE COURT:  Okay.  And they're listed on Page 1.

 2              MR. COOK:  Uh-huh.  Correct.  Yes.  ARNP Newby and

 3   Nurses Liberti and Bumiller were caregivers.  Dr. Yukna,

 4   Rangel, and Kyle were also --

 5              THE COURT:  I'm sorry.  When you say they're

 6   caregivers, can you be more specific?

 7              MR. COOK:  They are people who treated plaintiff or

 8   failed to treat him as the case may be.

 9              THE COURT:  Do you have any information about, for

10   example, the dates that they provided any care, and what

11   specifically they may have allegedly done or failed to do to

12   affect your client?

13              MR. COOK:  Well, first of all, they're on the witness

14   list for the -- for the defendants, and so we do anticipate

15   they're going to be testifying about the facts of this case.

16   But if I could, perhaps I could defer to Ms. Commons who did

17   the depositions of these persons and can give, I think, a

18   fuller account of how they fit into the case.

19              THE COURT:  Sure.

20              MS. COMMONS:  Thank you, Your Honor.

21              These were the providers that were the nurse

22   practitioners and physicians that were sent notices of intent

23   in the malpractice case.  And they're in the complaint as the

24   employees.  They're all employees of the sheriff.  So we didn't

25   name them individually, because the sheriff was responsible for
```

1    them, but we presuited every single one.  Each one received a

2    presuit.

3             And that's why they were selected for the

4    depositions, because they -- they managed all the sick call for

5    our client, who can't -- went to them pretty much daily for

6    wound care, medication changes, and pain -- such as pain

7    medicine.

8             And when the fracture occurred, pretty much every

9    other day complaining about the pain in his ankle and the

10   swelling that was occurring.  The medical records show that he

11   did not get a orthopedic boot he was required to have.  And so

12   therefore, that's why we ask for the personnel files.

13            And if you remember at the last hearing, Mr. Gordillo

14   had said that he knew that we had pending discovery on the

15   personnel files.

16            The redactions are around relevant issues.  I saw in

17   one that there was a complaint about child abuse.  And I just

18   think it's relevant, because we named them, and they were in

19   charge of getting -- expediting care and the failure to do so

20   from January until April 2015.  Those were the main people that

21   were seeing Mr. Nelson and making the decisions.  Dr. Kyle was

22   the medical director, and he's the one who overrode four

23   requests for consults to an orthopedic surgeon, if that helps

24   you with some background.

25            THE COURT:  Do you have any additional information

1    about Dr. Yukna, Dr. Rangel, and Toni Ward?

2         MS. COMMONS:  Yes, Dr. Yukna was given a notice of

3    intent and so was Dr. Rangel.  And both of them had ordered the

4    orthopedic consults, and the boot, orthopedic boot.  Both

5    testified that they were not done.

6         Dr. Yukna has left the employment of the sheriff, and

7    he testified that he did have some personal -- personality or

8    some arguments with Dr. Kyle, who overrode his requests for an

9    orthopedic consult to be immediately done.

10        So I took all of their depositions, because those

11   were the people that I sent notices of intent to, malpractice

12   case.

13        THE COURT:  And Ms. Ward?

14        MS. COMMONS:  Ms. Ward, we were told in deposition

15   that once the consult was entered, it went to her, and that it

16   was up to her to call the consulting physicians and make

17   appointments, and her notes indicate that Dr. Kyle canceled the

18   appointment.  I had originally requested her deposition.  We

19   changed it to a (b)(6) -- 30(b)(6) deposition.  We thought that

20   they would produce her, but they did not.

21        But from all the testimony that we have, she's the

22   person that works closely with Dr. Kyle, and she cannot make an

23   appointment without Dr. Kyle's approval, and she takes -- no

24   notes that have been produced to me for documentation of her

25   conversations with the consulting physicians for different

UNITED STATES DISTRICT COURT

1   appointment dates given.

2          Dr. Kyle's made a comment about dialysis and

3   interfering with the number of days they had to make

4   appointments, which by him canceling this caused -- also

5   contributed to the delay in care.  I do have testimony that the

