**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| WAHEED NELSON,<br><br>     Plaintiff,<br><br>v.<br><br>BOB GUALTIERI, et al.,<br><br>     Defendants. | Case No. 8:19-cv-449-T-36JSS |

**DECLARATION OF JAMES COOK**

STATE OF FLORIDA
COUNTY OF LEON

COMES NOW James Cook and makes this Declaration under oath:

1. My name is James Cook. I am of age and competent to make this declaration. I am counsel of record in this case and make this Declaration pursuant to Fed.R.Civ.P. 56(d).

2. Important issues in this case are the communications and dynamics of interaction between the defendants and their employees or agents generally relating to policies and practices in the provision of care to inmates and specifically the condition of Plaintiff's lost right leg and the efforts, made or discussed, to save it. The following records are fundamental to the litigation of these issues:

    a. **3700 e-mails identified by Defendant FDOC**. Prior to the October 29, 2020 hearing on Plaintiff's Motion to Compel (ECF 170), Defendant FDOC agreed to produce 3700 identified e-mails. (Exh. 2, Foskey Deposition, at 2/18:10-16) and stated at the October 29, 2020 hearing they would be produced to satisfy Plaintiff's Requests for Production after review. (Exh. 3, 10-29-20 Hearing Transcript, at 6:12-25; 7: 1; 7:16-25; 8: 1-9). To date, the e-mails have not been produced to Plaintiff.

    These e-mails are important because Corizon Dr. Belizaire improbably claimed he was unable to reach Dr. Steel: "when I thought I needed to talk to him I couldn't even speak to the man. I called, but I couldn't." (ECF 242-10 at 87:7-18; 92:7-11). He didn't know if Dr. Steel had e-mail and didn't have his address. (Id. at 91:17-22). "Where I work, what makes you think I even have access to a fax." (Id. at 101:19-21). It will be critical to know whether Dr. Belizaire or any other Corizon doctor had input on Dr. Steel prior to the decision – apparently made by Dr. Steel alone – to amputate. If Dr. Steel made the decision, Department rules were violated.

    b. **E-mails requested but not identified by Sheriff Gualtieri**, who was requested by the Magistrate at Hearing to review the e-mail database. Sheriff's counsel flatly denied to the Magistrate at hearing that doctors and nurses at the Jail used e-mail at the time of the matter sued upon. Notwithstanding denials, it is clear that e-mail *was* used by medical staff and was used to transmit medical records. At his deposition, Jail Medical Director Dr. Kevin Kyle admitted medical staff at the Jail did use e-mail. (Exh. 7, Kyle Deposition at 4/104:10-105:24). Jail Policies Medical Staff Duties and Responsibilities, DET 13-9 (Exh. 8 at 3-10) showed that inmate referrals to the physician sick call clinic are by voice mail or e-mail, with the inmate's name, docket

    number, and reason for referral. Administrative Meetings and Reports, DET 13-3, show that Continuous Quality Improvement and Medical Audit Committee meeting notes are distributed to all attendees by e-mail. And the policy on Emergency Services, DET 13-36, showed that when Emergency Treatment Orders (ETO) are given, notice of the treatment and "portions of the inmate's health record pertinent to the administration of ETO's (i.e., the inmate's condition, the threat posed, the reason for forcing the medication, etc.), shall be forwarded to General Counsel upon request, via e-mail. (Id. at 18). Finally, numerous pages throughout the medical records bore the instructions: "Copy this form and paste in an email and send form to designated reviewer." Plaintiff found eleven such medical records for the time of the matter sued upon. (Exh. 9, 1-11). Clearly e-mail was used by medical staff.

    These e-mails will be important because in their absence, Plaintiff was at a loss how to cross examine medical staff on their interaction and may have to re-depose some witnesses. (Exh. 5, 9-23-20 Hearing Transcript, at 38:11-25; 39:1-3,6-23; 48:9-16, 48:19-24; 50:3-14; 51:19-23; 53:14-22; 54:1-6). The Court directed the Sheriff to check the Jail e-mail system, and provide any e-mail. (Id. at 66:1-8). He failed to show any indication of having done so. Based on the additional information about how Plaintiff's care was managed and the interactions between providers, Plaintiff may have to re-depose some Jail medical staff witnesses.

    c. **Redacted information from personnel files** of key care providers to Plaintiff, which was ordered to be produced by the Magistrate. At the Magistrate's order, Plaintiff sent the Sheriff a list of 317 pages from the Jail medical staff personnel records with redactions that did not appear to be either pre-employment questionnaire responses or statutorily-protected information. (Exh. 11, Pages to unredact).  Of these, the Sheriff produced only 15% (49 pages). (Exh. 12, Pages produced unredacted). Personnel information would be a few lines at most: names, addresses, phone numbers, dates of birth, Social Security numbers. The pages that remained un-redacted include scores of fully-blacked out pages. (Exh. 13, All Redacted Pages). This is clearly inconsistent with the Magistrate's Order.

    Plaintiff believes more e-mails and also personnel evaluations are covered by the substantial redactions (personnel files without employee evaluations would be rare indeed), and that disclosure may bring to light a workplace dynamic in which medical staff were afraid to send Plaintiff for off-site emergency care. This delay of disclosure disadvantaged plaintiff because of evidence that Nurse Liberti was intimidated by Dr. Kyle and Plaintiff believes Kyle bullied staff not to send Plaintiff to a hospital. At her August 5, 2020 deposition, Nurse Liberti testified she did not have any issues with Dr. Kyle. Plaintiff will seek to re-depose Nurse Liberti.

3. Plaintiff has sought to resolve the need for these documents with the Defendants and has not been able to do so. The above records are still outstanding.

4. It is not possible to fully and fairly resolve summary judgment on the merits without responsive, meaningful answers from the Defendants.

    FURTHER AFFIANT SAYETH NAUGHT.

*Pursuant to § 92.525, Florida Statutes, and 28 U.S.C. § 1746, I declare under penalty of perjury that I have read the foregoing document and that the facts stated in it are true.*

                                                                                        *s/James V. Cook,* 12/9/20