**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**CASE NO.: 8:19-cv-00449-CEH-JSS**

WAHEED NELSON,

      Plaintiff,

vs.

BOB GAULTIERI, Official Capacity as
Sheriff of Pinellas County, FLORIDA
DEPARTMENT OF CORRECTIONS,
CORIZON, LLC, MAXIM
HEALTHCARE SERVICES, INC.,
MATTHEW SWICK, M.D., ALL
FLORIDA ORTHOPAEDIC
ASSOCIATES, P.A., and WITCHNER
BELIZAIRE, M.D.,

      Defendants.

_____/

**DEFENDANTS CORIZON, LLC, FLORIDA DEPARTMENT OF
CORRECTIONS AND WITCHNER BELIZAIRE, M.D.'S RESPONSE TO
THE PLAINTIFF'S MOTION FOR APPOINTMENT OF A NEUTRAL –
SPECIAL MASTER, SPECIAL MONITOR, OR COMPUTER FORENSICS
EXPERT UNDER F.R.E. 706 – FOR REVIEW OF DISCOVERY
MATERIALS IN CONTROVERSY AT PLAINTIFF'S INITIAL EXPENSE**

Defendants Corizon, LLC ("Corizon"), Florida Department of Corrections

("FDOC") and Witchner Belizaire, M.D. ("Belizaire") (collectively "Corizon

Defendants") hereby file their Response to the Plaintiff's Motion for Appointment

of a Neutral – Special Master, Special Monitor, or Computer Forensics Expert

under F.R.E. 706 – For Review of Discovery Materials in Controversy at

Plaintiff's Initial Expense [ECF #273] as follows:

**Background**

This is a federal prisoner civil rights and state law medical malpractice case. Plaintiff Waheed Nelson ("Nelson") spent several months in the Pinellas County Jail, then transferred to FDOC custody. Corizon provided medical services in certain Florida prisons, and Belizaire was a Corizon employee.

According to the Complaint, Nelson entered FDOC custody on April 16, 2015, and was released in October 2017. At the time, Corizon was contracted with FDOC to provide medical care to inmates in certain FDOC prisons, including Nelson's place of incarceration. On the day of his arrival, an x-ray apparently revealed a fracture of his right ankle and the radiologist suggested additional x-rays and possible surgery.  In May 2015, an MRI indicated the fracture and swelling. Nelson claims Belizaire "did not send [him] for surgery and on July 28, 2015, [he] had to have his right leg amputated [ECF #105, ¶¶56-66].

According to the record, Nelson arrived at the Reception and Medical Center ("RMC"), which includes a licensed Florida hospital operated by FDOC, on April 16, 2015, and a nurse performed a medical evaluation.  He was sent to the urgent care portion of the complex and was examined by Marie Garcon, M.D. at 5 p.m. Dr. Garcon ordered x-rays of Nelson's right foot and ankle.  Those x-rays were done the same day and the radiologist signed the reports on April 17 and 18.  The

reports indicated a damaged right foot and ankle.

By Saturday, April 18, 2015, Nelson was transferred to the hospital portion of RMC and was examined by Clifford Adam, M.D.  Dr. Adam requested a consultation with an orthopedist, which was approved, and an appointment was set for April 27, 2015.  In the meantime, Belizaire ordered follow-up x-rays, which were performed on April 21, 2015 [ECF #52, pp. 7-8].  On April 27, 2015, the orthopedist reported a condition known as Charcot Foot, and recommended follow-up with Dr. Steele, a surgeon [ECF #52, pp. 5-6].  The appointment with Dr. Steele was originally set for May 4, 2015, but he cancelled his appointments at RMC that day and the evaluation was reset for May 18, 2015.  Dr. Steele ordered an MRI and noted that Nelson was likely to require a below-the-knee amputation. The same day, Belizaire recognized the order, noting that the MRI was preapproved. [ECF #52, pp. 9-10].  The MRI was done on May 22, 2015, and the resulting diagnosis was "Right ankle fracture with Charcot joint and bone loss."  On June 11, 2015, Dr. Williams referred Nelson back to Dr. Steele. Nelson returned to Dr. Steele on June 29, 2015, and he recommended a right below-the-knee amputation.  After Nelson consented to the surgery, Belizaire submitted a request for the surgery the following day, and it was approved on July 10, 2015.  The leg was amputated on July 28, 2015 and a follow-up procedure was done two days later [ECF #52, p. 15].

