# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

WAHEED NELSON,

    Plaintiff,

v.                                              Case No: 8:19-cv-449-CEH-JSS

BOB GUALTIERI, FLORIDA
DEPARTMENT OF CORRECTIONS,
CORIZON LLC, WITCHNER
BELIZAIRE and MAXIM
HEALTHCARE SERVICES INC.,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment as to the Florida Department of Corrections (Doc. 226). In the motion, Plaintiff requests the Court enter partial summary judgment in his favor on the non-delegable duty of Defendant, Florida Department of Corrections ("FDOC"). The FDOC filed a response in opposition, to which Plaintiff replied. Docs. 240, 251. The parties filed a Notice of Filing Stipulations to Material Facts between Plaintiff, Corizon, Belizaire, and FDOC. Doc. 255. The Court, having considered Plaintiff's motion and reply, the FDOC's response, the parties' stipulated facts, and being fully advised in the premises, will deny Plaintiff's Motion for Partial Summary Judgment as to the Florida Department of Corrections on the issue of non-delegable duty.

I.  **BACKGROUND**[1]

  A.  **Factual Background**

Plaintiff, Waheed Nelson, ("Plaintiff" or "Nelson") filed this action against numerous Defendants alleging negligence in connection with his medical care, or lack thereof, while an inmate at the Pinellas County Jail (the "Jail"). Doc. 105. Nelson alleges he is diabetic and suffers from renal issues and chronic edema. *Id.* ¶ 33. While incarcerated at the Jail on January 7, 2015, he slipped and suffered a fall that severely injured his right ankle. *Id.* ¶¶ 31–34.

In his Fourth Amended Complaint, Nelson sues FDOC in a single count for medical negligence due to the negligence of its physicians, nurse practitioners and nurses on a respondeat superior/vicarious liability theory. Doc. 105 ¶¶ 80–89. Plaintiff alleges that FDOC "was responsible for the care and treatment of the plaintiff at its facility at Lake Butler and had a nondelegable duty to provide needed medical care within the standard of care to the Plaintiff while Mr. Nelson was a prisoner." *Id.* ¶ 21. Regarding this allegation, FDOC, in its Answer, admitted that "it had a duty to provide medical treatment to its prisoners as stated in paragraph 21," but otherwise claimed "that duty was delegable." Doc. 113 ¶ 3.

For purposes of the instant motion, Plaintiff and the FDOC stipulate to the following facts (Doc. 255):

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the parties' Stipulations to Material Facts between Plaintiff, Corizon, Belizaire, and FDOC (Doc. 255).

2

Nelson entered FDOC custody on April 16, 2015, and he was released in October 2017. At the time, Defendant Corizon LLC ("Corizon") contracted with FDOC to provide medical care to inmates in certain FDOC prisons, including Nelson's place of incarceration at the Reception and Medical Center ("RMC"). Defendant, Dr. Witchner Belizaire, ("Dr. Belizaire") was a Corizon employee.

On the day of Nelson's arrival, a nurse performed a medical evaluation. He was sent to the urgent care portion of the complex and was examined by Marie Garcon, M.D., at 5:00 p.m. An x-ray revealed a fracture of his right ankle and the radiologist suggested additional x-rays and possible surgery.

On Saturday, April 18, 2015, Nelson was transferred to the hospital portion of RMC and was examined by Clifford Adam, M.D. Dr. Adam requested a consultation with an orthopedist, which was approved, and an appointment was set for April 27, 2015. In the meantime, Dr. Belizaire ordered follow-up x-rays, which were performed on April 21, 2015.

On April 27, 2015, the orthopedist reported "massive bone loss, similar to" a condition known as Charcot Foot, and recommended follow-up with Dr. Steele, a surgeon. Diagnostic imaging reports suggest clinicians "rule out" Charcot Foot or infection or both.