6   delay in care, which they tried to say was not delay by having

7   testing done, two of the providers admitted that testing is not

8   care, is not treatment of the fracture.

9          THE COURT:  You mentioned some of the information you

10  were able to see that was redacted, were all of the portions of

11  the redacted records related to the preemployment screening

12  questions?

13          MS. COMMONS:  Some of -- yes, some of them were.

14          THE COURT:  Not all of them, but some of them?

15          MS. COMMONS:  From what I remember -- and I can't --

16  I can't remember every question if it was pre or post.  I know

17  there were some post-exit interviews with Ms. Liberti, Nurse

18  Practitioner Liberti, who complained that she was being

19  harassed by Dr. Kyle and picked on, and that she felt isolated

20  and teamed up against.  And both her and Nurse Practitioner

21  Newby, who I also put on notice, left in 2017 because of that

22  situation.

23          And Dr. Yukna testified that Dr. Kyle was a difficult

24  to get along with.

25          THE COURT:  And were you able to read any more of the

1    redacted information beyond the reference to child abuse that

2    you mentioned earlier?

3              MS. COMMONS:  No.  It's all black.  You can see from

4    the records, samples that we filed, that the black pages, you

5    can't see a thing.  I think the other -- what I did see was on

6    the bottom of something.  I can find it, if you need it.  I

7    don't remember which document it was.

8              MR. GORDILLO:  And, Your Honor, just so I can be

9    clear to respond, this child abuse allegation, is there a page?

10   Is there a person that they're talking about?  Because I

11   don't -- I don't recall ever see anything about child abuse in

12   any of their records.  The only child abuse I remember in this

13   case is the plaintiff's convictions for two counts of child

14   abuse, but nothing in these personnel records for these

15   employees.

16             THE COURT:  Let me just ask Ms. Commons if you have

17   any specific reference to that, and then I'll -- in just a

18   moment, we'll give Mr. Gordillo a full opportunity to respond.

19             MS. COMMONS:  If you give me a minute, I could find

20   it.  Unless, Mr. Cook, do you know where it is exactly?

21             MR. COOK:  It is in the -- yeah, okay.  It is in the

22   several pages, and they're pretty much the same for each of the

23   employees of questions relating to criminal activity, fraud,

24   substance abuse, and so forth, and I think it was a question

25   about child sexual abuse, but it's simply a question.  It's

                           UNITED STATES DISTRICT COURT

1    not -- there's nothing indicating what the answer was.

2              THE COURT:  Let me ask, as it relates to the

3    preemployment screening questions for each of the different

4    witnesses, why are those questions relevant proportional to the

5    needs of the case and information that you could not have

6    otherwise obtained through either questioning the witnesses or

7    some sort of independent background examination?

8              MR. COOK:  Well, because --

9              THE COURT:  And now we do need to figure out who's

10   going to be responding.  Okay.  So are you going to be handling

11   this motion now, Mr. Cook?

12             MR. COOK:  Yes.  I just wanted Ms. Commons to speak

13   to those individuals that she deposed.

14             THE COURT:  All right.

15             MR. COOK:  Yes.  The persons whose -- who had those

16   questions asked of them are going to be testifying.  Of course,

17   the Federal Rule 608(b) -- Federal Rule of Evidence 608(b)

18   allows us to bring before the jury a specific instance of

19   untruthfulness.  And many of the questions have to do with

20   fraud and false statement and other acts of -- criminal acts of

21   dishonesty.

22             And also as to the fitness for employment, the -- one

23   of the issues in proportionality is whether it's burdensome.

24   Of course, it was much more of a burden for them to redact

25   those responses than it would have been simply to provide --

1    produce them.  They could have been produced subject to a

2    protective order.

3          Of course, that's not the sort of thing that we are

4    interested in putting out in the public domain, but I think I

5    addressed the -- the issues relating to proportionality, the

6    stakes in the case or the loss of a limb, which is a lifetime

7    event.

8          The amount in controversy is great.  It's in the

9    unique possession of the defendants.  It speaks to the