In the meantime, Belizaire provided care to Nelson.  The first encounter was

on April 20, 2015, where Nelson claimed to have fractured his foot while in the Pinellas County Jail.  Belizaire ordered x-rays and planned a consultation with an orthopedist.  Of course, the orders were redundant to those entered by Drs. Garcon and Adam days before.  Belizaire saw him two days later, noting Nelson had hemodialysis the day before and was "doing well."  On April 23, Belizaire ordered a CT scan. Belizaire evaluated Nelson following the first visit with the orthopedist on April 27, finding cellulitis in the left foot and a possible bone infection in the right.  He ordered a wound culture and Vancomycin, a broad spectrum antibiotic. [ECF ##221-3, pp.20, 23, 28; 221-4, pp. 3, 6].

On May 1, 2015, Belizaire ordered a consultation with a podiatrist and a left foot x-ray, along with instructions to provide topical medications to the left foot. He also ordered Lortab, a prescription pain medication also known as Vicodin, which replaced another pain medication, Tramadol.  The order was for 325 mg. four times per day for 20 days.  On May 5, 2015, Belizaire ordered Zosyn, an antibiotic, but due to availability issues was changed to Augmentin on May 7. Belizaire saw Nelson on May 8, 12, 13, 14 and 15 in follow-up to the antibiotic therapy without any concerns.  Another physician ordered Neurontin, a narcotic pain medication for 30 days on May 17, 2015.  On May 23, Dr. Adam renewed the Augmentin order for 14 days and added Tylenol 650 mg. to the medication ensemble [ECF ##221-3, pp. 28-33; 221-4, pp. 8-12].  Belizaire examined Nelson

on May 18, 19, 20, 22, 25, 26, 27 and 29, and renewed the Vicodin order for 10 days on May 22 [ECF ##221-3, pp. 34-38; 221-4, p. 14].

In June 2015, Belizaire examined Nelson on June 2, 4, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26 and 30.  He renewed Vicodin for 10 days on the 4th and 22nd [ECF ##221-3, pp. 29-46, 50-51; 221-4, pp. 17, 22].  Other physicians ordered pain medications Toradol, naproxen and Gabapentin throughout the month [ECF #221-4, pp. 16, 19, 21, 23].

Belizaire examined Nelson on July 1, 6, 7-11, 13-17, 20-21, 23 and 27.  He ordered an injection of Demerol on July 20 and Tylenol 650 mg. for 14 days on July 23.  Another physician renewed Vicodin for 28 days on July, which provided pain medication to the time of surgery [ECF ##221-3, pp. 51-57, 59-62; 221-4, pp. 28-29].

**Argument**

At issue here is the following request for production:

1. Please provide all e-mails that include Plaintiff's DC# "R36172" to or from the following persons:

    a.    C. Cason
    b.    J. Winfree
    c.    A. Sneed
    d.    J. Reiman
    e.    F. Blackwell
    f.    D. Cannon
    g.    A. Acosta, RN
    h.    Clifford Adam, MD
    i.    Gerald Amatucci, MD

j.     N. Anandjiwala, MD
k.    Glen Babitch, MD
l.     Witchner Belizaire, MD
m.   Calixto Calderon, MD
n.    Hernan Chang, MD
o.    Osvaldo Contarini, MD
p.    William Cooper, MD
q.    Nora Crawford, PA
r.     Angel Cuesta, MD
s.     Juan De Los Santos, MD
t.     Jean Dure, MD
u.    Marie Garcon, MD
v.    Marinette Gonzalez, MD
w.   Carlos Pagan-Gonzalez, MD
x.    C. Haddad, MD
y.    Naeem Haider, MD
z.    Parlyn Hatch, MD
aa.   M. Irizarry, MD
bb.   Dr.Calderon
cc.   Dr. Ladele
dd.   Dr. Adam
ee.   Gerald Amatucci (medical director)
ff.    D Maddux
gg.   Hernan Chang
hh.   Marie Garcon
ii.    T.Motes
jj.    Danny Vo
kk.   Gregory Stringfellow