Dr. Belizaire evaluated Nelson following the first visit with the orthopedist on April 27, finding cellulitis in the left foot and a possible bone infection in the right. He ordered a wound culture and Vancomycin, a broad spectrum antibiotic. On May 1, 2015, Dr. Belizaire ordered a consultation with a podiatrist and a left foot x-ray, along

with instructions to provide topical medications to the left foot. He also ordered Lortab, a prescription pain medication also known as Vicodin, which replaced another pain medication, Tramadol.

On May 5, 2015, Dr. Belizaire ordered Zosyn, an antibiotic, but due to availability issues, the medication was changed to Augmentin on May 7. Dr. Belizaire saw Nelson on May 8, 12, 13, 14 and 15 in follow-up.

Another physician ordered Neurontin, a narcotic pain medication for 30 days on May 17, 2015.  On May 23, Dr. Adam renewed the Augmentin order for 14 days and added Tylenol 650 mg.

Dr. Belizaire examined Nelson on May 18, 19, 20, 22, 25, 26, 27 and 29, and renewed the Vicodin order for 10 days on May 22. On May 22, 2015, an MRI indicated the fracture and swelling.

The appointment with Dr. Steele was originally set for May 4, 2015, but he cancelled his appointments at RMC that day and the evaluation was reset for May 18, 2015.  Dr. Steele ordered an MRI and noted that Nelson was likely to require a below-the-knee amputation. The same day, Dr. Belizaire recognized the order, noting that the MRI was preapproved.

The MRI was done on May 22, 2015, and the resulting diagnosis was "Right ankle fracture with Charcot joint and bone loss" and "findings most consistent with Charcot arthropathy" . . . "However early osteomyelitis cannot be categorically excluded close clinical follow-up and correlation a (sic) warranted."

In June 2015, Dr. Belizaire examined Nelson on June 2, 4, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26 and 30.  He renewed Vicodin for 10 days on the 4th and 22nd. Other physicians ordered pain medications Toradol, naproxen and Gabapentin throughout the month.

On June 11, 2015, Dr. Williams referred Nelson back to Dr. Steele. Nelson returned to Dr. Steele on June 29, 2015, and he recommended a right below-the-knee amputation. Dr. Belizaire submitted a request for the surgery the following day, and it was approved on July 10, 2015.

Dr. Belizaire examined Nelson on July 1, 6, 7-11, 13-17, 20-21, 23 and 27.  He ordered an injection of Demerol on July 20 and Tylenol 650 mg. for 14 days on July 23.  Another physician renewed Vicodin for 28 days in July, which provided pain medication until the time of surgery.

**B.    Plaintiff's Motion and FDOC's Response**

Nelson moves for partial summary judgment against FDOC on the issue of non-delegable duty because, according to Nelson, FDOC has taken the position that it has "contracted away its constitutional duty to ensure the provision of necessary health care to prisoners," which Nelson submits is contrary to established law. Doc. 226. FDOC responds that it is unclear what relief Nelson seeks by his motion because the motion references a defense made by Corizon and Dr. Belizaire, not FDOC. Doc. 240. Further, FDOC does not dispute that it cannot avoid constitutional liability by delegating to Corizon, but submits no constitutional claims have been made against it. Finally, FDOC argues that medical care can be delegated under Florida law and that

5

the non-delegable duty doctrine does not apply in any event because FDOC can be held vicariously liable by statute for the medical malpractice, if any, of Dr. Belizaire.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by

relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III. DISCUSSION

Nelson seeks partial summary judgment in his favor on the issue that the FDOC cannot delegate its duty to provide necessary medical care to inmates. The FDOC responds that the nondelegable duty doctrine is inapplicable here, where it may be held vicariously liable for the alleged medical malpractice of Dr. Belizaire under Florida statutes.