10   potential credibility of seven persons who are central to the

11   case.  Six of them are listed on the sheriff's initial

12   disclosures as witnesses.  And the credibility and interest and

13   bias is always a relevant issue.

14         And so we think that proportionality has been met.

15   There is no burden.  The burden was to the contrary, that --

16   the burden was the time that it took to redact those things.

17   So we think it passes the proportionality test.

18         THE COURT:  Do you-all have a confidentiality

19   agreement in the case?

20         MR. COOK:  We did submit a HIPAA-qualified protective

21   order.  I don't know that we have a standard protective order,

22   but I have one that I could easily put together, if that made a

23   difference to the sheriff's counsel.  I have one that has been

24   signed by many, many federal judges in Florida.

25         THE COURT:  I was wondering if in the conduct of

                    UNITED STATES DISTRICT COURT

 1   discovery in the case if that's something that you-all had

 2   already discussed and agreed upon, but it doesn't sound like

 3   you've needed to enter into one at this point.

 4         MR. COOK:  Well, I think that this is the only thing

 5   that we've really had a big problem with.  Redaction hasn't

 6   generally been a problem until this set of documents.

 7         THE COURT:  All right.  Let me hear from

 8   Mr. Gordillo.

 9         MR. GORDILLO:  Yes, Your Honor.  Thank you.

10         A lot to unpack.  So let me start with the fact that

11   these are nonparty witnessers, the fact that these -- six of

12   the seven got notice-of-intent letters well outside the statute

13   of limitations time.  Makes no difference, because they weren't

14   brought in as parties.  They weren't served.  They aren't named

15   in the complaint as parties or any of the four complaints in

16   this matter.

17         So these are nonparty witnesses.  The seven and --

18   six of them, the three nurses, three doctors, they all have

19   been deposed.  These questions could have been asked back in

20   August.

21         As far as timeliness of this motion, these documents

22   weren't requested until the very end of discovery, which was

23   produced on October 9th, which was the last day of discovery,

24   and we provided them within discovery deadline.  And the

25   Court's case management scheduling order states that motions to

                    UNITED STATES DISTRICT COURT

1  compel that are filed outside can be dismissed as untimely.

2  And this was obviously well beyond the discovery deadline.  I

3  believe it was filed on October 21st, and discovery deadline

4  was October 9th.

5          The seventh witness, Toni Ward, was never sent a

6  notice of intent.  She was -- we did provide dates for her to

7  be deposed, and they chose instead to do 30(b)(6) depositions.

8  That was their choice, not ours.  But those were questions they

9  could have asked of Ms. Ward at her deposition.

10          Getting to personnel files, we cited some case law in

11  our motion.  I have additional case law if Your Honor would

12  like me to present those as well.

13          But I think the law is pretty clear that personnel

14  files, there's a strong public policy against discovery of

15  personnel files.  We could have chosen to probably go down that

16  road and not provide them at all and object to it based on what

17  the case law provides.  You know, also, they're entitled to

18  heightened protection.  When you're dealing with relevance and

19  personnel files, there's a heightened standard of relevance,

20  and this all comes out of case law within the Eleventh Circuit.

21          But, instead, we chose to provide the documents that

22  were requested, but we had to redact out things that Florida

23  law, and some of them, federal law, require that are

24  confidential.  So those things were redacted.

25          What I would --

                    UNITED STATES DISTRICT COURT

1          THE COURT:  Let me ask you --

2          MR. GORDILLO:  I'm sorry?

3          THE COURT:  -- what things were those?  The law

4   requires redaction concerning certain matters.  Which matters

5   were those that you redacted?

6          MR. GORDILLO:  Your Honor, things such as government

7   employee information.  I think they said they didn't even want

8   anyways home addresses, phone numbers, dates of birth, Social

9   Security numbers, bank numbers, things of that nature, not only

10  for the employee, but also for their spouses, for their

11  children as well.  There's also things such as birth records,

12  educational records, DHSMV records, criminal history