**Response:**  This has been requested.  If a search can be performed, an estimate of cost will be provided.

At an October 29, 2020 hearing on Nelson's Motion to Compel, both the undersigned and Nelson's lawyer informed the Court that issues involving this request were resolved, as what purported to be approximately 3700 emails were delivered to the undersigned that day, but were corrupted.  The undersigned also

expressed suspicion regarding the number of emails, as the requested period for the search was only about three months and it seemed like a very large result.  Because the undersigned was in Tallahassee that day, he picked-up CDs from the Department of Corrections in hopes they were not corrupted.  As it turned out, the CDs were useless.

The search of the 38 mailboxes was run anew, with the result being about 500 emails.  There was another glitch—about a third were for a period longer than that requested.  Pared down to the appropriate period, there were about 380 emails.  Almost universally, Nelson's name appeared on attachments with other inmates.  There were reams of lists involving inmate movement, inmates being delivered or released from custody, visitation, medication usage[1] and housing of inmates with special needs, along with lists on many, many other topics.  The only redactions before delivery to Nelson were to other inmate identifiers, as is required.

Nelson seeks the appointment of a special master, but he doesn't mention the controlling rule.  That is Federal Rule of Civil Procedure 53:

(a)    Appointment.

(1)    Scope. Unless a statute provides otherwise, a court may appoint a master only to:

(A)    perform duties consented to by the parties;

---

[1] To give an idea of the breath of these documents, just one attachment involving medication usage is 1211 pages.

     (B)    hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:

         (i)    some exceptional condition; or

         (ii)    the need to perform an accounting or resolve a difficult computation of damages; or

     (C)    address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

    (2)    Disqualification. A master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification.

    (3)    Possible Expense or Delay. In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.

Clearly, none of these circumstances are present. First, FDOC does not consent to the appointment of a special master. Second, and although there is no pending discovery dispute, the issue does not concern trial proceedings or necessitate fact-finding and there are no exceptional conditions or damage calculations involved. Third, there is no need for a special master to supervise or investigate the discovery sought by Nelson and provided by FDOC. In fact, there is no discovery issue, as Nelson does not claim FDOC failed to properly respond to the request.

Nelson's statement there were 3700 emails and "all but around 500 were 'corrupted'" is wrong [ECF #273, p. 1].  There never were 3700 emails and the entire file was unreviewable, except that the data description identified about 3700 documents and only because the file was corrupted.  There was a glitch in the original search process.  That commonly happens with computer searches.  The glitch did not recur in the second search and the responsive documents were provided.

The Motion should be denied.

By:   /s/ Gregg A. Toomey
Gregg A. Toomey
Florida Bar No. 159689

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a copy of the foregoing electronically to the following:

Linda Bellomio Commons, Esq.
*Attorneys for Plaintiff*
Law Offices of Linda Bellomio
Commons, P.A.
PO Box 340261
Tampa, FL 33694
Phone: 352.610.4416
Fax: 813.265.3010
Email: lcommons@aol.com
Commons.litigation@gmail.com
Dmheiser1@gmail.com

James V. Cook, Esq.
*Attorneys for Plaintiff*
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
Phone: 850.222.8080
Fax: 850.561.0836
Email: cookjv@gmail.com

Jason Gordillo
*Attorneys for Defendant Gualtieri*
Pinellas County Sheriff General
Counsel's Office
10750 Ulmerton Road
Largo, FL 33778
Phone: 727.582.6274
Fax: 727.582.6459
Email: jgordillo@pcsonet.com
rreuss@psconet.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon, FDOC and Belizaire*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:     /s/ Gregg A. Toomey
        Gregg A. Toomey
        Florida Bar No. 159689