It is undisputed that the government is responsible for providing medical care to its prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Courts in this circuit have recognized "[t]he fact that FDOC contracted with a private health care provider does not absolve the FDOC of its non-delegable duty of ensuring that prisoners receive proper health care." *Geftos v. Jones*, No. 2:17-CV-SPC-CM, 2018 WL 1139055, at *3 (M.D. Fla. Mar. 2, 2018); *see also Hunt v. Gualtieri*, No. 8:15-CV-1257-VMC-EAJ, 2016 WL 1077361, at *3 (M.D. Fla. Mar. 18, 2016) ("The government has a constitutional obligation to provide adequate medical care to inmates."). Indeed, the failure to provide such medical care can give rise to a civil rights claim. *Hunt*, 2016 WL 1077361, at *3. Here, as noted by the FDOC, Nelson does not assert a constitutional claim against the FDOC.[2] Rather, the only claim against the FDOC is a claim for medical

---

[2] Deliberate indifference to support a claim for violation of the Eighth Amendment can occur "where the care given is so cursory as to amount to no treatment at all." *Johnson v. McNeil*, 278 F. App'x 866, 870 (11th Cir. 2008) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700,

negligence. *See* Doc. 105. Thus, Nelson's reliance on federal case law for the proposition that the FDOC has a constitutional obligation to provide adequate medical care to the prisoners in its charge is misplaced, where no constitutional claim has been asserted against the FDOC.

Nelson cites to the reference in the Health Services Bulletin that inmate health care decisions are the responsibility of Corizon providers. Doc. 226 at 3 (citing Doc. 222-9 at 2) ("All decisions regarding inmate health care are the responsibility of the institutional provider."). It is undisputed that Dr. Belizaire was a Corizon employee. Doc. 255 at 1. Further, the FDOC admits that it is vicariously liable for the medical malpractice, if any, of Dr. Belizaire "as he is its statutory agent." Doc. 240 at 9. Thus, to the extent that Nelson interprets the FDOC's answer as seeking to wholly disclaim any liability, such concession should ease that concern. But the Court agrees with the FDOC that this case does not present an issue of the FDOC attempting to shirk a nondelegable duty.

The only claim pending against the FDOC is one for medical negligence. Under Florida law, the provision of medical care can be delegated. *Pope v. Winter Park Healthcare Group, Ltd.*, 939 So. 2d 185, 186 (Fla. 5th DCA 2006). That court explained:

> In Florida case law, nondelegable duties are often said to arise out of the common law, statutes or regulations, or contract. . . . Under the common law, nondelegable duties typically arise out of the performance of ultra-hazardous activity. There are no specific criteria for determining whether or not a duty is nondelegable except for the rather

---

704 (11th Cir. 1985)), but here, no alleged constitutional violation has been asserted against the FDOC.

> ambiguous defining characteristic that the responsibility is so important to the community that the [original party] should not be allowed to transfer it to a third party. . . . Florida law does not recognize that the mere relationship between a hospital and its patient gives rise to a nondelegable duty to provide competent medical care. . . . Nor, in this case, does a nondelegable duty on the part of a hospital arise out of any statute or regulation cited to us.

*Pope*, 939 So. 2d at 188 (internal citations and quotation marks omitted).

In this case, FDOC is not a health care provider. But it can be held responsible for the negligence of a health care provider it employs on a *respondeat superior* theory. *Weinstock v. Groth*, 629 So. 2d 835, 838 (Fla. 1993) ("[U]nder the doctrine of *respondeat superior*, an employer of a health care provider also may be a 'prospective defendant' in a medical negligence action, even if the employer does not fall within the statutory definition of health care provider."). Thus, an employer "may be vicariously liable under the professional medical negligence standard of care set forth in section 766.102(1) when its agent or employee, who is a health care provider, negligently renders medical care or services." *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 307 n.4 (Fla. 2018) (citing *Weinstock*, 629 So. 2d at 838).

FDOC readily admits that Dr. Belizaire is its agent, and therefore it is vicariously liable for the medical negligence, if any, of Dr. Belizaire. Doc. 240 at 9. The only claim against FDOC is a medical negligence claim, not a constitutional claim. Thus, to the extent the FDOC may be held liable, its liability on the medical malpractice claim arises from a *respondeat superior* theory. Nelson's argument that he

is entitled to partial summary judgment based on a non-delegable duty therefore fails. Accordingly, for the reasons stated, it is hereby

**ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment as to the Florida Department of Corrections (Doc. 226) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on August 12, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any