13  backgrounds, both federal and state.  Those are held as

14  confidential.

15         And it seems that the only thing they're most

16  interested in, they attached as 196-4, which is the

17  administrative questionnaire of an applicant.  So it's a

18  preapplicant questionnaire.

19         If you go to Florida Statute 119.071, it is the first

20  thing that's held confidential within public records in this

21  statute.  Subsection 1, Agency Administration, A, exam

22  questions and answer sheets of examinations administered by a

23  government agency for the purpose of licensure, certification,

24  or employment are exempt from 119.07, Subsection 1 and from the

25  Florida Constitution, Section 24, Article I.

                    UNITED STATES DISTRICT COURT

1          So this is what -- 196-4 is what they chose to show

2     the Court is what they're mostly interested in.  And that is

3     held confidential under Florida law.

4          Going to their other argument of why it's so relevant

5     and --

6          THE COURT:  Can I ask you, so you believe that

7     119.071 relates to preemployment screening questionnaires as

8     opposed to sort of a test that someone might take for licensure

9     or certification --

10          MR. GORDILLO:  Yes, Your Honor.

11          THE COURT:  -- for employment?

12          MR. GORDILLO:  Yes, Your Honor.

13          THE COURT:  All right.

14          MR. GORDILLO:  It absolutely does.  And there's case

15     law cited in our motion that talks about this exemption is

16     without limitation, makes no distinction in its application as

17     to the subject matter being tested, nor does it depend on what

18     type of examination being administered.

19          The other problem with this, Your Honor, is under --

20     they're also trying to go under Rule 608(b).  The case law is

21     very clear in that and the statute and the rule of evidence

22     itself that prohibits extrinsic -- extrinsic evidence.

23          What the case law provides is, if they want to try to

24     show that the person may have some untruthfulness issues, the

25     way it's done -- and I can point Your Honor to

UNITED STATES DISTRICT COURT

1    U.S. v. Matthews, Eleventh Circuit case from 1999.  It's

2    168 F.3d 1234 is the cite.  What that case stands for is, if

3    someone wants to question someone's untruthfulness at trial,

4    they're bound by the witnesses answers.

5         They cannot go and use extrinsic evidence.  You ask

6    the question, you get the answer of whether they have instances

7    of forgery, perjury, fraud.  That's all that's allowed to come

8    out under 608(b).

9         So anything in these questions relating to theft,

10   robbery, shoplifting, drugs, anything like that don't fall

11   under what 608(b) under untruthfulness is getting at.  So what

12   they're trying to do is they're trying to undo confidential

13   protections under Florida law in an improper way under 608(b)

14   that's just not allowed.

15        And, again, this is something that we probably could

16   have withheld, objected to the request altogether.  But being

17   that we're at the end of discovery, we tried to produce the

18   personnel file, but we redacted out what's held as confidential

19   under the law.  And they're now trying to utilize what's shown

20   as a sample in 196-4 as a way to improperly try to impeach

21   people at trial.

22        And, again, these are nonparty witnesses, and the

23   case law is that personnel files, for this reason alone, are

24   held as confidential and should be protected by the courts.

25             THE COURT:  Do you plan to call any of these

                    UNITED STATES DISTRICT COURT

1    individuals as witnesses in the trial of the case?

2             MR. GORDILLO:  If it goes to trial, I'd imagine, Your

3    Honor, but we don't suspect this matter going to trial once the

4    summary judgments are filed.

5             THE COURT:  And all of these individuals were listed

6    in your initial disclosures?

7             MR. GORDILLO:  I believe the nurses and doctors were.

8    I'm not sure about Toni Ward.  I would have to double-check the

9    Rule 26.  I'm not sure.  She may have been, but I don't know as

10   I sit here right now.

11            THE COURT:  And if they were listed in your initial

12   disclosures, what you're saying, then, is that all of those

13   individuals have relevant information about the case?

14            MR. GORDILLO:  They were treating providers, Your

15   Honor.  However, what -- the information that they're trying to

16   elicit out of these redactions is just completely improper,

17   both under Florida law and under the Federal Rules of Evidence.

18            THE COURT:  I am just not persuaded that 119.07

19   applies to the prescreening questions, preemployment

20   questionnaire.  The language, and even the case that you cited,

21   it talks about a test and an examination.

22            This just does not seem like the same sort of

23   information, but I think the -- what I can hear more about,

24   however, is whether or not this redacted information is

25   relevant, and it must be clearly relevant --

                     UNITED STATES DISTRICT COURT

1          MR. GORDILLO:  Correct, Your Honor.

2          THE COURT:  -- to the matters at issue in the case.

3          MR. GORDILLO:  And, Your Honor, I would point out

4    that in the plaintiff's motion on Page 7, they basically state

5    the critique is the manner in which the sheriff's medical staff

6    did their jobs.

7          None of that information has anything -- has any

8    relevance to what their critique against these people are.

9    There's no count against the sheriff's office for any kind of

10   negligent hiring or retention or anything of that nature.

11         So, again, to get at preemployment screening, dealing

12   with stuff that under 608(b) is frankly not allowed, it just is

13   completely irrelevant to this.  It's a fishing expedition, and

14   it's just oppressive and embarrassing for these people to have

15   that type of information out there.

16         THE COURT:  All right.  And so beyond the

17   preemployment questionnaire, what other information, if you

18   know, was redacted?  And why isn't it relevant?

19         MR. GORDILLO:  Your Honor, it's mostly -- it's mostly

20   what I said before.  It's emergency contact information,

21   criminal background information, birth records, DHSMV records,

22   educational records.  Again, there's statute for all of these

23   that make them all confidential under Florida law, that they're

24   not subject to the public records.  I don't see how any of this

25   stuff is relevant when the critique is how they did their jobs

1   on a certain day or over a period of three months, what it

2   matters, you know, any of this information.

3           THE COURT:  Let me just ask -- I'm sorry.

4           MR. GORDILLO:  It's irrelevant.  I'm sorry.  It's

5   just not relevant, and it's going to lead to improper

6   impeachment anyways.

7           THE COURT:  Mr. Cook?

8           MR. COOK:  Yes, Your Honor.  All those things that

9   are not relevant to false statement and specific instances of

10  untruthfulness are relevant to fitness for employment or

11  reflecting on the sheriff's decision to employ them.  It -- so

12  it's relevant either as to the sheriff and his policies and

13  practices or it's relevant to the individuals.  Obviously,

14  substance abuse, drug abuse, alcohol abuse, all of those things

15  are relevant to fitness for the job, and had -- depending on,

16  of course, what's under the redactions, the sheriff's decision

17  to employ them.

18          And so we think that it's relevant issues that are

19  admissible, depending on what the material shows.  Of course,

20  the pages that are redacted in toto, we simply don't know.

21          Of course, it would be for -- possibly appropriate

22  for the Court to review these records in camera, but I think

23  that redacted as they are so completely, there are just

24  numerous things that they could be relevant to, depending on

25  what they show.

                    UNITED STATES DISTRICT COURT

1          MR. GORDILLO:  Your Honor, if I can respond to that

2     very briefly?

3          THE COURT:  I am comfortable that I have -- I've

4     heard all the information that's needed.  Let me -- and you can

5     respond further, if needed, Mr. Gordillo.

6          MR. GORDILLO:  Thank you.

7          THE COURT:  I -- as to the timeliness, let me just

8     mention, the motion was filed, I believe -- I believe the

9     argument was that it was filed after the discovery period, but

10    I don't find that it was untimely, only because there wasn't an

11    earlier opportunity to raise these issues.  It appears that the

12    documents were not produced until sometime after the discovery

13    period closed.  And so this seemed to be the earliest

14    opportunity that -- just a moment, Mr. Gordillo -- that the

15    plaintiffs had an opportunity to raise it.

16         At the same time, it does not appear that the

17    preapplicant questionnaire information is relevant and

18    proportional to the needs of the case.

19         The -- reviewing the Fourth Amendment -- Fourth

20    Amended complaint, it does appear to me that the claims that

21    are raised in the case relate to medical negligence against the

22    defendants as opposed to negligent hiring or retention.  And

23    the preapplicant questionnaire would, I think, only be relevant

24    to those issues.

25         And to the extent it was -- any of those questions

UNITED STATES DISTRICT COURT

1   would have been relevant to bias or any of the issues related

2   to fraud, et cetera, those questions could have been asked as

3   preliminary questions as part of a deposition, in which there

4   was a full opportunity to depose all of these people, and then

5   some of those people were in fact deposed.

6          But, other than the preapplicant questionnaire, the

7   questions -- or the matters that were redacted that are

8   anything outside of their Social Security number, protected

9   health information, benefits information, information related

10  to their traditionally protected information, anything outside

11  of that, there just has been no persuasive reason to have

12  redacted that information.

13         So if there is redacted information outside of the

14  preapplicant questionnaire that does not relate to privileged,

15  private, personnel-type information, that needs to be

16  unredacted.

17         Now, does anyone have any questions?

18         Mr. Gordillo?

19         MR. GORDILLO:  No, Your Honor.  Honestly, other than

20  the preemployment application stuff, those answers that were

21  redacted out, I think everything else falls under the

22  information you just stated, private and confidential protected

23  information.  From looking at the records, I don't think

24  there's anything that's not within that list that I provided to

25  you earlier.

1          If plaintiff's attorney believes there's something

2    outside of that, I would ask that they, you know, maybe outside

3    of the hearing today present to me, and we can discuss it

4    further, but I don't think there's anything outside of what's

5    on that list that's not the preemployment applications or

6    questionnaires.

7          THE COURT:  Mr. Cook?

8          MR. COOK:  We can't require unredacted answers for

9    questions relating to truthfulness?

10          THE COURT:  I think as a general category of

11    truthfulness, again, that's something that you certainly could

12    have asked about when you took the depositions.  You could have

13    asked them if they were convicted of any crimes involving

14    dishonesty, fraud, et cetera.  Those are questions you

15    certainly could have asked about.  You had an opportunity to

16    talk with those witnesses, and that would have been a

17    traditional type of introductory question that you would ask

18    any witness.

19          MR. COOK:  But, Your Honor, if they denied it, if

20    they denied it, what would we be left with, if we still can't

21    look under the redactions?

22          THE COURT:  I'm not sure why you can't perform a

23    background check, if that's what you think is needed.  But

24    there's no relevance to the discovery or to the complaint in

25    the case itself.  It's not related to any claim at issue.

                    UNITED STATES DISTRICT COURT

1          And it's really -- it sounds to me that it's

2    speculative about whether or not in fact the information in the

3    preemployment questionnaire actually reflected on any bias,

4    because as you mentioned, you can't read it either.

5          All right.  Now, you did depose everyone.  I -- the

6    discovery is closed.  I don't know if -- if there is any reason

7    for you to conduct any additional questioning of any of these

8    witnesses.

9          Did you not ask the witnesses about these questions,

10   Mr. Cook, Ms. Commons?

11         MS. COMMONS:  I did not ask them about any crimes,

12   Your Honor, mainly because they're licensed nurse practitioners

13   and physicians.  So I did not, no, I did not.

14         THE COURT:  Are you able -- able to obtain a

15   background check for any of the people?

16         MS. COMMONS:  I did not obtain a background check,

17   but I can.  I mean, I can certainly do that.  But what's also

18   on the redacted -- which is redacted in these records are job

19   descriptions and, you know --

20         MR. GORDILLO:  Your Honor, those job descriptions

21   have been provided within discovery.

22         THE COURT:  Again, what should be unredacted is

23   everything outside of the preapplicant questionnaire

24   information that doesn't include any Social Security number,

25   medical information.  I wish I had a -- could provide a more

35

```
 1    complete list to you.  Let me look at your motions here.

 2              MR. GORDILLO:  Yeah.  My motion doesn't give the

 3    exhaustive list.  I -- because they only really put the

 4    preapplication questionnaire as an exhibit, nothing else, so

 5    that's what I focused on in my response.

 6              THE COURT:  And I will include that information more

 7    specifically in the order that I provide on this -- on this

 8    point, on this motion.  But if there is any information outside

 9    of the preapplicant questionnaire unrelated to the confidential

10    other information that we discussed, that should be unredacted.

11              So you-all take a look at that.  If there are any

12    redactions, any documents that should be unredacted,

13    Mr. Gordillo should provide those.

14              MR. GORDILLO:  Your Honor, I would ask if there are

15    specific pages they want to reference, if they reach out to me,

16    as opposed to me having to go through 600 pages of documents to

17    try to figure out what they want and what's what.  Summary

18    judgment is due next Friday.  I'm working on that.  So if

19    there's certain pages they want me to look at, I'll be more

20    than happy to.

21              THE COURT:  And I do recall that Ms. Commons

22    mentioned some dispute and disagreement between Ms. Newby,

23    Liberti, and Dr. Kyle.  That --

24              MR. GORDILLO:  Your Honor --

25              THE COURT:  -- seems to me it would not be reflected
```

1    in a preapplicant questionnaire, so if that exists, that should

2    be unredacted.

3            MR. GORDILLO:  I can tell you, Your Honor, I'm

4    actually -- I pulled that up while she mentioned it.  It's a

5    written exit statement that was done by Ms. Liberti in December

6    of 2017.  It's a three-page document.  The only thing redacted

7    out of that is her phone number.

8            THE COURT:  All right.

9            MR. GORDILLO:  But everything -- that's the only

10   redaction in that three page-document that Ms. Commons

11   referenced earlier.

12           THE COURT:  All right.  Is there anything additional,

13   Ms. Commons?

14           MS. COMMONS:  Yes.  I'm looking at the record.  It's

15   Bates stamp number 7536 to 8099.  The entire pages are redacted

16   after "Job Description," and it -- this is not the

17   prequestionnaire.  I mean, it's just page after page.  So you

18   can go to that group of documents and see all the black pages.

19           THE COURT:  So if it's not a preemployment

20   questionnaire question or response, that should be unredacted.

21   And you need to do that quickly, because, again, discovery has

22   ended, and you-all are in the period where you should be

23   working on those dispositive motions, if needed, and then

24   preparing for trial.

25           So, Ms. Commons, Mr. Cook, you-all go ahead and

                    UNITED STATES DISTRICT COURT

1    provide any Bates numbered pages to Mr. Gordillo that you

2    contend need to be unredacted.

3            And would you be able to do that by next Wednesday?

4            MR. COOK:  Sure.

5            THE COURT:  All right.  If you do that by next

6    Wednesday, Mr. Gordillo, when would you be able to provide

7    those documents unredacted?

8            MR. GORDILLO:  Your Honor, if I get them next

9    Wednesday, or the pages, and hopefully it's not every page

10   that's redacted or every little redaction, they don't do that,

11   but next Wednesday, I'll be finishing the summary judgment.

12   It's due Friday.  So I guess if I could have a week after the

13   summary judgment deadline that I can -- I'll be free to look at

14   those.  Because, obviously, I don't want to have to deal within

15   days when I'm finishing up the summary judgment.

16           MR. COOK:  Your Honor, we may be doing a motion for

17   partial summary judgment.  We need it in time for the summary

18   judgment deadline.

19           MR. GORDILLO:  And, Your Honor, I don't see what --

20   you know, their motion is talking about 608(b) where they want

21   to use it at trial to try to make people look untruthful.  I

22   don't see what these redactions are going to have to do with --

23   based off what they put in their motion, I don't see what it

24   has anything to do with the summary judgment, to be honest with

25   you, Your Honor.

                    UNITED STATES DISTRICT COURT

1          I just feel like this -- I'm at the point I'm

2    starting to feel like this motion and things like that are just

3    kind of, you know, making me look at other stuff as opposed to

4    fulfilling the summary-judgment deadline at this point.

5          THE COURT:  Let's go ahead and have Ms. Commons and

6    Mr. Cook provide the documents to you by Monday, the 2nd.  And

7    then, Mr. Gordillo, if you could provide the information to

8    them by the 4th at the end of the day by five.  You could also

9    be taking a look at it yourself, Mr. Gordillo.  You can

10   anticipate what those documents may be, because you heard the

11   ruling.  Only the -- only the very limited information should

12   be redacted.  So perhaps somebody else at your office could

13   assist with that.

14         MR. GORDILLO:  Very well, Your Honor.

15         THE COURT:  All right.  So that is the plaintiffs are

16   going to provide the information to you, Mr. Gordillo, by the

17   2nd, and then you provide the unredacted documents by the 4th.

18         MR. GORDILLO:  It's just the -- if there are any that

19   fit within the categories?

20         THE COURT:  That's correct.

21         MR. GORDILLO:  Because if they don't, you know, I can

22   imagine we're going to be back here, you know -- you know, if

23   everything was redacted pursuant to the Florida statutes, I

24   just want to be clear that, you know, I will provide only

25   what's outside of your ruling -- or within your ruling.

                    UNITED STATES DISTRICT COURT

```
 1                THE COURT:  All right.  Well -- and I certainly
 2      encourage you-all, for any additional discovery disputes that
 3      you might have, to really work together to resolve all of those
 4      issues, as you've done, leading up to this hearing.  You're
 5      narrowing down on the time for, as I mentioned, dispositive
 6      motions and trials.  And so you it would be better to focus all
 7      of your efforts on that, if you can, and work out all of these
 8      issues, if at all possible.
 9                All right?  Does anybody have anything additional?
10                Ms. Commons, Mr. Cook?
11                MS. COMMONS:  Not that I can think of.  We were still
12      waiting for rulings on some of our motions.
13                THE COURT:  I understand.
14                Mr. Cook?
15                MR. COOK:  Nothing.  Thanks.
16                THE COURT:  And I was able to hear the two of you
17      well.  Were you all able to hear and see well.
18                MS. COMMONS:  Yes, ma'am.
19                MR. COOK:  Yes.
20                THE COURT:  Mr. Gordillo, do you have anything
21      additional, and were you able to see and hear well?
22                MR. GORDILLO:  Yeah.  Everything was fine, Your
23      Honor, and I have nothing additional.
24                THE COURT:  Mr. Johnson?
25                MR. JOHNSON:  Everything was fine, Your Honor.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.  And we, as I mentioned, are

2    joined here with our court reporter.  Were you able to see and

3    hear well?

4          THE REPORTER:  Yes, Your Honor.

5          THE COURT:  All right.  Thanks, everyone.  We are in

6    recess.

7       (Proceedings adjourned at 3:09 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

        I, Rebekah M. Lockwood, RDR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 11th day of November 2020.

REBEKAH M. LOCKWOOD, RDR, CRR
Official Court Reporter
United States District Court
Middle District of Florida